1

COHEN-JOHNSON, LLC
H. Stan Johnson, Esq. (SBN: 0265)

2

(sjohnson@cohenjohnson.com)

3

375 E. Warm Springs Road, Suite 104
Las Vegas, Nevada 89119

4

Telephone : (702) 823-3500
Facsimile : (702) 823-3400

5

6

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (*Pro Hac Vice application to be filed*)

7

(shonmorgan@quinnemanuel.com)
John W. Baumann (*Pro Hac Vice application to be filed*)

8

(jackbaumann@quinnemanuel.com)
865 South Figueroa Street, 10th Floor

9

Los Angeles, California  90017
Telephone:  (213) 443-3000

10

Facsimile:  (213) 443-3100

11

Cristina Henriquez (*Pro Hac Vice application to be filed*)

12

(cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor

13

Redwood Shores, California 94065
Telephone: (650) 801-5000

14

Facsimile: (650) 801-5000

15

Attorneys for ANCESTRY.COM OPERATIONS

16

INC., ANCESTRY.COM INC., and
ANCESTRY.COM LLC

17

**UNITED STATES DISTRICT COURT**

18

**DISTRICT OF NEVADA**

19

ANTHONY SESSA and MARK SESSA, on

20

behalf of themselves and all others similarly
situated,

21

Plaintiffs,

22

23

v.

24

ANCESTRY.COM OPERATIONS INC., a
Virginia Corporation; ANCESTRY.COM,

25

INC., a Delaware Corporation;
ANCESTRY.COM LLC, a Delaware Limited

26

Liability Company; and DOES 1 through 50,

27

inclusive,

28

Defendants.

Case No.: 2:20-cv-02292-GMN-BNW

**NOTICE OF DEFENDANTS' MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12 AND MOTION TO STRIKE PURSUANT TO NEVADA REV. CODE § 41.635 *et seq.*, AND MEMORANDUM IN SUPPORT;**

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFFS' COMPLAINT .............3

LEGAL STANDARDS ............................................................................................4

ARGUMENT .......................................................................................................5

I.      THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY ......................5

        A.      No Purposeful Direction.....................................................................5

        B.      Plaintiffs' Claims Do Not Arise From Or Relate To Forum-Related Activities........7

II.     PLAINTIFFS' CLAIMS FAIL BECAUSE PLAINTIFFS DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS ...............................8

III.    PLAINTIFFS' "RIGHT OF PUBLICITY" CLAIM FAILS BECAUSE THE CHALLENGED CONDUCT IS EXCEPTED FROM THE STATUTE...........................11

        A.      The Use Is "Not Directly Connected" With Any Commercial Sponsorship ...........11

        B.      The Use Is In Connection With "Public Affairs".....................................12

IV.     PLAINTIFFS' CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT ....................................................15

V.      PLAINTIFFS' RIGHT OF PUBLICITY CLAIM IS PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT .............................................................18

VI.     PLAINTIFFS CANNOT STATE A CLAIM FOR INTRUSION UPON SECLUSION.....20

VII.    PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF NEVADA'S DECEPTIVE TRADE PRACTICES STATUTE ..............................................22

VIII.   PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT .................22

IX.     THE COURT SHOULD STRIKE PLAINTIFFS' CLAIMS PURSUANT TO NEVADA'S ANTI-SLAPP STATUTE...........................................................22

CONCLUSION ..................................................................................................24

DEFENDANTS' MOTION TO DISMISS AND STRIKE

## <u>TABLE OF AUTHORITIES</u>

**Page**

### <u>Cases</u>

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014), *as corrected* (May 12, 2014) .................................................. 7

*Aldrin v. Topps Co., Inc.*,
    2011 WL 4500013 (C.D. Cal. Sept. 27, 2011) .......................................................... 14, 15

*Arthur v. Douglas*,
    2009 WL 650623 (C.D. Cal. Mar. 10, 2009) .................................................................. 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................................... 5

*Ault v. Hustler Magazine, Inc.*,
    860 F.2d 877 (9th Cir. 1988) ......................................................................................... 20

*Barrett v. Rosenthal*,
    40 Cal. 4th 33 (2006) ..................................................................................................... 23

*be2 LLC v. Ivanov*,
    642 F.3d 555 (7th Cir. 2011) ........................................................................................... 6

*Beck v. McDonald*,
    848 F.3d 262 (4th Cir. 2017) ......................................................................................... 10

*Bonilla v. Ancestry.com*,
    Case No. 1:20-cv-07390 (N.D. Ill) .................................................................................. 4

*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) ......................................................................................... 4

*Callahan v. Ancestry.com*,
    Case No. 3:20-cv-08437-LB (N.D. Cal.) .......................................................................... 4

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) .......................................................................... 16

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) .................................................................................. 15, 16

*Carlisle v. Fawcett Publ'ns, Inc.*,
    201 Cal. App. 2d 733 (1962) ......................................................................................... 13

*Cohen v. Facebook*,
    798 F. Supp. 2d 1090 (N.D. Cal. 2011) ............................................................................ 9

*Coker v. Sassone*,
    432 P.2d 746 (Nev. 2019) ........................................................................................ 13, 23

*D'Andrea v. Rafla-Demetrious*,
    972 F. Supp. 154 (E.D.N.Y. 1997) ................................................................................ 12

*Daimler AG v. Bauman*,
    134 S.Ct. 746 (2014) ........................................................................................................ 5

*Dobrowolski v. Intelius, Inc.*,
    2017 WL 3720170 (N.D. Ill. Aug. 29, 2017) .................................................................... 7

1

*Dora v. Frontline Video, Inc.*,
   15 Cal. App. 4th 536 (1993)................................................................ 23, 24

2

*Downing v. Abercrombie & Fitch*,
   265 F.3d 994 (9th Cir. 2001)..................................................................... 19

3

*Dutta v. State Farm Mut. Auto. Ins. Co.*,
   895 F.3d 1166 (9th Cir. 2018)..................................................................... 8

4

*Endemol Entm't B.V. v. Twentieth Television Inc.*,
   1998 WL 785300 (C.D. Cal. Sept. 29, 1998)............................................ 19

5

6

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
   521 F.3d 1157 (9th Cir. 2008)............................................................. 17, 18

7

*Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*,
   17 F.3d 1302 (10th Cir. 1994)..................................................................... 6

8

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996)..................................................................... 19

9

*Fraley v. Facebook, Inc.*,
   830 F. Supp. 2d 785 (N.D. Cal. 2011) ................................................. 17, 18

10

*Franchise Tax Bd. of Cal. v. Hyatt*,
   139 S. Ct. 1485 (2019) ............................................................................... 20

11

*Franchise Tax Bd. of State of Cal. v. Hyatt*,
   133 Nev. 826 (2017)................................................................................... 20

12

13

*Fus v. CafePress, Inc.*,
   2020 WL 7027653 (N.D. Ill. Nov. 30, 2020)............................................... 9

14

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) ..................................................................................... 4

15

*Gates v. Discovery Commc'ns, Inc.*,
   34 Cal. 4th 679 (2004)................................................................................ 23

16

17

*Goddard v. Google, Inc.*,
   640 F. Supp. 2d 1193 (N.D. Cal. 2009) ............................................... 15, 16

18

*In re Google, Inc. Privacy Policy Litig.*,
   2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............................................. 11

19

*In re Google, Inc. Privacy Policy Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ......................................................... 21

20

*Gordon v. F.B.I.*,
   388 F. Supp. 2d 1028 (N.D. Cal. 2005) ..................................................... 20

21

22

*Hicks v. Richard*,
   39 Cal. App. 5th 1167 (2019)..................................................................... 23

23

*In re iPhone Applicatoin Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..................................................... 21

24

*Jackson v. Loews Hotels, Inc.*,
   2019 WL 2619656 (C.D. Cal. Jan. 4, 2019)............................................... 9

25

26

*In re Jetblue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005)....................................................... 10

27

*JibJab Media Inc., v. White Castle Mgmt.*,
   2013 WL 12123696 (C.D. Cal. May 14, 2013)........................................... 6

28

*John v. Douglas Cty. Sch. Dist.*,
    125 Nev. 746 (2009)................................................................................................... 23

*Johnson v. Carmouche*,
    2015 WL 6757537 (D. Nev. Nov. 4, 2015)................................................................. 4

*Jones v. Dirty World Entm't Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014)...................................................................................... 16

*Jules Jordan Video, Inc. v. 144942 Canada, Inc.*,
    617 F.3d 1146 (9th Cir. 2010).................................................................................... 19

*Kimzey v. Yelp! Inc.*,
    836 F.3d 1263 (9th Cir. 2016).................................................................................... 16

*Leasepartners Corp. v. Robert L. Brooks Tr. Dated November 12, 1975*,
    113 Nev. 747 (1997)................................................................................................... 22

*Leidholdt v. L.F.P. Inc*,
    860 F.2d 890 (9th Cir. 1988)...................................................................................... 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................... 4, 8, 11

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017)............................................................................. 18, 19

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019)......................................................................... 16, 17

*New Kids On The Block v. News Am. Pub., Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990)............................................................. 13, 15, 24

*PETA v. Bobby Berosini, Ltd.*,
    111 Nev. 615 (1995)................................................................................................... 21

*Pierce v. Kernan*,
    2017 WL 4621252 (S.D. Cal. Oct. 16, 2017)............................................................ 20

*Polydoros v. Twentieth Century Fox Film Corp.*,
    67 Cal. App. 4th 318 (1997)....................................................................................... 20

*Prescott v. Slide Fire Sols., LP*,
    410 F. Supp. 3d 1123 (D. Nev. 2019) .................................................................. 8, 22

*Raines v. Byrd*,
    521 U.S. 811 (1997) ..................................................................................................... 4

*Romero v. Securus Techs., Inc.*,
    216 F. Supp. 3d 1078 (S.D. Cal. 2016) ..................................................................... 10

*Rondberg v. McCoy*,
    2009 WL 5184053 (S.D. Cal. Dec. 21, 2009) ............................................................ 9

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)................................................................................ 5, 6, 7

*Seaver v. Estate of Cazes*,
    2019 WL 2176316 (D. Utah May 20, 2019) ............................................................. 15

*Shapiro v. Welt*,
    389 P.3d 262 (2017) ................................................................................................... 23

*Shulman v. Group W Prod., Inc.*,
    18 Cal. 4th 200 (1998) ............................................................................................... 13

*Silha v. ACT, Inc.*,
   2014 WL 11370440 (N.D. Ill. Sept. 2, 2014)................................................ 10

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ....................................................................... 8

*Spy Optic, Inc., v. AreaTrend*,
   2021 WL 225628 (9th Cir. Jan. 22, 2021) ......................................... 6

*Stark v. Lackey*,
   136 Nev. 38 (2020) ......................................................................... 23

*Stern v. Weinstein*,
   2010 WL 11459791 (C.D. Cal. Jan. 6, 2010)................................... 21

*Toney v. L'Oreal USA, Inc.*,
   406 F.3d 905 (7th Cir. 2005)....................................................... 18, 19

*Toth v. Stephens & Michaels Assocs., Inc.*,
   2014 WL 5687418 (D. Nev. Nov. 4, 2014) ...................................... 20

*Unelko Corp. v. Rooney*,
   912 F.2d 1049 (9th Cir. 1990) ........................................................ 20

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) ................................................................. 6, 7

*White v. City of Sparks*,
   341 F. Supp. 2d 1129 (D. Nev. 2004) ............................................ 12

## Statutory Authorities

17 U.S.C. §102 .............................................................................. 19

17 U.S.C. § 103 ............................................................................. 19

17 U.S.C. § 301 ............................................................................... 2

47 U.S.C. § 230 ............................................................... 15, 16, 24

Cal. Civ. Code § 3344(d) ............................................................... 13

Nev. Rev. Stat. § 14.065................................................................. 4

Nev. Rev. Stat. § 41.635............................................................. 1, 3

Nev. Rev. Stat. § 41.637............................................................... 23

Nev. Rev. Stat. § 41.650............................................................... 23

Nev. Rev. Stat. § 41.660............................................................. 5, 24

Nev. Rev. Stat. § 41.670............................................................... 24

Nev. Rev. Stat. § 597.770............................................................. 22

Nev. Rev. Stat. § 597.790......................................................... 11-14

Nev. Rev. Stat. § 597.810............................................................... 8

Nev. Rev. Stat. § 598.0915........................................................... 22

## Rules and Regulations

Fed. R. Civ. P. 12 ........................................................................... 1

DEFENDANTS' MOTION TO DISMISS AND STRIKE

1

## **Additional Authorities**

2

2 Entertainment Law 3d: Legal Concepts and Business Practices § 12:6 ..................................... 21

3

§ 6:9. The newsworthiness-public interest limitation, Privacy Torts § 6:9 ................................... 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS AND STRIKE

1       PLEASE TAKE NOTICE that defendants Ancestry.com Operations Inc., Ancestry.com Inc.,

2  and Ancestry.com LLC (collectively, "Ancestry"), by and through their attorneys and pursuant to

3  Federal Rule of Civil Procedure 12(b)(1), (b)(2) and (b)(6) will and hereby do move the Court to

4  dismiss with prejudice plaintiffs' complaint in its entirety and to strike the complaint pursuant to

5  Nevada's anti-SLAPP statute, Nev. Rev. Stat. section 41.635, *et seq*.

6       Ancestry moves to dismiss on the grounds that the Court does not have personal jurisdiction

7  over Ancestry, plaintiffs lack Article III standing, and the complaint fails to state a claim upon which

8  relief can be granted.  Ancestry moves to strike plaintiffs' complaint pursuant to Nevada's anti-

9  SLAPP statute on the grounds that plaintiffs' suit arises from protected activity and plaintiffs cannot

10 demonstrate a probability of prevailing on the merits.

11      This motion is based upon this Notice, the memorandum of points and authorities, the

12 pleadings and records on file, and on such other and further argument and evidence as may be

13 presented at the time of the hearing, and all matters of which this Court may take judicial notice.

14                       **PRELIMINARY STATEMENT**

15      Ancestry operates the world's largest subscription collection of genealogy databases,

16 encompassing more than 27 billion historical records.  Much of this data is available for free; even

17 more can be accessed by members. Subscribers can review, for example, US census records, military

18 documents, and historical immigration records that range from passenger lists for most American

19 ports to border-crossing files. Ancestry also makes available millions of digitized family and local

20 history books, newspapers dating to the 18th century, and school yearbooks.

21      The access to yearbooks prompted this novel, and misguided, lawsuit—one of three virtually

22 identical class actions plaintiffs' counsel has filed in different federal courts.  The two named

23 plaintiffs object that pictures and information from their school yearbooks is viewable on

24 Ancestry.com and seek to advance a broad class action asserting right of publicity and privacy-based

25 theories.  The claims are intuitively ill-founded—like all individuals pictured in yearbooks, these

26 plaintiffs long ago consented to public distribution of these photos without restriction.

27      At the threshold, plaintiffs do not allege facts that establish personal jurisdiction.  Plaintiffs

28 concede Ancestry is not incorporated or headquartered in Nevada and further that only 0.23% of the

yearbook records are from Nevada schools (even then, there is no allegation that the subjects remain Nevada residents).  It is well established the operation of a universally-available website—with "advertisements" viewable by residents of the forum state—is insufficient for personal jurisdiction, even where forum state residents contend they were harmed.

Substantively, plaintiffs' supposed indignation over the possible viewing of their school photos cannot find legal grounding.  Multiple bases foreclose these claims at the pleading stage:

- *No Injury.*  The benign yearbook excerpts are widely available, and plaintiffs contend only that Ancestry offered access to these already-public records.  No harm could plausibly result from the mere existence of plaintiffs' records in Ancestry's archive.

- *The Statutory Exceptions.*  Nevada's "right of publicity" statute exempts use of a name or image where the use is not "directly connected" to any commercial sponsorship.  Here, plaintiffs allege only that their yearbook records appeared on Ancestry's site; they do not allege their names or images were "directly connected" to any commercial sponsorship, for example, by making it appear they endorsed Ancestry or any other product.  The law also recognizes the "right to publicity" must yield to constitutional free speech interests.  The yearbook excerpts fall squarely within the "public affairs" exception to Nevada Revised Statutes section 597.790, which protects the type of information gathering for public distribution in which Ancestry engages.

- *Section 230 Immunity.*  To foster the public informational interest in online resources, the Communications Decency Act immunizes companies from claims arising from the publication of content created by third parties.  Here, plaintiffs concede the content at issue emanates from third parties and is merely hosted on Ancestry's website.

- *Copyright Preemption.*  The federal Copyright Act provides the exclusive means to protect copyrightable works such as photos and compilations.  *See* 17 U.S.C. § 301(a).  Here, plaintiffs allege no other use of their names or images apart from their mere appearance in excerpts they do not allege to have copyrighted.

- *No Intrusion Upon Seclusion.*  The yearbook information at issue belies any suggestion it is "private" or that publication would highly offend a reasonable person.  It is public

information (names, past physical appearances) in a medium intended for distribution (a school yearbook) that continues to be publicly available.  And possible regret over teen hairstyles notwithstanding, no reasonable person could be "highly offended" by sharing a school portrait.

For these reasons and others set forth below, plaintiffs' claims fail pursuant to Rule 12.  In addition, the Complaint must be stricken under Nevada's anti-SLAPP statute, Nev. Rev. Stat. 41.635, *et seq*.  This provision bars lawsuits that, like this one, arise from exercise of the defendant's free-speech rights and for which plaintiffs cannot show a probability of success.

## BACKGROUND AND MATERIAL ALLEGATIONS IN PLAINTIFFS' COMPLAINT

Ancestry is a genealogy company that provides users access to a variety of historical records to trace their family histories.  *See* Ancestry.com.  These sources include obituaries, family trees, marriage records, death records, military records, census records, local history books, and a variety of others.  *See id.*  Some of these records have been collected by Ancestry, others are contributed by users who upload content.  Many of the billions of records available on Ancestry.com have never been accessed by actual users and exist "unseen" in virtual storage.

Here, plaintiffs' claims are premised on Ancestry's inclusion of certain yearbook records in Ancestry's "Yearbook Database."  Ancestry uses these yearbooks in a simple and non-controversial way: it aggregates and makes searchable already-public yearbook information that plaintiffs admit was created by third parties.  *See* ECF No. 1 at ¶ 50.  Thus, if an Ancestry user searches "Jane Johnson, Reno, Nevada," Ancestry may indicate it has a yearbook image for a person with that name in that location.  Subscribers can take the further step of actually viewing the image to determine if it is the Jane Johnson of interest.  *See id.* at ¶¶ 25, 37.  Here, plaintiff Anthony Sessa bases his claims on three high school yearbook portraits accessible to Ancestry users who search his name.  *Id.* at ¶ 27.  Similarly, plaintiff Mark Sessa bases his claims on four records from his high school yearbook—two class portraits, an image of his high school band, and an image of the "Blue Freedom Singers" group in which Mark Sessa participated.  *Id.* at ¶ 39.  Neither plaintiff contends his pictures or information were actually ever viewed by any Ancestry member.  Neither plaintiff articulates or attempts to quantify any monetary injury from Ancestry's storage of these images and information.  Plaintiffs

further concede they were unaware Ancestry maintained these records until their "investigation" of this lawsuit. *See id.* at ¶¶ 24, 36.

Based on Ancestry's inclusion of these decades-old yearbook records in its database, plaintiffs assert four claims on behalf of a putative class of Nevada residents: (1) violation of Nevada Rev. Stat. § 597.770 (Nevada's "right to publicity statute"); (2) violation of Nevada Rev. Stat. § 598.0903 (Nevada's Deceptive Trade Practices statute); (3) intrusion upon seclusion; and (4) unjust enrichment. *Id.* at ¶¶ 68-92.[1]

## LEGAL STANDARDS

**Personal Jurisdiction.** When no federal statute governs personal jurisdiction, courts apply forum state law. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Nevada exercises personal jurisdiction coextensive with federal due process standards. Nev. Rev. Stat. §14.065. "[A] plaintiff bears the burden of demonstrating that his or her allegations would establish a *prima facie* case for personal jurisdiction." *Johnson v. Carmouche*, No. 2:15-cv-00597, 2015 WL 6757537, at *1 (D. Nev. Nov. 4, 2015) (*citing Boschetto*, 539 F.3d at 1115).

**Article III Standing.** To establish standing under the U.S. Constitution, a plaintiff bears the burden of proving an "injury in fact" that is causally linked to the conduct complained of and would be redressed by a decision in plaintiffs' favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) (citation omitted). The plaintiff bears the burden to prove subject matter jurisdiction exists. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990).

---

[1]   *See Callahan v. Ancestry.com*, Case No. 3:20-cv-08437-LB (N.D. Cal.) and *Bonilla v. Ancestry.com*, Case No. 1:20-cv-07390 (N.D. Ill). A motion to dismiss and strike pursuant to California's anti-SLAPP statute is fully briefed in the *Callahan* action, with a hearing set for February 18, 2021.

DEFENDANTS' MOTION TO DISMISS AND STRIKE

1    **Failure to State a Claim.**  A complaint must contain "sufficient factual matter" to state a

2    claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do

4    not suffice." *Id.*  Facts that are "merely consistent with" liability fail to state a claim. *Id.* (quotations

5    omitted).

6    **Motion to Strike Pursuant to Nevada's Anti-SLAPP Statute.**  "If an action is brought

7    against a person based upon a good faith communication in furtherance of the right to petition or the

8    right to free speech in direct connection with an issue of public concern[,]  [t]he  person  against

9    whom the action is brought may file a special motion to dismiss[.]"  Nev. Rev. Stat. § 41.660.  A court

10   will first "[d]etermine whether the moving party has established, by a preponderance of the evidence,

11   that the claim is based upon a good faith communication in furtherance of the right to petition or the

12   right to free speech in direct connection with an issue of public concern[.]" *Id.*  Upon such a showing,

13   the non-moving party must demonstrate "with prima facie evidence a probability of prevailing on the

14   claim." *Id.*

15   <u>**ARGUMENT**</u>

16   **I.**    <u>**THE COURT LACKS PERSONAL JURISDICTION OVER ANCESTRY**</u>

17   A plaintiff bears the burden to satisfy two prongs to establish specific jurisdiction:[2] (1) the

18   "non-resident defendant must purposefully direct his activities or consummate some transaction with

19   the forum or resident thereof"[3]; and (2) the claim must arise out of or relate to the forum-related

20   activities. *See, e.g., Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004).

21   **A.**    **No Purposeful Direction**

22   A plaintiff must show the defendant "(1) committed an intentional act, (2) expressly aimed at

23   the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."

24

25

---

26   [2]  Plaintiffs do not allege Ancestry is subject to general jurisdiction.  Nor could they—the
     Ancestry entities are not incorporated in or headquartered in Nevada and lack "continuous and
27   systematic [contacts] as to render [them] essentially at home" in Nevada.  *See Daimler AG v.
     Bauman*, 134 S.Ct. 746, 760-761 (2014) (quotations and citation omitted).
28

DEFENDANTS' MOTION TO DISMISS AND STRIKE

*Id.* at 803.  "The test is all or nothing' if a plaintiff cannot establish even one of the three prongs, specific jurisdiction cannot attach." *Spy Optic, Inc., v. AreaTrend*, No. 20-55438, 2021 WL 225628, at *3 (9th Cir. Jan. 22, 2021).

      **First,** plaintiffs cannot point to an intentional act Ancestry "aimed at the forum state." Plaintiffs allege Ancestry (a) hosted a universally-accessible website, including to those who happen to reside in Nevada; (b) "advertise[d]" its services through the same universally-accessible website, such that prospective customers who happen to reside in Nevada may have seen the "advertisements"; and (c) plaintiffs and the putative class members, who happen to be Nevada residents, had their names and images "misappropriated." *See* ECF No. 1 at ¶ 17.  None of these acts can fairly be characterized as "aimed at the forum state."  *See Spy Optic*, 2021 WL 225628, at *2 ("Operating a universally accessible website alone cannot satisfy the express aiming prong."); *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution"); *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (placement of advertisements in nationally-distributed papers insufficient for personal jurisdiction); *JibJab Media Inc., v. White Castle Mgmt.*, No. 12-04178, 2013 WL 12123696, at *6 (C.D. Cal. May 14, 2013) ("[T]hat California residents may have been included in a larger group of consumers that JibJab targeted does not show that JibJab 'individually targeted a plaintiff known to be a forum resident.'") (citation omitted); *Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) ("The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.").  Plaintiffs allege Ancestry hosts "730 million individual [yearbook] records," of which only "1.7 million" are from Nevada schools—in other words, a mere 0.23%. *See* ECF No. 1 at ¶ 16.  This incidental connection with Nevada as a result of the universal reach of Ancestry's website and the national focus of its yearbook database is insufficient to show the actions were "aimed at the forum

---

[3]  Plaintiffs have not identified conduct susceptible to purposeful availment analysis. Claims sounding in tort, including right of publicity claims, are analyzed under the purposeful direction
(footnote continued)

DEFENDANTS' MOTION TO DISMISS AND STRIKE

1    state."

2          **Second,** even if plaintiffs could allege harm resulted (as explained below, they cannot),

3    plaintiffs cannot allege Ancestry knew that harm was "likely to be suffered in the forum state."  *See*

4    *Schwarzenegger*, 374 F.3d at 805.  That plaintiffs happened to attend high school in Nevada more than

5    40 years ago gives no indication of their residence at the time of the purported misappropriation, yet

6    that is the only connection between the plaintiffs and Nevada for which plaintiffs' complaint can even

7    arguably be read to allege Ancestry had knowledge.

8          **B.      Plaintiffs' Claims Do Not Arise From Or Relate To Forum-Related Activities**

9          Plaintiffs also fail to establish personal jurisdiction because they cannot point to any forum-

10   related activities by Ancestry.  *See Arthur v. Douglas*, No. 08-8233, 2009 WL 650623, at *4 (C.D.

11   Cal. Mar. 10, 2009) (the key inquiry for this prong is whether plaintiffs "would not have suffered loss

12   'but for' Defendant's forum-related activities").  The only allegations connecting plaintiffs' claimed

13   injury to Nevada are (1) the yearbooks originated there; and (2) plaintiffs happen to live there.  There

14   is no allegation Ancestry had any interaction with Nevada in obtaining the yearbooks—rather,

15   plaintiffs allege the yearbooks were obtained from third parties (of undisclosed locations).  *Id.* at ¶ 50.

16   Plaintiffs allege Ancestry then hosted the yearbook records on its universally-accessible website.

17   Likewise, plaintiffs concede they had no personal interactions with Ancestry.  *See* ECF No. 1 at ¶¶ 22-

18   24, 34-36.  Plaintiffs' Nevada residence does not suffice to confer jurisdiction.  *See Walden*, 134 S. Ct.

19   at 1125.  "[A]fter *Walden* there can be no doubt that the plaintiff cannot be the only link between the

20   defendant and the forum."  *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751

21   F.3d 796, 802 (7th Cir. 2014), *as corrected* (May 12, 2014) (quotation, citation omitted).  Put another

22   way, "changing a single variable—[plaintiffs'] residency . . . —there would be absolutely nothing

23   tying" Ancestry's conduct to Nevada.  *See Dobrowolski v. Intelius, Inc.*, 2017 WL 3720170, at *5

24   (N.D. Ill. Aug. 29, 2017).

25         Accordingly, plaintiffs' complaint should be dismissed for lack of personal jurisdiction.

26

27   _____

28   test.  *See, e.g., Schwarzenegger*, 374 F.3d at 803.

## II.   <u>PLAINTIFFS' CLAIMS FAIL BECAUSE PLAINTIFFS DID NOT SUFFER ANY INJURY AS A RESULT OF THE ALLEGED VIOLATIONS</u>

Actual injury is a jurisdictional requirement for each of plaintiffs' claims pursuant to Article III of the U.S. Constitution. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  In addition, actual injury is a required element of plaintiffs' claim pursuant to Nevada's "right of publicity" statute and violation of the Nevada Deceptive Trade Practices statute. *See* Nev. Rev. Stat. § 597.810 (permitting action at law "for any injuries sustained by reason of the unauthorized use"); *Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1145 (D. Nev. 2019) (dismissing Deceptive Trade Practices claim in recognition that NRS 41.600 "generally limits standing to those who were 'directly harmed' by a defendant's deceptive trade practices") (citation omitted).

To survive a motion to dismiss, allegations of actual injury must be both plausible and causally linked to the unlawful practice at issue. *E.g.*, *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1172 (9th Cir. 2018) ("a plaintiff seeking damages for the violation of a statutory right must not only plausibly allege the violation but must also plausibly allege a 'concrete' injury causally connected to the violation."); Nev. Rev. Stat. § 597.810 (injury must be caused "by reason of the unauthorized use"); *Prescott*, 410 F. Supp. 3d at 1145 (standing only where "direct harm" results from the deceptive trade practices).  It must also be "'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561.

**<u>No Concrete Injury.</u>**  As a preliminary matter, nothing about the benign yearbook excerpts at issue is inherently harmful.  Yearbook information is not private.  The very purpose of a yearbook is public distribution, whether assessed by common experience or accepted definitions. *See* "Yearbook." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/yearbook ("a school ***publication*** that is compiled usually by a graduating class and that serves as a record of the year's activities") (emphasis added); "Publish." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/publish ("***to make generally known***"; "***to disseminate to the public***") (emphases added).

Even beyond the initial yearbook recipients, yearbook information remains accessible to others through the recipients' sharing of the books, through school and local libraries, and even through the

national Library of Congress.[4]   Indeed, full color copies of Nevada high school yearbooks are available through the websites of various Nevada public library branches.[5][6]

"A matter that is already public or that has previously become part of the public domain is not private." *Rondberg v. McCoy*, No. 09-cv-1672, 2009 WL 5184053, at *9 (S.D. Cal. Dec. 21, 2009). Where, as here, the information at issue is already a matter of public record, its disclosure cannot cause harm. *See, e.g., Jackson v. Loews Hotels, Inc.*, No. 18-827, 2019 WL 2619656, at *3–4 (C.D. Cal. Jan. 4, 2019) (plaintiff suffered no injury-in-fact when only publicly available information such as her "full name, email, phone number, and address" was exposed in data breach); *Fus v. CafePress, Inc.*, No. 19-cv-06601, 2020 WL 7027653, at *3 (N.D. Ill. Nov. 30, 2020) (no concrete injury where "most of Fus's information possessed by CafePress at the time of the hack was publicly available").

Nor can plaintiffs plausibly allege any actual injury resulted from the manner in which this information was used.  Plaintiffs contend only that Ancestry offered *access* to their yearbook excerpts. They do not allege Ancestry otherwise used their names or images to promote its services—for example, through a representation that plaintiffs endorse Ancestry or even that plaintiffs use Ancestry's services.  *Cf. Cohen v. Facebook, Inc.*, 798 F. Supp. 2d 1090, 1097 (N.D. Cal. 2011) (dismissing "right of publicity" claims where "Plaintiffs have not shown how the mere disclosure to their Facebook friends that they have employed the Friend Finder service (even assuming some of them did not) causes them any cognizable harm, regardless of the extent to which that disclosure could also be seen as an implied endorsement by them of the service.").  In other words, no further association is suggested by plaintiffs' names or images except the fact that they appear in the

---

[4]   *See, e.g., https://www.loc.gov/resource/mss85590.041/?sp=1&r=- 0.649,0.265,2.298,0.978,0* (featuring, for example, full pages from Rahway High School's 1951 yearbook).

[5]   *See, e.g.,* Henderson Libraries Digital Archives, *available at* http://hendersonlibraries.sobeklibrary.com/basic-yearbook/all/thumbnails (online, digital copies of high school yearbooks from 1950-2018); Nevada Library Cooperative, available at https://nvlibrarycoop.contentdm.oclc.org/digital/?page=2 (collections of Nevada high school yearbooks online, for free, for years spanning 1912-2013) (last visited February 10, 2021).

1    yearbook.  But that information is already publicly available (for free) through the yearbooks

2    themselves, and plaintiffs already distributed this information publicly and without payment or further

3    conditions by consenting to appear in the yearbooks in the first instance.  Plaintiffs' conclusory

4    assertion they "lost the economic value of their likenesses" cannot satisfy *Twombly*'s plausibility bar

5    when any conceivable value associated with the yearbook information was abandoned long ago by

6    plaintiffs themselves.  *See* ECF No. 1 at ¶ 80.  The value Ancestry offers to its users resulted from the

7    services it offered—access to aggregated, searchable records for genealogy research—not from the

8    value of plaintiffs' specific yearbook records, which could have been (and were) shared by others who

9    had copies of the yearbooks.  *See In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 327

10   (E.D.N.Y. 2005) ("absolutely no support" for position individual passengers' personal information

11   had any value for which they should have expected to be compensated).

12           Further, although plaintiffs would be unable to demonstrate actual injury even if they could

13   allege someone sought out their yearbook records and paid to access them, they fail to allege this ever

14   occurred.  Instead, they contend only that their records were among the "billions" of others that users

15   of the website *could* search for purposes of viewing or downloading.  *See* ECF No. 1 at ¶¶ 3, 8, 10.

16   That plaintiffs' already-public yearbook information merely *exists* in Ancestry's database is the

17   proverbial tree falling in unoccupied woods—without further allegations of *access* this mere data

18   storage could not possibly have caused plaintiffs any injury.  *Cf. Beck v. McDonald*, 848 F.3d 262,

19   269 (4th Cir. 2017) (no Article III injury where leaked medical records were not accessed by

20   anyone—it was implausibly "attenuated" to assume a thief would "select [plaintiff]'s report from the

21   over 3,600 reports in the missing boxes").

22           Nor can plaintiffs salvage their infirm injury allegations by contending that Ancestry

23   benefitted from use of this information. A defendant's alleged gain does not mean the plaintiffs were

24   injured.  *See, e.g., Silha v. ACT, Inc.*, No. 14 C 0505, 2014 WL 11370440, at *3 (N.D. Ill. Sept. 2,

25

26          ⁶  These websites can be judicially noticed.  *Romero v. Securus Techs., Inc.*, 216 F. Supp. 3d
     1078, 1085 (S.D. Cal. 2016) ("The court can take judicial notice of public records and government
27   documents available from reliable sources on the Internet, such as websites run by governmental
     agencies.") (quotation, citation omitted).
28

DEFENDANTS' MOTION TO DISMISS AND STRIKE

1   2014), *aff'd*, 807 F.3d 169 (7th Cir. 2015) ("allegations that Defendants profited from selling

2   Plaintiffs' PII does not amount to an injury in fact for standing purposes."); *In re Google, Inc. Privacy*

3   *Policy Litig.*, No. 12-01382, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("plaintiff must do

4   more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process

5   he lost dollars of his own.").

6   **No Causation Or Redressability.**  Even if plaintiffs could plausibly allege a concrete injury

7   (they cannot), there is no plausible link between any such injury and the challenged conduct, and it is

8   equally unlikely redress would result from a favorable decision.  *See Lujan*, 504 U.S. at 560-61.  As

9   discussed, plaintiffs already voluntarily shared this information with hundreds of individuals when

10  they allowed it to be published in their yearbooks in the first instance.  Accordingly, to the extent

11  plaintiffs could allege any "loss" to the value of their names and images, such "loss" would have

12  arisen from the original publication and distribution, in which Ancestry had no part.  For this same

13  reason, any purported "injury" would not be redressed by a favorable decision here—this public

14  information is available through a variety of forums, including the yearbooks themselves (which were

15  shared with Ancestry by third-parties, not plaintiffs).  *See* ECF No. 1 at ¶ 50.  Any decision in

16  plaintiffs' favor would do nothing to address its widespread availability through other, third-party

17  sources.  *See Lujan*, 504 U.S. at 562-570 (purported injury was not redressable where resolution

18  "would not have remedied respondents' alleged injury anyway, because it would not have been

19  binding" on those who were "not parties").

20  **III.    PLAINTIFFS' "RIGHT OF PUBLICITY" CLAIM FAILS BECAUSE THE**

21  **CHALLENGED CONDUCT IS EXCEPTED FROM THE STATUTE**

22      **A.    The Use Is "Not Directly Connected" With Any Commercial Sponsorship**

23      Even where use of a name or image "is contained in material which is commercially

24  sponsored," Nevada Revised Statute section 597.790 nonetheless exempts liability where "the use is

25  not directly connected with the commercial sponsorship."  Nev. Rev. Stat. § 597.790(a).  Though no

26  cases have interpreted this exception, its application here is clear based on the statute's plain language.

27  Plaintiffs allege Ancestry hosts yearbook records and previews the existence of those records to the

28  limited universe of users who *might* have searched for plaintiffs—plaintiffs' yearbook images are not

-11-

used to endorse Ancestry or advertise some unrelated product.  Ancestry's use is akin to an online newspaper previewing an article about President Biden's inauguration that includes his image, but requires readers to go through a paywall to access it.  This does not suggest President Biden "endorses" the newspaper or any other product it may advertise.  Though the name and image might be contained among material that is commercially sponsored, there is no connection between the use and any "commercial sponsorship."  *See* Nev. Rev. Stat. § 597.790(a).

The court in *D'Andrea v. Rafla-Demetrious* addressed a similar situation in assessing whether an action fell under the analogous "incidental use" exception to New York's "right of publicity" statute.  *See* 972 F. Supp. 154, 155 (E.D.N.Y. 1997), *aff'd*, 146 F.3d 63 (2d Cir. 1998).  There, a student asserted a claim based on use of his photograph in the school's recruiting brochure—the photograph comprised one half of a page in a sixteen-page document, and the student was one of 42 whose photographs appeared in the brochure.  *Id.* at 156-57.  The court held the use "could hardly have been more 'incidental,'" both as a matter of law and "common sense." *Id.* at 157-58.  The court noted "[i]f [plaintiff] has a cause of action here, then so do, for example, all of the students whose photographs happen to appear in their schools' admissions brochures. Presumably, most people in [plaintiff's] situation would find some enjoyment, or at least amusement, in the discovery of their photograph." *Id.* So too here.  The use of plaintiffs' images here is even more "fleeting" than the photograph in *D'Andrea*—far from being "one of 42," plaintiffs here allege their yearbook records are among the "billions" that users *might* seek out.

### B.    The Use Is In Connection With "Public Affairs"

Nevada Revised Statute section 597.790 also exempts liability for use of a person's name or likeness "in connection with a news, public affairs or sports broadcast or publication[.]"  Nev. Rev. Stat. § 597.790(c).  It is immaterial whether the use occurs in connection with a for-profit enterprise. *See, e.g., Leidholdt v. L.F.P. Inc.*, 860 F.2d 890, 895 (9th Cir. 1988) (rejecting misappropriation claims under analogous California and New York statutes based on public affairs exception and holding, "[t]he fact that Hustler Magazine is operated for profit does not extend a commercial purpose to every article within it."); *White v. City of Sparks*, 341 F. Supp. 2d 1129, 1137 (D. Nev. 2004), *aff'd*, 500 F.3d 953 (9th Cir. 2007) ("[I]t is unquestioned that the First Amendment protection is not lost

1   simply because the protected expression is sold for profit.").

2        Nor is the exception "limited to 'news' in the narrow sense of reports of current events. It

3   extends also to the use of names, likenesses or facts in giving information to the public for purposes of

4   education, amusement or enlightenment, when the public may reasonably be expected to have a

5   legitimate interest in what is published." *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200 (1998)

6   (citations and internal quotation marks omitted);[7]  *See also Carlisle v. Fawcett Publ'ns, Inc.*, 201 Cal.

7   App. 2d 733, 746 (1962) ("The privilege of printing an account of happenings and of enlightening the

8   public as to matters of interest is not restricted to current events; magazines and books, radio and

9   television may legitimately inform and entertain the public with the reproduction of past events,

10  travelogues and biographies.").[8]

11        Application of this exception focuses on the purpose in using a person's identity.  "If the

12  purpose is 'informative or cultural' the use is immune[.]"  *New Kids On The Block v. News Am.*

13  *Publ'g.., Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992).  For

14  example, in *New Kids On The Block*, the plaintiffs asserted misappropriation claims where the

15  defendants posted an "article" with the name and pictures of the group that solicited readers to call a

16  pay-per-call phone number to vote for "the sexiest New Kid."  *Id.* at 1542.  The court dismissed the

17  plaintiffs' misappropriation claims, holding this use of the group's name and image was "gathering

18

19

20

21

22

23    _____

24        [7]   The "public affairs" exception under Nev. Rev. Stat. section 597.790 is substantively
      identical to the exception in California's "right of publicity" statute.  *Compare* Nev. Rev. Stat. §

25    597.790 (exempting "use is in connection with a news, public affairs or sports broadcast or
      publication") *with* Cal. Civ. Code § 3344(d) (exempting use "in connection with any news, public

26    affairs, or sports broadcast or account").  Because Nevada courts have not had occasion to
      examine this exception in any depth, it is appropriate to consider California decisions interpreting

27    its scope.  *Cf. Coker v. Sassone*, 432 P.2d 746, 751 (Nev. 2019) ("[f]ollowing California's lead"
      where statutes were similar, and both were motivated by First Amendment considerations).

28

-13-
DEFENDANTS' MOTION TO DISMISS AND STRIKE

1  information for dissemination to the public," a protected activity.  *Id.* at 1546.

2      Likewise, in *Aldrin v. Topps Co., Inc.*, No. 10-09939, 2011 WL 4500013 (C.D. Cal. Sept. 27,

3  2011), astronaut Buzz Aldrin asserted a misappropriation claim where the defendant—a baseball card

4  manufacturer—released a new product line with plaintiff's image on the front and historical

5  information related to the picture on the back.  *Id.* at *1.  Again, the court dismissed the claim because

6  the activity was protected.  The use of Mr. Aldrin's information was not "linked to products that bore

7  no relationship" to plaintiff—rather, "the speech *is* the product, and is protected." *Id.* at *3 (emphasis

8  in original).

9      So too here.  Plaintiffs' names and images are not being used to sell an unrelated product;

10  rather, plaintiffs allege their names and images are merely a part of the full yearbook record that some

11  customers pay to access.  *See* ECF No. 1 at ¶¶ 30, 37.[9]  Ancestry has simply gathered historic,

12  biographical information for dissemination to the public—information scarcely different in character

13

14

15

16

17

18

19

20      [8]  *See also* § 6:9. The newsworthiness-public interest limitation, Privacy Torts § 6:9 ("[T]he
      newsworthiness-public interest privilege is not limited to matters regarding public figures and has
21      been freely defined to extend to an almost limitless variety of matters about private individuals
      which are of interest to the viewing, reading or listening public—matters of sexual, social and
22      ethical mores; current news about public events or occurrences; historical events or occurrences;
      social movements and problems; public safety; political occurrences and/or abuse of office; travel;
23      entertainment; human interest stories; consumerism; landlord rental policy; grooming and fashion;
      romance; crime and prisons; physical fitness; medical and psychiatric issues; labor and
24      employment; accidents and catastrophes; matters of educational interest.") (collecting cases).
25      [9]  To the extent plaintiffs attempt to distinguish the "targeted promotional email messages" or
      the indication that "[t]here's more to see," in connection with the preview of the record (*see* ECF
26      No. 1 at ¶¶ 32, 44, 56), these uses are likewise not actionable under the corollary exception that
      permits use "in connection with an advertisement or commercial announcement for a use
27      permitted by this subsection[.]" Nev. Rev. Stat. § 597.790(f).

28

than if Ancestry had collected and stored various local telephone directories.[10]  *New Kids On The Block*, 745 F. Supp. at 1546 (gathering information for dissemination to the public for informative purposes is protected speech).  As in *Topps*, here this "speech *is* the product, and is protected."  *See Topps*, 2011 WL 4500013 at *3.

IV.      **PLAINTIFFS' CLAIMS ARE FORECLOSED BY SECTION 230 OF THE COMMUNICATIONS DECENCY ACT**

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).  This immunity encompasses each of the state-law claims plaintiffs assert here.  *See, e.g., Seaver v. Estate of Cazes*, No. 2:18-cv-712, 2019 WL 2176316, at *3 (D. Utah May 20, 2019) ("the CDA 'creates a federal immunity to any state law cause of action that would hold computer service providers liable for information originating with a third party.'") (citation omitted).

"The CDA has been interpreted to provide a 'robust' immunity for internet service providers and websites, with courts 'adopting a relatively expansive definition of 'interactive computer service' and a relatively restrictive definition of 'information content provider.'" *Goddard v. Google, Inc.*, 640 F. Supp. 2d 1193, 1196 (N.D. Cal. 2009) (quoting *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003)).  Here, plaintiffs' allegations establish that Ancestry is an interactive computer

---

[10]   Indeed, because there is significant public interest in yearbook information, historical yearbook records are available from numerous paid and free services.  *See, e.g.,* Nevada Library Cooperative, *available at* https://nvlibrarycoop.contentdm.oclc.org/digital/?page=2 (collections of Nevada high school yearbooks online, for free, for years spanning 1912-2013);  Genealogy Resources at the Library, San Francisco Public Library, available at https://sfpl.org/locations/main-library/general-collections/genealogy-resources-library (hosting "an extensive collection of high school yearbooks going back to the 1800s that can assist with genealogical research, especially photographs.").  This type of widely-available historical information is not limited to yearbook records, but also encompasses a variety of pictorial archives, including local sporting events (e.g., *http://www.enfieldhockey.org/Page.asp?n=16089* (vintage photo collections for youth field hockey)); military photographs (*https://www.loc.gov/rr/print/resource/065_mili.html* (repositories of publicly-available military images)); obituaries (*http://www.scgsgenealogy.com/obit-search_soundex.html* (online access to obituaries)); and others.  Endorsing plaintiffs' theories could extend to those sources as well and jeopardize public access to broad swaths of historical information.

1    service entitled to this immunity.

2        There is no dispute that Ancestry operates a website accessible to multiple users.  *See* ECF No.

3    1 at ¶¶ 6-10 (multiple users can access the website); 20-21 (alleging Ancestry owns and operates the

4    website at issue); 47 U.S.C. § 230(f)(2) (defining "interactive computer service" to mean one that

5    "provides or enables computer access by multiple users to a computer server"); *Caraccioli v.*

6    *Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017)

7    (website operator was "interactive computer service").

8        Further, plaintiffs concede that the content of the yearbooks was provided by third parties.

9    ECF No. 1 at ¶ 50 ("At least some, and possibly all, of the Yearbook Database was built via such

10   [third-party] donations.").  Where, as here, "a third party willingly provides the essential published

11   content, the interactive service provider receives full immunity regardless of the specific editing or

12   selection process."  *Carafano*, 339 F.3d at 1124.

13       Plaintiffs may attempt to wrest Ancestry into the "restrictive definition of 'information content

14   provider,'" *Goddard*, 640 F. Supp. 2d at 1196, based on its role in uploading the information to the

15   internet or reformatting the third-party content, but this limited involvement is insufficient.  *Kimzey v.*

16   *Yelp! Inc.*, 836 F.3d 1263, 1270-71 (9th Cir. 2016) ("Yelp is not liable for disseminating . . . [user-

17   generated] content in essentially the same format to a search engine, as this action does not change the

18   origin of the third-party content."); *Jones v. Dirty World Entm't Recordings LLC*, 755 F.3d 398 (6th

19   Cir. 2014) (selecting and republishing user generated content is not "creation or development.").  For

20   example, in *Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019), the

21   plaintiffs argued Google was an "information content provider" where it created "enhanced content

22   that was derived from third-party content but has been so augmented and altered as to have become

23   new content."  *Id.* at 1266.  The court rejected the notion that "data [] collected from a third party and

24   re-presented in a different format" "constitute[s] the 'creation' or 'development' of information[.]"  *Id.*

25   at 1269.  Were it otherwise, "nothing would be" immune: "every representation by a search engine of

26   another party's information requires the translation of a digital transmission into textual or pictorial

27   form[.]"  *Id.*  Likewise, the court rejected the plaintiffs' argument that Google's creation of a map

28   pinpoint to reflect the location of businesses that otherwise did not have an address listed was

-16-

sufficient to transform Google into an "information content provider." *Id.* Although Google created the pinpoint, the court held it was "derived" from third-party content and "constrained by the underlying third-party information," and thus Google was not the information content provider. *Id.* Here, as in *Marshall*'s, plaintiffs' claims arise entirely from third-party content.

The Ninth Circuit's decision in *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) provides a useful framework to distinguish Ancestry's actions from conduct that rises to the level of "information content provider." There, the court considered first whether Roommates.com was immune under section 230 where it required users to enter discriminatory information as part of its registration process. *Id.* at 1165. The court determined Roommates.com was not entitled to immunity for this aspect of its site because "the part of the profile that is alleged to offend the Fair Housing Act and state housing discrimination laws . . . is provided by subscribers in response to Roommate's questions, which they cannot refuse to answer if they want to use defendant's services." *Id.* at 1166. On the other hand, Roommates.com also hosted an "Additional Comments" page as part of its sign-up process; users were prompted to write "a paragraph or two describing yourself and what you are looking for in a roommate." *Id.* at 1173. In turn, "Roommate publishe[d] these comments as written. . . . [and was] not responsible, in whole or in part, for the development of this content, which comes entirely from subscribers and is passively displayed by Roommate." *Id.* at 1173-74. Accordingly, "[t]his [was] precisely the kind of situation for which section 230 was designed to provide immunity," even though users could (and did) enter discriminatory preferences. *Id.* at 1174.

Here, like the "Additional Comments" in *Roommates.com*, plaintiffs allege Ancestry gave users the option to donate old yearbooks (ECF No. 1 at ¶ 50) and Ancestry then hosted this third-party content. Unlike the pre-set, discriminatory questions users were required to answer in *Roommates.com*, Ancestry was "not responsible, in whole or in part, for the development of this content[.]" *Roommates.Com*, 521 F.3d at 1173-74.

The decision in *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785 (N.D. Cal. 2011) provides another useful distinction. There, the court held Facebook was an "information content provider" because Facebook did not just publish the tortious content, but actually created and developed that

-17-

content itself—Facebook used plaintiffs' likenesses to create a "Sponsored Story" in which plaintiffs' names and images were used by Facebook as "endorsements of third-party products or services." *Id.* at 801. Here, plaintiffs allege no such thing—they do not contend Ancestry used their names or images to endorse Ancestry (or any other product). Instead, they claim only that Ancestry hosted the third-party content and required some users to pay to access that content—that alone is insufficient to transform Ancestry into an "information content provider." *See Roommates.com*, 521 F.3d at 1173 (portion of site for which Roommates.com was entitled to section 230 immunity was "visible only to paying subscribers.").

Because Ancestry merely published the third-party content, it is immune from these state-law causes of action pursuant to section 230 of the Communications Decency Act.

## V.   PLAINTIFFS' RIGHT OF PUBLICITY CLAIM IS PREEMPTED BY SECTION 301 OF THE COPYRIGHT ACT

Right of publicity claims are preempted by section 301 of the Copyright Act to the extent the claims rest on distribution or display of a copyrighted work, rather than on the misuse of a plaintiff's "likeness." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012–13 (9th Cir. 2017). The Ninth Circuit applies the following framework:

> [A] publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness on merchandise or in advertising. But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act.

*Id*. at 1011 (emphasis in original). The Ninth Circuit's emphasis on the "use" of a person's name or likeness derived from the Seventh Circuit's decision in *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005), which held "[t]he basis of a right of publicity claim concerns the message—whether the plaintiff endorses or appears to endorse the product in question." *Id.*

In *Maloney*, the plaintiffs asserted claims under California's right-of-publicity statute where "[c]onsumers could view digital thumbnails of the images" available for sale and were given the option to purchase the full versions of the photographs. 853 F.3d at 1007. Although the plaintiffs alleged the defendant exploited their names and likenesses for commercial purposes, the Ninth Circuit deemed the claims preempted—plaintiffs "were asserting rights equivalent to the exclusive rights

contained in the Copyright Act because they did not identify a use of their names or likenesses independent of the display, reproduction, and distribution of the copyrighted images in which they are depicted." *Id.* at 1008-09.  In reaching its decision, *Maloney* distinguished the court's earlier decision in *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), where "Abercrombie went well beyond the mere republication of the photograph.  Rather, it published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo.  ***Importantly, we said that Abercrombie had suggested that the surfers had endorsed Abercrombie's t-shirts***." *Id.* at 1013-14 (discussing *Downing*, 265 F.3d 994) (quotations, citations, alterations omitted) (emphasis added).

Here, as in *Maloney* (and unlike *Downing*), although plaintiffs frame their claims in terms of Ancestry's "use" of their names and likenesses, in substance plaintiffs challenge Ancestry's model of paid *access* to their copyrighted yearbooks.[11]  Plaintiffs do not identify any use of their names or images apart from their mere appearance in the yearbook pages—they do not contend their names or images were used to make it appear they "endorse[d] the product in question" in any way.  *See Toney*, 406 F.3d at 910.[12]

Had plaintiffs wished to limit distribution of these yearbook pages, they could have "simply retain[ed] [or acquired] the copyright."  *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911, 1921 (1996) (misappropriation claims preempted by Copyright Act).  That they failed to do so does not allow them to circumvent the federal Copyright Act by asserting state-law claims.

---

[11]   The yearbooks at issue here undoubtedly fall within the "subject matter of copyright." *See* 17 U.S.C. §§ 102-103 (copyright protection for "original works of authorship fixed in any tangible medium of expression," including "compilations").  In any event, the scope of preemption is broader than the scope of copyright protection—"the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *Endemol Entm't B.V. v. Twentieth Television Inc.*, 1998 WL 785300, at *3 (C.D. Cal. Sept. 29, 1998) (quotation, citation omitted).

[12]   *See also Jules Jordan Video, Inc. v. 144942 Canada, Inc.*, 617 F.3d 1146, 1152-55 (9th Cir. 2010) (plaintiffs' claims based on cover pictures used to advertise DVDs were preempted; "The pictures on the covers of the DVDs are 'still shots' of the copyrighted video performance. Thus, Gasper's argument that his right of publicity was violated by defendants' reproduction of the covers is misguided.").

## VI.   <u>PLAINTIFFS CANNOT STATE A CLAIM FOR INTRUSION UPON SECLUSION</u>

"Under Nevada law, a claim for Unreasonable Intrusion upon Seclusion requires (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Toth v. Stephens & Michaels Assocs., Inc.*, 2014 WL 5687418, at *4 (D. Nev. Nov. 4, 2014) (quotation, citation omitted).   Plaintiffs cannot satisfy these requirements.

First, "[i]ntrusion upon seclusion . . . [is] grounded in a plaintiff's objective expectation of privacy." *Franchise Tax Bd. of State of Cal. v. Hyatt,* 133 Nev. 826, 843 (2017), *rev'd on other grounds Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485 (2019).   "[A] defendant cannot be liable for disclosing information about a plaintiff that was already public." *Id.*   Here, the information plaintiffs rely on appeared publicly in yearbooks anyone could access. *See id.* (rejecting claim where name, address, and social security number "had been publicly disclosed on several occasions"). *See also Ault v. Hustler Magazine, Inc.*, 860 F.2d 877, 883 (9th Cir. 1988) ("when a person agrees to be photographed for a newspaper, the photograph is not a private concern and its republication does not create ground for liability."), *overturned on other grounds as recognized by Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990).

Moreover, the yearbook information is otherwise generally available, public information— names, depictions of plaintiffs' faces, and their school activities are not private matters. *See, e.g., Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (1997) ("name and former physical appearance are not private facts"); *Gordon v. F.B.I.*, 388 F. Supp. 2d 1028, 1040 (N.D. Cal. 2005) (names of TSA employees were "not private"); *Pierce v. Kernan*, 2017 WL 4621252, at *7 (S.D. Cal. Oct. 16, 2017) (with respect to their activities, "no privacy rights could have reasonably existed while petitioner was out in the public and viewable to the naked eye.").

Second, the information at issue is not "highly offensive to a reasonable person." *Toth*, 2014 WL 5687418 at *4.   Almost every person who attended school in the United States (including plaintiffs) have voluntarily had *exactly* this type of information published about them—in school yearbooks.   The information at issue—school portraits and participation in a school singing group—is entirely benign.   Even setting aside that plaintiffs themselves already voluntarily disclosed this

1   information in their public yearbooks, its dissemination would not otherwise offend any reasonable

2   person.  The Nevada Supreme Court established a useful framework in *PETA v. Bobby Berosini, Ltd.*,

3   111 Nev. 615 (1995).  There, the court held a claimed intrusion—videotaping a performer backstage

4   before his show—was not "highly offensive" by considering three factors: "[1] the degree of the

5   alleged intrusion, [2] the context in which the actions occurred, and [3] the motive of the supposed

6   intruder."  *Id.* at 634.   With respect to the first, the court relied on the "nonintrusive nature of the

7   taping process"—the performer was unaware he was being taped.   *Id.*  Here, plaintiffs voluntarily

8   appeared in the yearbooks, and Ancestry did not intrude on plaintiffs to obtain the information; rather,

9   plaintiffs allege Ancestry acquired the yearbooks from third parties who chose to donate old

10  yearbooks.  As to the second—the context—*PETA* held the filming did not occur "in a private

11  bedroom . . . or in a hospital room . . . or in a restroom . . . or in a young ladies' dressing room . . . or

12  in any other place traditionally associated with a legitimate expectation of privacy."  *Id.* at 635.

13  Again, the same is true here—as discussed above, there is no "legitimate expectation of privacy" in

14  plaintiffs' yearbook excerpts, which were intended for public distribution; indeed, it was as a result of

15  that public distribution that Ancestry was able to obtain the yearbooks from a third party.  With

16  respect to the third factor, *PETA* held the filmmaker was "not trying to pry, he was not trying to

17  uncover the covered-up," but was instead "merely memorializing on tape what he and others could

18  readily perceive."  *Id.*  Here, as in *PETA*, regardless of Ancestry's inclusion of the yearbooks in its

19  database, others "could readily perceive" the yearbook information through the published yearbooks.[13]

20          Accordingly, plaintiffs' third cause of action should be dismissed.

21

22          [13]   *See also, e.g., Stern v. Weinstein*, No. 09-1986, 2010 WL 11459791, at *6 (C.D. Cal. Jan.
    6, 2010), *aff'd*, 512 F. App'x 701 (9th Cir. 2013) (case did "not present a 'sufficiently serious'
23  invasion of privacy" where "Plaintiff voluntarily shared his posting with approximately 2,300
    CAALA listserv members"; "Absent any allegation of the unauthorized accessing or disclosure of
24  sensitive medical information or comparably sensitive or embarrassing information, this claim
    fails."); *In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014)
25  (disclosure of a person's name and identity, contact list, and contents of communications to third-
    party developers was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040,
26  1063 (N.D. Cal. 2012) (disclosure of a person's age, gender, and geolocation information was not
    a breach of social norms); § 12:6. Highly offensive to a reasonable person, 2 Entertainment Law
27  3d: Legal Concepts and Business Practices § 12:6 ("Generally, accurate photographic depictions
        (footnote continued)

28

                                            -21-
──────────────────────────────────────────────
                      DEFENDANTS' MOTION TO DISMISS AND STRIKE

1    **VII.   PLAINTIFFS CANNOT STATE A CLAIM FOR VIOLATION OF NEVADA'S**

2    **DECEPTIVE TRADE PRACTICES STATUTE**

3         "[A] defendant engages in a 'deceptive trade practice' if . . . the defendant 'knowingly makes a

4    false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of

5    goods or services for sale or lease or a false representation as to the sponsorship, approval, status,

6    affiliation or connection of a person therewith.'"  *Prescott*, 410 F. Supp. 3d at 1145 (D. Nev. 2019)

7    (quoting Nev. Rev. Stat. § 598.0915).  Plaintiffs' claim merely rehashes the statutory requirements

8    (*see* ECF No. 1 at ¶¶ 77-78) without pointing to any "false representations" by Ancestry.  Indeed, the

9    only "representation" identified in plaintiffs' Complaint is Ancestry's truthful disclosure that

10   plaintiffs' yearbook records were accessible through its website.  Plaintiffs do not allege Ancestry

11   made *any* representations as to the "source," "sponsorship," "approval," "affiliation," "connection,"

12   "association" or "certification" of those services, let alone false representations.  Plaintiffs' second

13   cause of action should be dismissed.[14]

14   **VIII.  PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT**

15        To succeed on a claim for unjust enrichment, a plaintiff must prove the defendant unjustly

16   retained the money or property of another, against fundamental principles of justice or equity and

17   good conscience. *See Leasepartners Corp. v. Robert L. Brooks Tr. Dated November 12, 1975*, 113

18   Nev. 747, 755 (1997).  As set forth above, plaintiffs here cannot plausibly allege Ancestry benefitted

19   at their expense.  *See supra* at Part II.   Further, because there is no actionable right of privacy or

20   publicity here, plaintiffs cannot claim to be owed compensation.  *See supra* at Part III.  Accordingly,

21   plaintiffs' fourth cause of action should be dismissed.

22   **IX.    THE COURT SHOULD STRIKE PLAINTIFFS' CLAIMS PURSUANT TO**

23   **NEVADA'S ANTI-SLAPP STATUTE**

24        Under Nevada law, "[a] person who engages in a good faith communication in furtherance of

25   _____

26   of an individual are not considered highly offensive to a reasonable person.").

27   [14]  To the extent plaintiffs rely on the alleged violation of the "right of publicity" statute as the
     basis for this claim pursuant to Nev. Rev. Stat. 597.770 (*see* ECF No. 1 at ¶ 79), it is entirely

28   derivative and thus fails for the same reasons.  *See supra* at Part III.

the right to petition or the right to free speech in direct connection with an issue of public concern is immune from any civil action for claims based upon the communication."  Nev. Rev. Stat. § 41.650. The anti-SLAPP statute recognizes four categories of protected speech and petitioning, including any truthful "[c]ommunication made in direct connection with an issue of public interest in a place open to the public or in a public forum."  Nev. Rev. Stat. § 41.637.  The conduct at issue here falls within this category of protected speech.

First, it is well established that "[w]eb sites accessible to the public ... are 'public forums' for purposes of the anti-SLAPP statute."  *Stark v. Lackey*, 136 Nev. 38, 42 n. 2 (2020) (quoting *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006)).  Here the challenged yearbook excerpts appeared on Ancestry's website, a public forum.  *See id.*

Second, the speech at issue occurred "in direct connection with an issue of public interest."  *See* Nev. Rev. Stat. § 41.637(4).  "[M]atters in the public interest are not restricted to current events," and instead broadly encompass activities that "may legitimately inform and entertain the public with the reproduction of past events[.]"  *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 543 (1993) (quotations, citations omitted).[15]  That the challenged speech is a "documentary . . . of an historical nature" does not "diminish[] any constitutional protection it enjoys."  *Gates v. Discovery Commc'ns, Inc.,* 34 Cal. 4th 679, 695–96 (2004).  "[T]here is no indication that the First Amendment provides less protection to historians than to those reporting current events."  *Id.* (quotation, citation omitted). Nor does it matter that the statements concern information of interest to a specific community, or about an otherwise non-public person.  *See, e.g., Hicks v. Richard*, 39 Cal. App. 5th 1167, 1176 (2019), *review denied* (Jan. 2, 2020) (there was "little question" the conduct of a private elementary school principal implicated an issue of public interest); *Gates*, 34 Cal. 4th at 683, 696 (anti-SLAPP motion granted where plaintiff, "a person who many years previously served a prison term for a felony

---

[15]   In recognition that "California's anti-SLAPP statute is similar in purpose and language to Nevada's anti-SLAPP statute,"  *John v. Douglas Cty. Sch. Dist.*, 125 Nev. 746, 756 (2009), the Nevada Supreme Court "adopt[ed] California's guiding principles . . . for determining whether an issue is of public interest under NRS 41.637(4)."  *Shapiro v. Welt*, 389 P.3d 262, 268 (2017); *see Coker v. Sassone*, 432 P.2d 746, 751 (Nev. 2019) ("Following California's lead, we too define an issue of public interest broadly").

-23-
DEFENDANTS' MOTION TO DISMISS AND STRIKE

conviction but who has since lived an obscure, lawful life" filed suit based on historical documentary).

The yearbooks at issue serve as "a record of the year's activities" at each plaintiff's respective school.  *See* "Yearbook." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/yearbook.  They are a snapshot in time, in the same way as a clipping from a local newspaper documenting a town fair, or a vignette in Ken Burns' "Jazz" documentary featuring local club attendees.  Much like the government-run libraries that have collected and maintained this exact information because of its historical value,[16] Ancestry collects this historical, documentary information for others to access.  *See, e.g., New Kids On The Block*, 745 F. Supp. at 1546 ("gathering information for dissemination to the public" is protected activity); *Dora*, 15 Cal. App. 4th at 543 (1993) (reproduction of past events is matter in the public interest).  Congress has recognized the public value in facilitating the more widespread availability of this type of information through the internet.  *See* 47 U.S.C. § 230(a)(1) (recognizing internet services as "extraordinary advance in the availability of educational and informational resources to our citizens.").

Because plaintiffs' action seeks to inhibit speech in connection with an issue of public interest, plaintiffs must demonstrate it is probable they will succeed on the merits.  Nev. Rev. Stat. § 41.660(3)(b).  They cannot meet that hurdle here.  As shown above, plaintiffs' claims suffer myriad defects: no injury resulted, a required element of plaintiffs' first and second causes of action (*see supra* at Part II); their misappropriation claim also fails because the conduct at issue falls within the statutory exceptions (*see supra* at Part III); all plaintiffs' claims are foreclosed by section 230 of the Communications Decency Act (*see supra* at Part IV); their claims are preempted by the Copyright Act (*see supra* at Part V); and they cannot plausibly state a claim for "intrusion upon seclusion" or "unjust enrichment" (*see supra* at Parts VI & VIII).

Accordingly, the Court should strike plaintiffs' claims and, should the Court grant the motion, Ancestry should be awarded its attorney's fees and costs.  *See* Nev. Rev. Stat. § 41.670.

## **CONCLUSION**

Ancestry's motion to dismiss and/or special motion to strike should be granted.

---

[16]   *See supra*, notes 4 and 5.

DATED this 10th day of February, 2021    Respectfully submitted,

COHEN-JOHNSON, LLC


By _____ /s/ H. Stan Johnson _____
H. Stan Johnson, Esq.
Nevada Bar No. 0265
375 E. Warm Springs Road, Suite 104
Las Vegas, Nevada 89119

**Attorneys for Defendants Ancestry.com
Operations Inc., Ancestry.com Inc., and
Ancestry.com LLC**

DEFENDANTS' MOTION TO DISMISS AND STRIKE