1  COHEN-JOHNSON, LLC
   H. Stan Johnson, Esq. (SBN : 0265)
2  (sjohnson@cohenjohnson.com)
3  375 E. Warm Springs Road, Suite 104
   Las Vegas, Nevada 89119
4  Telephone:    (702) 823-3500
   Facsimile:     (702) 823-3400
5
6  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Shon Morgan (*Pro Hac Vice application to be filed*)
7  (shonmorgan@quinnemanuel.com)
   John W. Baumann (*Pro Hac Vice application to be filed*)
8  (jackbaumann@quinnemanuel.com)
   865 South Figueroa Street, 10th Floor
9  Los Angeles, California  90017
   Telephone:    (213) 443-3000
10 Facsimile:     (213) 443-3100
11
   Cristina Henriquez (*Pro Hac Vice*)
12 (cristinahenriquez@quinnemanuel.com)
   555 Twin Dolphin Drive, 5th Floor
13 Redwood Shores, California 94065
   Telephone:    (650) 801-5000
14 Facsimile:     (650) 801-5000
15 Attorneys for ANCESTRY.COM OPERATIONS
16 INC., ANCESTRY.COM INC., and
   ANCESTRY.COM LLC
17                    **UNITED STATES DISTRICT COURT**
18                        **DISTRICT OF NEVADA**

19 ANTHONY SESSA and MARK SESSA, on      Case No.: 2:20-cv-02292-GMN-BNW
20 behalf of themselves and all others similarly
   situated,                              **REPLY IN SUPPORT OF DEFENDANTS'**
21                                         **MOTION TO DISMISS PURSUANT TO**
            Plaintiffs,                    **FRCP 12 AND MOTION TO STRIKE**
22                                         **PURSUANT TO NEVADA REV. CODE §**
   v.                                      **41.635 *et seq.*;**
23
                                           **ORAL ARGUMENT REQUESTED**
24 ANCESTRY.COM OPERATIONS INC., a
   Virginia Corporation; ANCESTRY.COM,
25 INC., a Delaware Corporation;
   ANCESTRY.COM LLC, a Delaware Limited
26 Liability Company; and DOES 1 through 50,
   inclusive,
27
            Defendants.
28

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................1

I.      THE COURT LACKS PERSONAL JURISDICTION ...........................................1

II.     PLAINTIFFS HAVE NOT ALLEGED A COGNIZABLE INJURY ...................................3

III.    SECTION 230 OF THE CDA BARS ALL PLAINTIFFS' CLAIMS .................................5

IV.     PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT......................7

V.      NO PLAUSIBLE CLAIM EXISTS FOR INTRUSION UPON SECLUSION ...................9

VI.     PLAINTIFFS NEVADA'S DECEPTIVE TRADE PRACTICES CLAIM FAILS............10

VII.    PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT ..................10

VIII.   THE EXCEPTIONS TO THE RIGHT OF PUBLICITY STATUTE APPLY ..................10

IX.     NEVADA'S ANTI-SLAPP STATUTE APPLIES ............................................................12

# <u>TABLE OF AUTHORITIES</u>

**Page**

## <u>Cases</u>

*Abdul-Jabbar v. General Motors Corporation*,
    85 F.3d 407 (9th Cir. 1996)......................................................................................................12

*AMA Multimedia, LLC v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020)..............................................................................................2, 3

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009)......................................................................................7

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*,
    874 F.3d 1064 (9th Cir. 2017)..............................................................................................1, 2

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003)..............................................................................................5, 6

*Bravado Int'l Grp. v. Straughn*,
    2010 WL 11515508 (C.D. Cal. Jan. 25, 2010)........................................................................2

*Callahan v. Ancestry.com*,
    2021 WL 783524 (N.D. Cal. Mar. 1, 2021) .................................................1, 3, 4, 5, 6, 7, 8, 11

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003)..................................................................................................8

*Cline v. Etsy, Inc.*,
    2016 WL 3002369 (D. Nev. May 23, 2016) ...........................................................................2

*Davis v. Facebook*,
    956 F.3d 589 (9th Cir. 2020)................................................................................................3, 4

*Downing v. Abercrombie & Fitch*,
    265 F.3d 994 (9th Cir. 2001)....................................................................................................9

*Eichenberger v. ESPN, Inc.*,
    876 F.3d 979 (9th Cir. 2017)....................................................................................................4

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) ...........................................................................4, 9, 10

*Fleet v. CBS, Inc.*,
    50 Cal. App. 4th 1911 (1996)...................................................................................................8

*Fraley v. Facebook, Inc.*,
    830 F. Supp. 2d 785 (N.D. Cal. 2011) ..................................................................................3, 7

*Franchise Tax Bd. of State of Cal. v. Hyatt*,
    133 Nev. 826 (2017)...............................................................................................................10

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

*Gill v. Curtis Publ'g Co.*,
38 Cal. 2d 273 (1952) ..................................................................................12

*Gill v. Hearst Pub. Co.*,
40 Cal. 2d 224 (1953) ..................................................................................12

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ...........................................................10

*In re Google, Inc. Privacy Policy Litig.*,
No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ............3

*Hetter v. District Court*,
110 Nev. 513 (1994) ................................................................................5, 11

*Jackson v. Loews Hotels, Inc.*,
No. 18-827, 2019 WL 2619656 (C.D. Cal. Jan. 4, 2019) ..............................4

*JibJab Media Inc., v. White Castle Mgmt.*,
No. 12-04178, 2013 WL 12123696 (C.D. Cal. May 14, 2013) ......................2

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
617 F.3d 1146 (9th Cir. 2010) .............................................................7, 8, 10

*Kimzey v. Yelp!, Inc.*,
836 F.3d 1263 (9th Cir. 2016) ..................................................................7, 8

*KNB Enterprises v. Matthews*,
78 Cal. App. 4th 362 (2000) ..........................................................................9

*Maloney v. T3Media, Inc.*,
853 F.3d 1004 (9th Cir. 2017) ....................................................................8, 9

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
925 F.3d 1263 (D.C. Cir. 2019) ................................................................7, 8

*Mayweather v. The Wine Bistro*,
2014 WL 6882300 (D. Nev. Dec. 4, 2014) ....................................................2

*Newcombe v. Adolf Coors Company*,
157 F.3d 686 (9th Cir. 1998) ........................................................................11

*Patel v. Facebook, Inc.*,
932 F.3d 1264 (9th Cir. 2019) ........................................................................4

*Perfect 10, Inc. v. CCBill, LLC*,
340 F. Supp. 2d 1077 (C.D. Cal. 2004), *aff'd on CDA grounds*,
488 F.3d 1102 (9th Cir. 2007) ..................................................................5, 10

*Prescott v. Slide Fire Solutions, LP,,*
410 F. Supp. 3d 1123 (D. Nev. 2019) ..........................................................10

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ..................................................................................11

-iii-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Toney v. L'Oreal USA, Inc.,*
    406 F.3d 905 (7th Cir. 2005) ............................................................................8

*Uzuegbunam v. Preczewski,*
    2021 WL 850106 (U.S. Mar. 8, 2021) ......................................................5, 6

*Walden v. Fiore,*
    571 U.S. 277 (2020) ..................................................................................1, 2

*Wash. Shoe Co.,v. A-Z Sporting Goods Inc.,*
    704 F.3d 668 (9th Cir. 2012) ....................................................................1

*Williams v. Facebook, Inc.,*
    384 F. Supp. 3d 1043 (N.D. Cal. 2018) ................................................4

## **Statutory Authorities**

Cal. Civ. Code § 3344(a) ............................................................................5

Nev. Rev. Stat. § 597.790.10 ......................................................................12

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

**PRELIMINARY STATEMENT**

Plaintiffs' Opposition confirms the Complaint is based on unsupportable claims that Ancestry somehow uses plaintiffs' yearbook photos to "advertise" or "endorse" Ancestry. In a companion case filed by the same attorneys in the Northern District of California, the court rejected these same theories and dismissed a nearly identical complaint that asserted similar state-law misappropriation claims. *Callahan v. Ancestry.com*, No. 20-cv-08437-LB, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021). The bases for dismissal in *Callahan*—lack of Article III standing and immunity under section 230 of the Communications Decency Act—apply equally here. As in *Callahan*, here the conceded facts foreclose each of plaintiffs' theories. Because plaintiffs cannot advance an "endorsement" theory or plausible allegations that these public images of non-celebrities had provable economic value to plaintiffs, they cannot plead injury for any purported "misappropriation" of their likenesses. Further, because plaintiffs admit the images and information at issue were created and provided by third parties, all claims are barred by section 230 of the Communications Decency Act. Plaintiffs' Opposition also provides no reasoned basis that any alleged use of the yearbook images is not preempted by the Copyright Act. And plaintiffs cannot show that, by merely providing another means to access public yearbook photos, Ancestry breached a privacy interest in "highly offensive" information. None of these deficiencies, let alone all of them, can be remedied through amendment, and dismissal is proper.

**ARGUMENT**

**I.    THE COURT LACKS PERSONAL JURISDICTION**

Plaintiffs first attempt to support personal jurisdiction by arguing Ancestry acquired names and images of "likely Nevada residents," ECF No. 26 at 3-6, and thus its conduct was "expressly aimed" at Nevada. Plaintiffs rely on *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 670 (9th Cir. 2012), which held personal jurisdiction existed based solely on the violation of "a copyright held by a Washington corporation." *Id.* But the principle that a plaintiff's place of residence and alleged place of injury can suffice to establish jurisdiction is no longer good law. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1070 (9th Cir. 2017) ("In light of the Court's instructions in *Walden* [*v. Fiore*, 571 U.S. 277 (2020)], mere satisfaction of the test outlined in *Washington Shoe*, without more,

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

is insufficient to comply with due process.").[1]   Rather, post-*Walden*, courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Id.*  "[T]he strength of [plaintiffs'] own forum connections, coupled with evidence suggesting [defendant] knew of those connections and [plaintiffs'] ownership of the [rights at issue]" is not sufficient—plaintiffs must point to *Ancestry's* contacts with Nevada. *Id.*  Here, there is no allegation Ancestry had *any* contact with Nevada in obtaining the yearbooks that provide the basis for plaintiffs' complaint.[2]

Nor can plaintiffs establish personal jurisdiction by their argument that Ancestry's website was accessible for business with individuals Ancestry "knew were likely Nevada residents," ECF No. 26 at 3-6.  It is now well-settled that where, as here, the forum contacts are premised on a universally available website, more is required than that the website happened to advertise to residents of the forum.  Rather, the website must specifically target the residents of that forum, as opposed to targeting a general audience of which the forum residents happen to be a part.  *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1211 (9th Cir. 2020) ("As a feature of the geo-located advertisements on ePorner's website, all users in every forum received advertisements directed at them. To find specific jurisdiction based on this would run afoul of the Supreme Court's directive in *Walden* and 'impermissibly allow[ ] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis.'") (citation omitted); *JibJab Media Inc., v. White Castle Mgmt.*, 2013 WL 12123696, at *6

---

[1]   All the cases plaintiffs cite in support of this point pre-date *Walden*, with the exception of *Mayweather v. The Wine Bistro*, 2014 WL 6882300, at *4-5 (D. Nev. Dec. 4, 2014).  But *Mayweather* was a default judgment that did not even discuss the implications of *Walden*.  *Id.*

[2]   Even setting aside this absent allegation, plaintiffs have not—and cannot—allege Ancestry knew plaintiffs were Nevada residents. Rather, plaintiffs contend only that Ancestry should have known plaintiffs were "likely" Nevada residents, relying (oddly) on a statistic that demonstrates most adults do *not* live "in or near the community where they grew up." *Id.* at 4-5 (asserting only around 40% do).  To demonstrate a defendant's knowledge the effects will be felt in the forum state, "constructive knowledge is usually not enough. . . . Rather, this requirement is usually met through evidence of actual knowledge, such as correspondence between the parties that lists plaintiff's home-forum address."  *Bravado Int'l Grp. v. Straughn*, 2010 WL 11515508, at *5 (C.D. Cal. Jan. 25, 2010).  *See also Cline v. Etsy, Inc.*, 2016 WL 3002369, at *4 (D. Nev. May 23, 2016) (recognizing the proper inquiry is whether defendant targeted "a ***known*** forum resident") (emphasis added) (quotation, citation omitted).  Plaintiffs cannot demonstrate "actual knowledge"—indeed, they concede they have never had an interaction with Ancestry, such that Ancestry might know of their current residence.  *See* ECF No. 1 at ¶¶ 22-24, 34-36.

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

(C.D. Cal. May 14, 2013) ("[T]hat California residents may have been included in a larger group of consumers that JibJab targeted does not show that JibJab 'individually targeted a plaintiff known to be a forum resident.'") (citation omitted).  Here, plaintiffs allege Ancestry hosted yearbooks from *every* state and, in turn, users from any state could search those records for someone of interest; though plaintiffs provide no support for their contention that the "family and classmates" most likely to be interested in the yearbooks are necessarily Nevada residents, this fact is irrelevant in any event because it improperly focuses on the conduct of plaintiffs and the users, not Ancestry.  *AMA Multimedia*, 970 F.3d at 1210 ("ePorner's content is primarily uploaded by its users, and the popularity or volume of U.S.-generated adult content does not show that Wanat expressly aimed the site at the U.S. market. . . . Instead, it merely suggests the United States produces a significant quantity of adult content").

## II.      PLAINTIFFS HAVE NOT ALLEGED A COGNIZABLE INJURY

Plaintiffs' two purported injuries are identical to those rejected as insufficient in the companion *Callahan* action in the Northern District of California.  *Callahan*, 2021 WL 783524 at *4-5.  Plaintiffs' claims here fail for the same reason.

***First***, plaintiffs contend Ancestry's profit from use of plaintiffs' images suffices to confer standing.  ECF No. 26 at 6-7.  The court in *Callahan* rejected this contention and distinguished the same cases on which plaintiffs rely here.  The court determined "Ancestry's using the public profiles to solicit paying subscribers—standing alone—does not establish injury," relying on the well-established proposition that "a plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own."  *Callahan*, 2021 WL 783524 at *4 (quoting *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013)).  As the court in *Callahan* determined, it is not the defendant's profit that provides the requisite injury, but that the defendant profited from something in which plaintiffs held a valuable property interest.  *Id.* at *5 (distinguishing *Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 799 (N.D. Cal. 2011), where the injury was based on "plaintiffs' asserted property interest" in their endorsements of products).  Plaintiffs suggest *Davis v. Facebook*, 956 F.3d 589, 600 (9th Cir. 2020), takes a broader view of injury.   ECF No. 26 at 7.  But the *Callahan*

plaintiffs made this same argument, and it fails here for the same reason—unlike here, the injury in *Davis* was not premised on the defendant's profits, but instead on plaintiffs' valuable property interest in the information the defendant used to profit. *Davis*, 956 F.3d at 600 (plaintiffs alleged "a study that values users' browsing histories at $52 per year, as well as research panels that pay participants for access to their browsing histories"). As *Callahan* reasoned, "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's products or an equivalent interest" in which plaintiffs can claim a property right. *Callahan*, 2021 WL 783524 at *4. Accordingly, Ancestry's profits do not suffice to establish a concrete injury.

**Second**, plaintiffs contend they were injured through the invasion of "protected privacy rights." ECF No. 26 at 7-8. This same theory was also rejected in *Callahan*. The court in *Callahan* correctly determined "the information in the Yearbook database is not private: it is public yearbook information distributed to classmates (and ultimately to Ancestry)." 2021 WL 783524 at *4. Indeed, plaintiffs here concede, as they must, that the yearbook records are not private. *Id.* at 9-10 (conceding they "agreed" to appear in this "semi-public source" that would be distributed to others). Accordingly, plaintiffs' citation to cases that found injury based on a "privacy invasion" are entirely inapt.[3] *See, e.g., Jackson v. Loews Hotels, Inc.*, No. 18-827, 2019 WL 2619656, at *3–4 (C.D. Cal. Jan. 4, 2019) (plaintiff suffered no injury-in-fact when only publicly available information such as her "full name, email, phone number, and address" was exposed in data breach). Further, plaintiffs' suggestion that the statutory violation itself provides the requisite injury fails for the same reason as in *Callahan*—the Nevada legislature has imposed a specific injury requirement for section 597.810 claims. *See* Nev. Rev. Stat. § 597.810 (permitting action at law "for any injuries sustained by reason

---

[3]   Each case plaintiffs cite involved actual privacy interests that are not implicated by the already public (and entirely benign) yearbook excerpts at issue here. *See In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786-87 (N.D. Cal. 2019) (court's determination was not based on bare allegation of "privacy invasion," but rather on disclosure of "sensitive information" that was not otherwise public); *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1268-69 (9th Cir. 2019) (case concerned "biometric data," disclosure of which created a "heightened risk for identity theft"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (addressing "private call and text logs" scraped from plaintiffs' phones without consent, and dismissing certain statutory claims for lack of standing); *Eichenberger v. ESPN, Inc.*, (footnote continued)

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

of the unauthorized use").  *Compare Callahan*, 2021 WL 783524 at \*5 (rejecting this argument on the basis that "the statute imposes liability only where 'persons [are] injured as a result.'") (quoting Cal. Civ. Code § 3344(a)).  Plaintiffs purport to distinguish *Callahan* by arguing injury is not required under Nevada's statute despite the unambiguous statutory language to the contrary.  ECF No. 26 at 9. In support, plaintiffs cite *Hetter v. District Court*, 110 Nev. 513 (1994), which stands only for the proposition that an *injured* plaintiff can then elect statutory damages rather than prove actual damages. *Id.* at 519. But proof of injury is a prerequisite to any damages.  *Hetter* of course did not purport to amend the statute to eliminate that requirement.  Accordingly, this is not an instance where the statute confers a substantive right for which a violation alone establishes standing, like the CIPA, VPPA, TCPA, wiretap and SCA claims at issue in the cases on which plaintiffs rely.  *See* ECF No. 26 at 8. Unlike those statutes, permitting a claim to proceed based solely on use of a name or image would negate the statute's separate injury requirement.[4]

## III.    SECTION 230 OF THE CDA BARS ALL PLAINTIFFS' CLAIMS

In *Callahan*, the court concluded—based on identical facts—that "Ancestry is immune from liability under the Communications Decency Act" and dismissed plaintiffs' complaint.  *Callahan*, 2021 WL 783524, at \*5.  The same reasoning applies here, and plaintiffs' attempts to avoid section 230 are without merit.

First, plaintiffs contend section 230 does not apply to content that was not "intended to be published on the Internet."  ECF No. 26 at 16.  As plaintiffs would have it, the "authors who created and edited the yearbooks" would have had to provide the content to Ancestry for the express purpose of posting it online.  *Id.*  In support, plaintiffs cite *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003).  *Id.* But in *Batzel*, "the Court withdrew protection only for those internet service providers who would publish on the Internet *private* communications the provider knew or had reason to know were never

---

876 F.3d 979, 981 (9th Cir. 2017) (defendant shared "private information": "(1) Plaintiff's Roku device serial number and (2) the identity of the video that he watched.").

[4]   Plaintiffs cite the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*, 2021 WL 850106, at \*2 (U.S. Mar. 8, 2021), but that case has nothing to do with the issue here.  The Court held the case was not mooted where the plaintiff maintained a claim for nominal damages to
(footnote continued)

intended to be published at all." *Perfect 10, Inc. v. CCBill, LLC*, 340 F. Supp. 2d 1077, 1110–11 (C.D. Cal. 2004) ("All of the images owned by Perfect 10 were intended to be published and they are indeed published on Perfect 10's own website. . . . None of the evidence provided by Perfect 10 creates a genuine issue of material fact as to whether the images on the Defendants' affiliate websites were intended to be private and unpublished.") (emphasis in original), *aff'd on CDA grounds* 488 F.3d 1102 (9th Cir. 2007).  Unlike the private email at issue in *Batzel*, the yearbook records at issue here were neither "private" nor "unpublished."[5]  Plaintiffs' suggestion the yearbooks must be provided by the "authors" of those books rehashes an unsupported argument rejected in *Callahan*—"no case supports the conclusion that § 230(a)(1) immunity applies only if the website operator obtained the third-party content from the original author."  2021 WL 783524 at *6 .  Were it otherwise, Twitter (for example) could be held liable for defamation if a user copies and pastes a defamatory comment from a third party, but would not be liable if the user wrote and posted the comment.  That is not the law, and plaintiffs provide no authority for this proposition.

Second, plaintiffs concede "the photographs and information that Ancestry uses as its raw materials are sourced from yearbooks Ancestry did not create[.]"  ECF No. 26 at 18.  Nonetheless, plaintiffs contend Ancestry must be treated as an "information content provider" based on its role (a) extracting information from the yearbook pages (names, photographs, yearbook dates) into a different format; (b) isolating pictures that appeared among others in the yearbook; and (c) adding "interactive buttons."  *Id.*  The court in *Callahan* rejected identical arguments and concluded:

> Ancestry did not transform data and instead offered data in a form—a platform with
> different functionalities—that did not alter the content.  Adding an interactive button

---

redress a past injury. *Id.* at *3.  Whether plaintiff suffered a "concrete injury" was not at issue. *Id.* ("There is no dispute that Uzuegbunam has established the first two elements" of standing).

[5]  Separately, *Batzel* recognized "the focus should be not on the information provider's intentions or knowledge when transmitting content but, instead, on the service provider's or user's reasonable perception," otherwise, "posting of information on the Internet and other interactive computer services would be chilled, as the service provider or user could not tell whether posting was contemplated." 333 F.3d at 1034.  Although in *Batzel* questions remained whether the defendant could reasonably have believed the private email was intended for publication on the internet, here there can be no doubt—plaintiffs contend the yearbooks were donated to Ancestry for that purpose. ECF No. 1 at ¶ 50 ("there is a section of Ancestry's website encouraging visitors to donate their old yearbooks to Ancestry. At least some, and possibly all, of the Yearbook Database was built via such donations.").

and providing access on a different platform do not create content. They just add functionality. . . . Instead of creating content, Ancestry—by taking information and photos from the donated yearbooks and republishing them on its website in an altered format — engaged in a publisher's traditional editorial functions that do not transform an individual into a content provider within the meaning of § 230.

*Callahan*, 2021 WL 783524 at *6 (distinguishing *Fraley*, which "involved the transformation of the Facebook user's content (liking a product) into an advertisement that—without the user's consent—suggested the user's endorsement of the product") (quotations, alterations omitted).  The same is true here, and Ancestry is immune.  *See also Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1269 (D.C. Cir. 2019) (rejecting plaintiff's argument that creation of "enhanced content that was derived from third-party content" made defendant an "information content provider"); *Kimzey v. Yelp!, Inc.*, 836 F.3d 1263, 1269-70 (9th Cir. 2016) (finding CDA immunity even where Yelp! took reviews from a different website and added a star rating); *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 701 (S.D.N.Y. 2009) (defendant was not "information content provider" where it provided interactive buttons for users to download third-party content).[6]

## IV.   **PLAINTIFFS' CLAIMS ARE PREEMPTED BY THE COPYRIGHT ACT**

In an effort to avoid copyright preemption, plaintiffs first contend that only the copyright holder can claim preemption.  ECF No. 26 at 19.  The Ninth Circuit has explicitly rejected this position.  *Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010) ("We do not read *Fleet* or the Copyright Act so narrowly. Whether a claim is preempted under Section 301 does not turn on what rights the alleged infringer possesses, but on whether the rights asserted by the plaintiff are equivalent to any of the exclusive rights within the general scope of the copyright. . . .

---

[6]   The only content plaintiffs could conceivably point to as not directly extracted from the yearbook is the estimated birth year and age.  *See* ECF No. 26 at 18.  However, this "estimate" is derived from the third-party yearbook content (specifically, plaintiffs' class years).  In *Marshall's*, the court relied on two Ninth Circuit cases to reject a similar contention.  925 F.3d at 1270 (citing *Kimzey*, 836 F.3d at 1270 and *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003)).  Where third-party locksmiths did not have an exact location listed, Google nonetheless created a map pinpoint to reflect the location of the business.  *Id.*  Although Google created the pinpoint, the court held it was "derived" from information provided by the third party and "constrained by the underlying third-party information," and thus Google was not the information content provider.  *Marshall's*, 925 F.3d at 1269.  So too here, where the estimated birth year and age are simply mechanically derived from the third-party yearbook content.

1   If a plaintiff asserts a claim that is the equivalent of a claim for infringement of a copyrightable work,

2   that claim is preempted, regardless of what legal rights the defendant might have acquired.")

3   (discussing *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996), on which plaintiffs rely here).

4          Plaintiffs next argue their claims stem from their "likenesses," which are not copyrightable.

5   ECF No. 26 at 19-21.  Although plaintiffs' likenesses do appear in the underlying yearbook records,

6   this is true of every photograph in which a person appears.  *See Maloney v. T3Media, Inc.*, 853 F.3d

7   1004, 1011 (9th Cir. 2017) (preemption where "likeness has been captured in a copyrighted artistic

8   visual work and the work itself is being distributed for personal use").  The relevant inquiry instead

9   depends on the *use* of the likeness: "The basis of a right of publicity claim concerns the message—

10  whether the plaintiff endorses, or appears to endorse the product in question." *Id.* (quoting *Toney v.*

11  *L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005)).

12         Plaintiffs argue their likenesses were used to promote Ancestry's products, but plaintiffs'

13  allegations demonstrate these "advertisements" were nothing more than previews of the underlying

14  records to inform users of their availability.  *See* ECF No. 1 at ¶¶ 31, 39; *Callahan*, 2021 WL 783524

15  at *5 ("Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's

16  products").[7]  The facts in *Maloney* are analogous—there, as here, "[c]onsumers could view digital

17  thumbnails of the images" available for sale and were given the option to purchase the full versions of

18  the photographs. *Maloney*, 853 F.3d at 1007.  Plaintiffs' claims were preempted.  By comparison, in

19  *Downing v. Abercrombie & Fitch*, 265 F.3d 994 (9th Cir. 2001), on which plaintiffs rely,

20  "Abercrombie went well beyond the mere republication of the photograph.  Rather, it published the

21  photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by

22  name, and offered for sale the same t-shirts worn by the plaintiffs in the photo.  ***Importantly, …***

23  ***Abercrombie had suggested that the surfers had endorsed Abercrombie's t-shirts***." *Maloney*, 853

24  F.3d at 1013-14 (discussing *Downing*, 265) (internal quotations, citations, alterations omitted)

25

26  _____

27      [7]  *See also Jules Jordan*, 617 F.3d at 1154 ("The pictures on the covers of the DVDs are 'still
    shots' of the copyrighted video performance. Thus, Gasper's argument that his right of publicity
28  was violated by defendants' reproduction of the covers is misguided.").

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

(emphasis added).[8]

Here, plaintiffs cannot plausibly contend their names or images were used to make it appear they endorsed Ancestry.  Rather, plaintiffs' allegations concerning use of their names and images arise solely from reproduction of pages from their yearbooks, and are thus preempted by the Copyright Act.

## V.   NO PLAUSIBLE CLAIM EXISTS FOR INTRUSION UPON SECLUSION

Plaintiffs rely exclusively on *In re Facebook*, to support their intrusion-upon-seclusion claim, but the facts here differ materially.  ECF No. 26 at 21-22.  As to the first prong—whether the plaintiff had an objective expectation of privacy—the information in *Facebook* was shared only with a select group of Facebook "friends."  402 F. Supp. 3d at 782-83.  The court explicitly distinguished this limited sharing from "a user whose settings allow information to be shared not only with friends, but friends of friends," who likely "loses any expectation of privacy."  *Id.* at 783 n. 3.  Yearbooks are not akin to private messages or other information on Facebook to which the user can limit access—rather, like the Facebook users who allow information to be seen not only by "friends, but friends of friends," plaintiffs could not restrict distribution of their yearbooks once they were published; their classmates were free to share them with whoever they wished.  Further, unlike the "sensitive personal information" at issue in *Facebook*, here plaintiffs concede the yearbook information is public.  ECF No. 26 at 10.  "[A]defendant cannot be liable for disclosing information about a plaintiff that was already public."  *Franchise Tax Bd. of State of Cal. v. Hyatt*, 133 Nev. 826, 843 (2017).

For these same reasons, *Facebook* is distinguishable as to the second prong—whether the disclosure would be "highly offensive to a reasonable person."  Unlike the "religious preferences," private photographs, or "one-on-one messages" at issue in *Facebook* (402 F. Supp. 3d at 780), the information here is benign, public information that plaintiffs chose to share in the first instance.

---

[8]   Plaintiffs also rely on *KNB Enterprises v. Matthews*, 78 Cal. App. 4th 362, 372 (2000) and *Perfect 10, Inc. v. Talisman Commc'ns Inc.*, 2000 WL 364813 (C.D. Cal. Mar. 27, 2000) to contend they do not have to identify a use of their likeness independent of the display and production of the copyrighted work to avoid preemption.  ECF No. 26 at 20-21.  Neither case is apt.  In *KNB*, the court rejected preemption based on its (incorrect) holding that only the copyright holder can claim preemption.  78 Cal. App. 4th at 374.  As noted above, the Ninth Circuit has explicitly rejected this view.  *Jules Jordan*, 617 F.3d at 1154-55.  And *Perfect 10, Inc.* involved a default judgment that did not address preemption at all.  2000 WL 364813.

Contrary to plaintiffs' suggestion *Facebook* turned solely on the widespread dissemination of the information, it is instead the nature of the information disseminated that is determinative. *Compare Facebook*, 402 F. Supp. 3d at 797 ("[P]laintiffs have adequately alleged that they suffered an egregious invasion of their privacy when Facebook gave app developers and business partners their *sensitive information* on a widespread basis.") (emphasis added), *with In re Google, Inc. Privacy Policy Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014) (finding disclosure of a person's name and identity, and contact list to third-party developers was not highly offensive).

## VI.   PLAINTIFFS NEVADA'S DECEPTIVE TRADE PRACTICES CLAIM FAILS

Plaintiffs contend Ancestry users might think the people whose yearbook pictures appear on Ancestry's site are subscribers or consented to use of their information.  ECF No. 26 at 22.  Setting aside that plaintiffs cannot point to any representation by Ancestry that can fairly be characterized as suggesting such affiliation, plaintiffs contend these purported "false representations" were directed to *users* of Ancestry's site.  *Id.*  Plaintiffs concede *they* are not subscribers or users of Ancestry's site. ECF No. 1 at ¶¶ 22, 34.  Thus, whether such false representations exist (they do not), it would be the *user* who is exposed to them, not plaintiffs.  Because plaintiffs do not claim to have been exposed to these representations—and, in any event, could not be deceived because they know whether they are subscribers to Ancestry's site—they cannot claim any harm resulted from the purportedly deceptive practices and their claim fails.  *See Prescott v. Slide Fire Solutions, LP*, 410 F. Supp. 3d 1123, 1145 (D. Nev. 2019) (dismissing DTP claim because NRS 41.600 "generally limits standing to those who were 'directly harmed' by a defendant's deceptive trade practices") (citation omitted).

## VII.   PLAINTIFFS CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs' Opposition makes clear their unjust enrichment claim entirely depends on their right of publicity claim.  ECF No. 26 at 22.  Accordingly, this claim fails for the same reasons.  Further, this claim fails because Nevada's right of publicity statute "provides a complete and exclusive remedy for the right of publicity tort . . . Restitution is not available[.]" *Hetter*, 110 Nev. at 519.

## VIII.   THE EXCEPTIONS TO THE RIGHT OF PUBLICITY STATUTE APPLY

**No Direct Connection To Commercial Sponsorship.**   The court in *Callahan* correctly determined "Ancestry's use of the plaintiffs' profiles does not imply an endorsement of Ancestry's

-10-

1   products[.]"  2021 WL 783524 at *5.  As in *Callahan*, plaintiffs' complaint here demonstrates the

2   images merely appeared on Ancestry's website, but were not used to "endorse" any product, such that

3   they could be said to have a "direct" connection to commercial sponsorship.  Plaintiffs urge the Court

4   to defer this as a question of fact, relying on *Newcombe v. Adolf Coors Company*, 157 F.3d 686, 693-

5   94 (9th Cir. 1998). ECF No. 26 at 12.  But plaintiffs' characterization of *Newcombe* is misleading—

6   there, the plaintiff's image did not simply appear on a separate page from an advertisement, as

7   plaintiffs contend; the plaintiff's image was used *in* the beer advertisement.  157 F.3d at 689 (the

8   "advertisement . . . featured a drawing of an old-time baseball game" featuring plaintiff).  Here, on the

9   other hand, plaintiffs' allegations demonstrate the absence of connection to commercial sponsorship,

10  and this issue can be decided as a matter of law.

11           **The Use Is In Connection With "Public Affairs."**  Plaintiffs assert (1) no "public interest"

12  exists in information concerning private individuals and (2) the exception cannot apply when the

13  information was used in connection with commercial activity.  ECF No. 26 at 13-16.  Neither is

14  correct.  First, it is well settled that "newsworthiness is not limited to 'news' in the narrow sense of

15  reports of current events. It extends also to the use of names, likenesses or facts . . . for purposes of

16  education, amusement or enlightenment," as long as "some reasonable members of the community

17  could entertain a legitimate interest in it[.]"  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 225

18  (1998).  The yearbook database serves a valuable purpose in documenting local history and allowing

19  people to trace their genealogies, and it is precisely the type of information gathering for the public's

20  benefit that this exception protects.[9]  Second, plaintiffs' contention the exception does not apply where

21

22           [9]   The exception does not apply only to public figures, as plaintiffs contend.  Rather, the law

23  seeks to balance privacy rights against the public's right to information by assessing the facts
    revealed in proportion to the public's interest.  *Id.* at 222-24 ("a logical nexus [must] exist between

24  the complaining individual and the matter of legitimate public interest.") (quotation, citation
    omitted).  For example, a photograph of a private couple embracing qualified as "newsworthy"

25  because it "serve[d] the function of entertainment as a matter of legitimate public interest." *Gill v.
    Hearst Pub. Co.*, 40 Cal. 2d 224, 229 (1953).  However, when that same photograph was

26  juxtaposed with the disclosure of private facts—specifically, where it was identified as the "wrong
    kind of love," "founded upon 100 per cent sex attraction"—the use was not protected because the

27  nexus was lost; the information about plaintiffs' love life was superfluous to the public interest in
    the photograph.  *Gill v. Curtis Publ'g Co.*, 38 Cal. 2d 273, 279 (1952).  Here, the public interest in

28               (footnote continued)

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE

information is used in connection with commercial activity would write out the exception—the exception applies to "[a]ny commercial use" if such commercial use is in connection with "public affairs." Nev. Rev. Stat. § 597.790.[10]

## IX.   **NEVADA'S ANTI-SLAPP STATUTE APPLIES**

Plaintiffs' opposition to Ancestry's anti-SLAPP motion is premised on their contention the use of the information was not in connection with an issue of public concern. ECF No. 26 at 22-23. For the reasons set forth above (*supra* at VIII) and in Ancestry's Motion, this is incorrect. As plaintiffs cannot demonstrate a probability of success on the merits, the Court should strike plaintiffs' claims.

DATED this 17th day of March, 2021          Respectfully submitted,

COHEN-JOHNSON, LLC


By _____ */s/ H. Stan Johnson* _____
    H. Stan Johnson, Esq.
    Nevada Bar No. 0265
    375 E. Warm Springs Road, Suite 104
    Las Vegas, Nevada 89119

    Attorneys for Defendants Ancestry.com
    Operations Inc., Ancestry.com Inc., and
    Ancestry.com LLC

---

this information is entirely coextensive with the information shared—there has been no use of plaintiffs' names or images outside of the underlying yearbook records of which they are a part.

[10]   Plaintiffs rely on *Abdul-Jabbar v. General Motors Corporation*, 85 F.3d 407 (9th Cir. 1996) and *Fraley*, 830 F. Supp. 2d at 805, but in both cases, the images were used to endorse an unrelated product—unlike here, the use bore no relationship to the newsworthiness of plaintiffs' information.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 17, 2021, and pursuant to the Federal Rules of Civil Procedure, a true and correct copy of the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12 AND MOTION TO STRIKE PURSUANT TO NEVADA REV. CODE § 41.635 *et seq,*** was served via the U.S. District Court's electronic filing system to all parties appearing in this case.

　/s/ Sarah Gondek　　　　　　　　　　
An Employee of COHEN JOHNSON

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AND STRIKE