**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ANTHONY SESSA and MARK SESSA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: 2:20-cv-02292-GMN-BNW <br><br> **ORDER** |

Pending before the Court is Defendant Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC's (collectively, "Defendants"') Motion to Stay Case Pending Appeal ("MTS"), (ECF No. 43). Plaintiffs Anthony and Mark Sessa (collectively, "Plaintiffs") filed a Response, (ECF No. 48), and Defendants filed a Reply, (ECF No. 49).

For the reasons discussed below, the Court **GRANTS** Defendants' Motion to Stay.

I. **BACKGROUND**

This case arises from Defendants' alleged use of Plaintiffs' names, images, and likenesses (collectively, the "challenged communications") to market paid subscriptions to Defendants' online database of school yearbooks (the "Database"). (*See* Compl. ¶¶ 2–3, ECF No. 1). Plaintiffs allege that Defendants' Database includes, "the names, photographs, cities of residence, and schools attended" of individuals within the Database. (*Id.* ¶ 3). Plaintiffs contend that they, and a prospective class of other similarly situated Nevadans whose names,

images, and likenesses are in the Database, neither received notice of, nor consented to, Defendants' use thereof. (*Id.* ¶¶ 4, 23–25, 35–37).

On February 10, 2021, Defendants filed a Motion to Dismiss ("MTD"). (*See generally* MTD, ECF No. 19). On September 16, 2021, the Court granted in part and denied in part Defendants' MTD. (*See generally* Order, ECF No. 36). Specifically, the Court dismissed three of four of Plaintiffs' causes of action: (1) violation of the Nevada Deceptive Trade Practices statute under NRS §§ 598.0903 *et seq.*, (2) intrusion upon seclusion; and (3) unjust enrichment. (*Id.* 30:1–31:25). Defendants sought to strike Plaintiffs' sole remaining claim, for violation of the right of publicity under NRS §§ 597.770 *et seq.*, through a special motion to dismiss under Nevada's anti-SLAPP statute, NRS § 41.660. (MTD 1:8–10). However, the Court declined to strike Plaintiffs' right of publicity claim because Defendants' use of Plaintiffs' "likeness in connection with advertising [was] not within the scope of 'public affairs.'" (Order 26:1–8). Defendants then filed a Notice of Appeal of the Court's denial of their anti-SLAPP Motion to Strike. (Notice Appeal 1:1–5, ECF No. 39). Defendants now move to stay the entire case or, alternatively, discovery, pending the outcome of their appeal in this case and their appeal in a similar California case, *Callahan v. Ancestry.com, Inc.*, Ninth Cir. Case No. 21-16161 (the "*Callahan* appeal"). (*See generally* MTS, ECF No. 43).

## II. LEGAL STANDARD

The Court has the discretion "to stay proceedings in its own court . . . ." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (citing *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). When deciding whether to issue a stay, the court must weigh competing interests including: (1) "the possible damage which may result from the granting of a stay;" (2) "the hardship or inequity which a party may suffer in being required to go forward;" and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*,

300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55) (the "*Landis* factors").

"The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).

## III. DISCUSSION

In the present Motion, Defendants move to stay the entire action or, in the alternative, move to stay discovery. (MTS 1:1–7). Plaintiffs oppose both a stay of the entire action and a stay of discovery. (Resp. 1:9–17, ECF No. 48). The Court will first address whether this action should be stayed in its entirety.

### A. Stay of the Case

In the present Motion, Defendants assert that the entire case should be stayed for two reasons. First, Defendants claim that a stay is warranted because the appeal of the Order on Defendants' MTD divests this Court of jurisdiction to proceed on the remaining issue: the right of publicity. (MTS 3:6–14). Second, Defendants argue the Court should stay the entire action because their appeal of this case and the *Callahan* appeal will address similar case-dispositive matters at issue here. (*Id.* 3:15–4:3). For instance, the appeal of this case may resolve whether Plaintiff can prevail in their right of publicity claim by deciding whether the challenged communications are directly connected to matters of public concern. Similarly, the *Callahan* appeal may settle whether any of Plaintiffs' claims survive by determining if violating a right of publicity confers Article III standing and whether Defendants are immune to Plaintiffs' claims under 47 U.S.C. § 230, otherwise known as Section 230 of the Communications Decency Act ("Section 230"). The Court will discuss each in turn.

#### 1. Jurisdiction

Defendants argue that staying the case is appropriate because there are no issues in the case that the Court has jurisdiction over pending their appeal of this Court's denial of their anti-SLAPP motion. (*See* MTS 3:6–14); *see also Sessa v. Ancestry.com, Inc.*, Ninth Cir. Case No.

21-16618. Specifically, they aver Plaintiffs' remaining right of publicity claim "is the subject of Ancestry's anti-SLAPP appeal" because it overlaps with the first prong of the Court's anti-SLAPP inquiry. (*Id.* 3:11–12); (Reply 6:7–14). However, Plaintiffs maintain the Court has jurisdiction over their right of publicity claim because it is not the subject of Defendants' appeal. (Resp. 9:16–18). Plaintiffs also counter that this Court retains jurisdiction because they may still pursue class certification while the appeal is pending. (*Id.* 9:21–23).

An interlocutory appeal normally divests the district court of jurisdiction "from the time the defendant files its notice of appeal until the appeal is resolved." *United States v. Claiborne*, 727 F.2d 842, 850 (9th Cir. 1984). However, jurisdiction is not lost to consider matters unrelated to the interlocutory appeal. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990).

Here, Defendants persuasively argue Plaintiffs' remaining right of publicity claim overlaps with their appeal of this case. Nevada's right of publicity statute states that the commercial use "of the name, voice, signature, photograph, or likeness of a person requires the written consent of that person." NRS § 597.790(2)(c). However, consent is not required if the person's name, voice, signature, photograph, or likeness are used "in connection with . . . *public affairs* . . . ." NRS § 597.790(2)(c) (emphasis added). When considering whether to dismiss a right of publicity claim under Nevada's anti-SLAPP statute, courts must engage in a two-step analysis. NRS § 41.660(3). Most pertinent is the first prong, stating that courts must "[d]etermine whether the moving party has established, by a preponderance of the evidence, that the claim is based upon a good faith communication in furtherance of . . . the right to free speech" directly connected "*with an issue of public concern*." NRS § 41.660(3)(a) (emphasis added). Comparing these statutes shows that the exception to Plaintiffs' right of publicity claim overlaps with the first prong of Nevada's anti-SLAPP motion analysis. This is so because the anti-SLAPP issue on appeal will decide whether the challenged communications implicate

matters of public concern, which is the same issue at stake in Plaintiffs' right of publicity claim. The Court is thus persuaded that Plaintiffs' right of publicity claim is inextricably related to Defendants' appeal of this Court's Order on the anti-SLAPP motion. Thus, because the Ninth Circuit's decision on this Court's anti-SLAPP ruling could be determinative of the right of publicity claim, the court is divested of jurisdiction over the right of publicity claim.

### 2. Defendants' *Callahan* Appeal

Next, Defendants argue that the *Callahan* appeal represents good cause to stay the case because the Ninth Circuit's decision in *Callahan* will be instructive when deciding whether Plaintiffs' remaining right of publicity claim may proceed. (MTS 3:20–4:1). In *Callahan*, the Ninth Circuit will decide whether violating California's right of publicity statute, Cal Civ. Code § 3344, constitutes an injury that satisfies the injury-in-fact element to confer Article III standing onto the appellants. (MTS 3:20–4:1). Like Nevada's right of publicity statute, California's right of publicity statute requires a person to consent to the commercial use of their "name, voice, signature, photograph, or likeness." *Compare* Cal Civ. Code § 3344(a), *with* NRS § 597.790(2). And like Nevada, an exception exists in that consent is not required if the communications are used "in connection with any . . . public affairs." *Compare* Cal Civ. Code § 3344(d), *with* NRS § 597.790(2)(c).

Further, just as in this case, the appellants in *Callahan* brought an action against Defendants for using their names and likenesses for commercial purposes without their consent. (*See* Opening Br. at 6, *Callahan*, Ninth Cir. Case No. 21-16161, Docket No. 11). Also like this case, the *Callahan* appellants argue that violating California's right of publicity statute constitutes an injury that confers Article III standing because their injury is recognized at common law. (*Compare* Opening Br. at 12–17, *Callahan*, Ninth Cir. Case No. 21-16161), (*with* Order 10:6–15); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (explaining that when courts evaluate whether a statutory violation gives rise to Article III standing, they

must consider "whether plaintiffs have identified a . . . common-law analogue for their asserted injury"). Specifically, the *Callahan* appellants argue their California right of publicity claim is analogous to the common law torts of economic injury from Defendants' unjust enrichment, theft of intellectual property rights, denial of the privacy right in controlling one's likeness, and mental anguish. (Opening Br. at 12–17, *Callahan*, Ninth Cir. Case No. 21-16161). Similarly, this Court concluded Plaintiffs' right of publicity claim was analogous to the common law tort recognizing that using one's likeness for commercial purposes without consent establishes an injury. (*See* Order 10:10–12, 11:10–12:16). Because the *Callahan* appellants offer nearly identical arguments that Plaintiffs do here, the *Callahan* appeal may resolve whether violating Nevada's right of publicity statute, analogous here to the common law tort of being injured when one's likeness is used for commercial purposes without consent, constitutes an injury that confers Article III standing.

Thus, the Ninth Circuit's decision in *Callahan* may be instructive to this Court in deciding whether Plaintiffs' claims confer standing in this case because California's and Nevada's right of publicity statutes are so similar. Accordingly, waiting for the Ninth Circuit's decision concerning standing in the *Callahan* appeal is preferable, even if it is not "necessarily controlling of the action before the court." *See Leyva v. Certified Growers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) (finding that a court may stay proceedings in its own case pending the outcome of another related legal proceeding, even if the other proceeding is not "necessarily controlling of the action before the court").

Next, similar to this case, the Ninth Circuit in *Callahan* may determine if, under Section 230, Defendants are immune to claims alleging violations of California's right of publicity statute. (MTS 3:20–4:1). Under Section 230, an interactive computer service is immune from liability for "information provided by another information content provider." 47 U.S.C. § 230(c)(1*); see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1265 (9th Cir. 2016) (explaining that

Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties") (citations omitted). Just as in this case, appellants in *Callahan* claim Defendants are an interactive computer service. (*Compare* Opening Br. at 37, *Callahan*, Ninth Cir. Case No. 21-16161), (*with* Order 19:9–11). Moreover, the "information" at issue in both cases are the names, images, and likenesses of Plaintiffs here and appellants in *Callahan*. (*Compare* Opening Br. at 39, *Callahan*, Ninth Cir. Case No. 21-16161), (*with* Order 19:24–20:21). In both cases, Defendants aver Section 230 immunizes them from liability resulting from violations of the right of publicity. (*See* Opening Br. at 36, *Callahan*, Ninth Cir. Case No. 21-16161); (Order 19:9–16). Thus, both cases center around whether Defendants' alleged use of the names, images, and likenesses of Plaintiffs in this case and the appellants in *Callahan* were "provided by another information content provider." (*Compare* Opening Br. at 39–40, 42, *Callahan*, Ninth Cir. Case No. 21-16161), (*with* Order 19:24–20:21).

This Court determined Section 230 immunity did not attach because Defendants were "responsible for posting the information in its database." (Order 20:14–15). Conversely, the appellants in *Callahan* are appealing a district court's Order holding Section 230 immunity applies to Defendants because they did not create the names, images, and likenesses of the appellants. (*See* Opening Br. at 41, *Callahan*, Ninth Cir. Case No. 21-16161). As a result, if the Ninth Circuit determines that Section 230 immunizes Defendants from a right of publicity claim under California law, this Court could conclude that Section 230 also immunizes Defendants from a right of publicity claim under Nevada law. Accordingly, the Court is persuaded that Defendants have established the need to stay the case because the Ninth Circuit's decision in *Callahan* would be instructive for several issues at stake in this case.[1]

---

[1] Further persuading the Court to stay the case pending the outcome in *Callahan* is that it promotes efficient use of the parties' and the Court's limited resources by not wasting them in a case that may not survive. Plaintiffs claim a stay pending the *Callahan* appeal would be indefinite because it could take years for the Ninth Circuit to decide it. (Resp. 3:1–9). However, Plaintiffs' concern is abated by the fact that opening briefs have

**B.  *Landis* Factors**

Now that the Court has determined that Defendants have "establish[ed] [the] need" to stay the case, the Court will assess the *Landis* factors to determine if such a stay is warranted. Regarding the first and second *Landis* factors, "if there is even a fair possibility that the stay . . . will work damage to someone else," the party seeking the stay "must make out a clear case of hardship or inequity." *Landis*, 299 U.S. at 255.  Further, the Court may stay proceedings before it, pending the outcome of an appeal that is not "necessarily controlling of the action before the court." *See Leyva*, 593 F.2d at 863–64.

Here, the first and second *Landis* factors weigh in favor of granting a stay because Defendants will suffer more harm in continuing these proceedings than Plaintiffs will for staying the case.  For example, as discussed above, the Ninth Circuit's decisions in the appeal of this case and in the *Callahan* appeal may have case-determinative implications for Plaintiffs' remaining claim in this case.  Allowing the parties to continue with the present case before the Ninth Circuit decides those appeals could impose a hardship on the parties by forcing them to commit and expend financial resources to continue pursuing and defending causes of action that may not survive.  Conversely, Plaintiffs have not demonstrated any hardship they would suffer by a stay in the case.[2]

---

been submitted and there is nothing in the record to indicate that a decision in the *Callahan* appeal will take an abnormally long period of time. (Resp. 3:1–9); (Submitted Opening Br. Review, *Callahan*, Ninth Cir. Case No. 21-16161, Docket No. 11).  As such, although the outcome in *Callahan* is not controlling of this action, staying the case avoids consuming resources pending a decision that may invalidate Plaintiffs' claims. *Leyva*, 593 F.2d at 863–64.  Thus, the Court is further persuaded that this case should be stayed pending the outcome in *Callahan*.

[2] Plaintiffs argue the *Landis* factors weigh against staying the case because a stay will delay monetary recovery and harm Plaintiffs' intellectual property and privacy rights. (Resp. 2:18–20).  However, other than blanketly stating a stay will harm these rights, Plaintiffs fail to explain how this would be so.  Plaintiffs also contend an appeal is likely years away but, again, offer no support for this assertion.  Therefore, Plaintiffs do not demonstrate they will suffer harm by a stay in the case.

Further, in support of the third *Landis* factor, staying the case will simplify proceedings. It is more efficient to stay the case while the Ninth Circuit deals with potentially case-dispositive issues in the appeals in this case and in *Callahan*. *See Leyva*, 593 F.2d at 863 (explaining that a district court may grant a stay pending an appeal that may impact the outcome of the case). For instance, the appeal of this case may resolve whether Plaintiff can prevail on their right of publicity claim by deciding whether the challenged communications are directly connected to matters of public concern. Similarly, the *Callahan* appeal may settle whether any of Plaintiffs' claims survive by determining if Plaintiffs' claims confer standing and whether Defendants are immune to Plaintiffs' claims under Section 230. Staying the case pending the appeals in this case and in *Callahan* may thus promote the efficient use of the parties' and the court's limited resources. Therefore, the Court finds the *Landis* factors weigh in favor of granting a stay pending appeal, and the Court grants Defendants' Motion to Stay Case Pending Appeal.[3]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Stay Case Pending Appeal, (ECF No. 43), is **GRANTED**.

**DATED** this __18__ day of January, 2022.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT

---

[3] Because the Court is staying the case in its entirety, it need not address the matter of staying discovery.