COHEN-JOHNSON, LLC
  H. Stan Johnson, Esq. (SBN: 0265)
  (sjohnson@cohenjohnson.com)
375 E. Warm Springs Road, Suite 104
Las Vegas, Nevada 89119
Telephone: (702) 823-2500
Facsimile: (702) 823-3400

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (*Pro Hac Vice*)
  shonmorgan@quinnemanuel.com
  Jack Baumann (*Pro Hac Vice*)
  jackbaumann@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

  Cristina Henriquez (*Pro Hac Vice*)
  (cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5000

*Attorneys for Defendants*
ANCESTRY.COM OPERATIONS INC.,
ANCESTRY.COM INC., and ANCESTRY.COM LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY SESSA and MARK SESSA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02292<br><br>**ANCESTRY'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL**<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................................2

LEGAL STANDARD .................................................................................4

ARGUMENT .................................................................................5

I.    PLAINTIFFS' INTERROGATORY SEEKS IRRELEVANT INFORMATION
      AND IS UNDULY BURDENSOME .................................................................................5

      A.    Plaintiffs Have Failed To Meet Their Burden To Demonstrate The
            Interrogatory Seeks Relevant Information ................................................................5

      B.    Providing Information In Response To Plaintiffs' Interrogatory Would Be
            Unduly Burdensome ........................................................................7

II.   THE ESI IS NOT REASONABLY ACCESSIBLE AND THE REQUEST
      SHOULD BE DENIED OR, ALTERNATIVELY, PLAINTIFFS SHOULD BE
      REQUIRED TO PAY ANCESTRY'S COSTS OF RESPONDING ...................................9

III.  ANCESTRY SHOULD BE AWARDED ITS EXPENSES AND FEES ...........................12

IV.   PLAINTIFFS' REQUEST FOR EXPENSES AND FEES SHOULD BE DENIED...........12

OPPOSITION TO MOTION TO COMPEL

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

*Borenstein v. Animal Found.*,
   2022 WL 3647910 (D. Nev. Aug. 24, 2022)..................................................... 6, 9

5

6

*DelVecchia v. Frontier Airlines, Inc.*,
   2022 WL 3143322 (D. Nev. Aug. 5, 2022)........................................................... 4

7

*Dilley v. Metro. Life Ins. Co.*,
   256 F.R.D. 643 (N.D. Cal. 2009) ........................................................................ 9

8

9

*Donnelly v. NCO Fin. Sys., Inc.*,
   263 F.R.D. 500 (N.D. Ill. 2009) .......................................................................... 8

10

*Gaines v. L. Off. of Patenaude & Felix, A.P.C.*,
   2014 WL 3894348 (S.D. Cal. June 12, 2014) ................................................ 6, 12

11

12

*Gen. Elec. Co. v. Wilkins*,
   2012 WL 570048 (E.D. Cal. Feb. 21, 2012) ....................................................... 9

13

*Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*,
   2021 WL 8016005 (D. Nev. July 14, 2021) ............................................... 5, 8, 12

14

15

*Hallett v. Morgan*,
   296 F.3d 732 (9th Cir. 2002) ............................................................................... 5

16

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   301 F.R.D. 449 (N.D. Cal. 2014) ........................................................................ 7

17

18

*In re U. S. Fin. Sec. Litig.*,
   74 F.R.D. 497 (S.D. Cal. 1975) ........................................................................... 6

19

*McCullough v. Dairy Queen, Inc.*,
   195 F. Supp. 918 (E.D. Pa. 1961) ....................................................................... 9

20

21

*Mey v. Interstate Nat'l Dealer Servs., Inc.*,
   2015 WL 11256613 (N.D. Ga. June 19, 2015) ................................................... 8

22

*Morales v. Allstate Northbrook Indem. Co.*,
   2021 WL 6618614 (C.D. Cal. Dec. 20, 2021) ................................................. 7, 8

23

24

*Nogle v. Beech St. Corp.*,
   2012 WL 3687570 (D. Nev. Aug. 27, 2012)........................................................ 9

25

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992).............................................................................. 4

26

27

*OpenTV v. Liberate Techs.*,
   219 F.R.D. 474 (N.D. Cal. 2003) ...................................................................... 10

28

*Oppenheimer Fund, Inc. v. Sanders,*
      437 U.S. 340 (1978) ............................................................................................ 4

*Penk v. Or. State Bd. of Higher Educ.,*
      816 F.2d 458 (9th Cir. 1987) ......................................................................... 5, 10

*Pierce v. Underwood,*
      487 U.S. 552 (1988) .......................................................................................... 12

*Roberts v. Clark Cty. Sch. Dist.,*
      312 F.R.D. 594 (D. Nev. 2016) ......................................................................... 12

*Rodriguez-Torres v. Gov't Dev. Bank of Puerto Rico,*
      265 F.R.D. 40 (D.P.R. 2010) ........................................................................ 9, 10

*Rowe Entmt. v. William Morris Agency, Inc.,*
      205 F.R.D. 421 (S.D.N.Y. 2002) ....................................................................... 10

*Terteryan v. Nissan Motor Acceptance Corp.,*
      2017 WL 10991656 (C.D. Cal. Oct. 19, 2017) .................................................... 8

*Welch v. Baca,*
      2022 WL 464385 (D. Nev. Feb. 14, 2022) ....................................................... 4, 5

*Zubulake v. UBS Warburg LLC,*
      216 F.R.D. 280 (S.D.N.Y. 2003) ................................................................. 11, 12

*Zubulake v. UBS Warburg LLC,*
      217 F.R.D. 309 (S.D.N.Y. 2003) ......................................................................... 9

### **Rules and Regulations**

Fed. R. Civ. P. 26(b)(1) ....................................................................................... 4, 5, 7

Fed. R. Civ. P. 26(b)(2)(B) ..................................................................................... 5, 9

Fed. R. Civ. P. 26(c)(1) .............................................................................................. 5

Fed. R. Civ. P. 37 ....................................................................................................... 4

Fed. R. Civ. P. 37(a)(5)(A)(ii) ................................................................................. 12

Fed. R. Civ. P. 37(a)(5)(B) ...................................................................................... 12

Fed. R. Civ. P. 5(b)(2)(E) ........................................................................................ 14

**PRELIMINARY STATEMENT**

Plaintiffs purport to represent a class of "Nevada residents" whose yearbook records appear on Ancestry's website.  *See* ECF No. 1 at ¶ 60.  Plaintiffs have never attempted to identify who those "Nevada residents" are or which of the 730 million yearbook records they claim Ancestry hosts on its site (*id.* at ¶ 61) are purportedly associated with them.  Because plaintiffs *cannot* identify the "Nevada residents" in their putative class or their yearbook records, they instead focused their discovery on yearbook records from Nevada schools.  But even plaintiffs do not contend each yearbook record from a Nevada school necessarily belongs to a member of their putative class.  Nor could they—in fact, one of the two named plaintiffs in this action admitted he is *not* a Nevada resident (contrary to the allegations in his complaint) despite having attended school in Nevada.  Of course, the same will be true of many others: people regularly move out of state after high school, and plaintiffs have made no attempt to limit their discovery to Nevada yearbook records actually associated with any putative class members.

Plaintiffs now seek to compel Ancestry to identify exactly when each of the 2,654,270 Nevada yearbook records in Ancestry's database was first added to Ancestry's site.  Although they contend this information might be relevant to Ancestry's affirmative defenses (such as the statute of limitations), they fail to explain which portion of the information sought might bear on these issues—the upload date of a Nevada yearbook record depicting someone who has lived in Texas for the last 40 years, for example, bears neither on the statute of limitations for the named plaintiffs' claims nor those of the putative class members they purport to represent.

What is more, and as Ancestry has repeatedly informed plaintiffs, Ancestry does not track this information in the ordinary course of business.  Rather, to the extent the upload date for any particular record (*i.e.*, the individual name and/or photo) can be identified, this inquiry must be carried out on a record-by-record basis, not yearbook-by-yearbook.  Ancestry has conducted this inquiry for one of the named plaintiffs' yearbook records, which took approximately 10 minutes. Extrapolating this out to each of the 2,654,270 records for which plaintiffs seek this information, it would take approximately 442,378 man hours (or around 50 years of around-the-clock work) to

complete this same process for each record, when not even plaintiffs can say whether any of these records has any bearing on Ancestry's affirmative defenses.

Because plaintiffs cannot establish this information is relevant or proportional, and because the burden of providing this information greatly outweighs its utility, their motion to compel should be denied.  In the alternative, plaintiffs should be required to bear the cost of hiring a third-party contractor to carry out the hundreds of thousands of hours of work necessary to compile this information.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Anthony Sessa and Mark Sessa filed a putative class action against Ancestry, claiming Ancestry's hosting their high school yearbook records on its website violates Nevada's right of publicity statute.  *See* ECF No. 1.  After the Court granted in part and denied in part Ancestry's motion to dismiss, plaintiffs served written discovery on Ancestry.

At issue here is plaintiffs' Interrogatory No. 12, which asks Ancestry to "[i]dentify all yearbooks in the Yearbook Database from schools in Nevada and the date on which each such yearbook was added to the Yearbook Database. Yearbooks should be identified by at least the following information: name of school; location of school within Nevada (city and county); year of yearbook publication; and date (day, month, and year) on which the yearbook was added to the Yearbook Database." ECF No. 94-2 at 20-21.

On July 25, 2022, Ancestry objected to this Interrogatory, including on the grounds of relevance, proportionality, and burden.  *Id.  See also* ECF No. 94-6 at 27-28.  In August and September 2022, the parties met and conferred both in writing and by telephone to determine whether a compromise could be reached.  *See* ECF Nos. 94-3 and 94-4.  Thereafter, on October 5, 2022, plaintiffs deposed Ancestry's Rule 30(b)(6) witness (Todd Godfrey) who Ancestry had designated to testify on various topics, including Ancestry's "responses and objections to all interrogatories" propounded by plaintiffs.  Ultimately, Ancestry agreed to supplement its response to provide (for each yearbook) the names of the schools, locations, and the year each yearbook was originally published by the school, which is kept in the ordinary course of business.  ECF No. 94-6 at 27-56.

1    However, with respect to the date on which each "yearbook was added to the Yearbook

2    Database," Ancestry reiterated its objections. As Ancestry explained in both its discussions with

3    plaintiffs and in its response, (ECF No. 94-5 at 2-5; ECF No. 94-6 at 27-28), this portion of plaintiffs'

4    Interrogatory is problematic for several reasons.

5         **First,** plaintiffs have not identified who is in their putative class of "Nevada residents" and

6    which records from "schools in Nevada" are purportedly associated with them. ECF No. 94-5 at 2-

7    5. Plaintiffs argued "Ancestry asserted a statute of limitations affirmative defense in its Answer

8    (Doc. 38), and thus Plaintiffs are entitled to explore that defense," (ECF No. 94-3 at 5), but failed

9    to explain why the upload date of yearbook records that do not belong to the putative class members

10   would have any bearing on the statute of limitations inquiry and did not attempt to identify which

11   records are associated with any of the putative class members.

12        **Second,** plaintiffs' Interrogatory asks about the date each "yearbook" was uploaded. As

13   Ancestry explained, that is not a question that can be answered. ECF No. 94-5 at 2-5; ECF No. 94-

14   6 at 27-28. Ancestry does not upload "yearbooks" to its database. *See* Declaration of Todd Godfrey

15   at ¶¶ 3-4. Instead, Ancestry uploads individual *records* from each yearbook to its database—thus,

16   two records from any given yearbook may have different upload dates, and it is not possible to

17   identify the date "the yearbook was added to the Yearbook Database," as plaintiffs requested. *See*

18   *id.* at ¶¶ 3-7.

19        **Third,** even had plaintiffs asked about the date each yearbook *record* was added to

20   Ancestry's site (they did not), Ancestry informed plaintiffs this information is not maintained in the

21   ordinary course of business. ECF No. 94-6 at 27-28. Ancestry tracks only when each "collection"

22   of yearbook records is uploaded to its database. *Id.*; *see also* Godfrey Decl. at ¶ 4. It does not,

23   however, track which yearbook records were a part of each collection. *Id.* Thus, to determine when

24   any particular yearbook record was first added to the database, Ancestry would first need to

25   determine (on a record-by-record basis) the yearbook collection of which the record was a part. *See*

26   *id.* For certain rollouts, this information is not readily available: the yearbook database has been

27   updated multiple times since it was first rolled out (more than a decade ago) and certain earlier

28   rollouts were done using toolsets and processes that are no longer supported. ECF No. 94-6 at 27-

28; *see also* Godfrey Decl. at ¶¶ 4-7.  Those rollouts are stored in backup data that would need to be restored before it could even be reviewed.  ECF No. 94-6 at 27-28; *see also* Godfrey Decl. at ¶ 6.  Moreover, for other yearbook collection rollouts this information is not available because those rollouts were not stored in backup data.  ECF No. 94-6 at 27-28; *see also* Godfrey Decl. at ¶ 6.

In light of these issues, Ancestry proposed a compromise: it offered to provide this information (to the extent readily available) for each of the seven yearbook records on which the two named plaintiffs base their complaint.  ECF No. 94-5 at 5.  Plaintiffs refused.  However, Ancestry has since carried out this inquiry for one of these records.  Godfrey Decl. at ¶ 10.  Determining the collection to which the yearbook belonged and when that collection was rolled out took approximately 10 minutes per record.  And unlike other records at issue, this collection was available in a readily accessible database.  Other records are stored on backup tapes that would require restoration to access.  *Id.* at ¶ 6.  Extrapolating this retrieval time to each of the 2,654,270 Nevada yearbook records in Ancestry's database, it would take approximately 442,378 hours (or approximately 50 years of around-the-clock work) to gather this information (to the extent it is even available).

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) governs the scope and limits of discovery.  It provides that parties may only obtain discovery if the information is both (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  A motion to compel pursuant to Federal Rule of Civil Procedure 37 must include a threshold showing that the information sought is relevant and discoverable under Rule 26.  *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978); *Welch v. Baca*, 2022 WL 464385, at *1 (D. Nev. Feb. 14, 2022) ("[T]he party moving for an order to compel discovery bears the initial burden of informing the court . . . why [the other party's] objections are not justified; and [ ] why the information he seeks through discovery is relevant to the prosecution of this action."); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 438-39 (9th Cir. 1992).  Where requests seek information that is not limited to the claims at issue, courts have held such requests are impermissible.  *See, e.g.*, *DelVecchia v. Frontier Airlines, Inc.*, 2022 WL 3143322, at *5 (D. Nev. Aug. 5, 2022).

Even if a request seeks relevant information, it must be proportional to the needs of the case. Considerations bearing on proportionality include "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). District courts have broad discretion to limit discovery where the burden of compliance outweighs its likely benefit or relevance, and have broad discretion in determining relevancy for discovery purposes. *See id.*; *Welch*, 2022 WL 464385, at *1 ("[B]road discretion is vested in the trial court to permit or deny discovery.") (quoting *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)). Courts "guard against discovery that creates an undue burden on the responding party." *Gonzalez v. Diamond Resorts Int'l Mktg., Inc.*, 2021 WL 8016005, at *2 (D. Nev. July 14, 2021) (citing Fed. R. Civ. P. 26(c)(1)). In addressing such a concern, the responding party must "allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence," and courts "have broad discretion in tailoring discovery narrowly." *Id.* (citations omitted).

Further, Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure imposes specific limits on the discovery of electronically stored information ("ESI") that is not reasonably accessible because of undue burden or cost, and courts are empowered to limit the frequency or extent of discovery, including by ordering cost shifting. *See Penk v. Or. State Bd. of Higher Educ.*, 816 F.2d 458, 468 (9th Cir. 1987).

## ARGUMENT

## I. PLAINTIFFS' INTERROGATORY SEEKS IRRELEVANT INFORMATION AND IS UNDULY BURDENSOME

### A. Plaintiffs Have Failed To Meet Their Burden To Demonstrate The Interrogatory Seeks Relevant Information

It is plaintiffs' burden to demonstrate, in the first instance, that the discovery they seek is relevant to the claims or defenses at issue. *See Welch*, 2022 WL 464385, at *1. Although plaintiffs contend Interrogatory No. 12 seeks information necessary to counter a statute of limitations or laches defense (ECF No. 94 at 9-10), even plaintiffs concede it is only "the dates when the ***Plaintiffs' and***

1   ***Class members'*** yearbooks were first available for viewing on ancestry.com" that would be relevant

2   to this inquiry.  *Id.* at 9 (emphasis added).  But that is not the information plaintiffs have requested.

3        Instead, plaintiffs seek yearbook records from Nevada schools.  That a record is from a

4   Nevada school does not, however, mean that it belongs to any of the "Nevada residents" that

5   populate plaintiffs' putative class.  Indeed, plaintiffs demonstrate precisely why this is the case—

6   one of the two named plaintiffs, Anthony Sessa, admitted he is not a Nevada resident despite having

7   attended high school in Nevada.  *See* Declaration of John W. Baumann at ¶ 2, Ex. 1 at 8-9.  It is

8   plaintiffs' burden to demonstrate the information they seek is relevant—*i.e.*, that the Nevada

9   yearbook records reflect the Nevada residents who make up their putative class—yet they make no

10  attempt to do so or to estimate even the portion of the records that might be relevant.

11       Plaintiffs' only response is that they "agreed to limit a number of their discovery requests in

12  this case to Nevada yearbooks," as opposed to all 730 million records they allege are in Ancestry's

13  database.  *See* ECF No. 94 at 10.  But "limiting" their requests to one set of irrelevant records as

14  opposed to another, larger set of irrelevant records does not satisfy their burden to demonstrate that

15  *either* is relevant.  Discovery must be tailored to that which is "reasonable and necessary to the

16  litigation at hand."  *In re U. S. Fin. Sec. Litig.*, 74 F.R.D. 497, 498 (S.D. Cal. 1975).  *See also, e.g.*,

17  *Borenstein v. Animal Found.*, 2022 WL 3647910, at *3 (D. Nev. Aug. 24, 2022) (rejecting

18  interrogatory on basis that it "sweeps in irrelevant information and is grossly overbroad").  Plaintiffs

19  have failed to do so here and, for this reason alone, their motion should be denied.

20       Moreover, plaintiffs' only asserted bases for relevance are premised on Ancestry's

21  affirmative defenses.  *See* ECF No. 94-3 at 5.  Even assuming the request were tailored to seek this

22  information (it is not), it is Ancestry's burden to establish its defenses.  Thus, to the extent this

23  information were relevant, it is only that which Ancestry intends to rely on that has any arguable

24  relevance.  *See, e.g.*, *Gaines v. L. Off. of Patenaude & Felix, A.P.C.*, 2014 WL 3894348, at *4 (S.D.

25  Cal. June 12, 2014) ("The Court notes that if Defendant asserts the defense of prior express consent,

26  it will have the burden to establish that defense. Thus, the Court finds it is not [] overly burdensome

27  for Defendant to produce the documentation ***it intends to rely on to support its defense***.") (emphasis

28  added).

**B.**     <u>**Providing Information In Response To Plaintiffs' Interrogatory Would Be**</u>
<u>**Unduly Burdensome**</u>

Even could plaintiffs demonstrate the discovery sought is relevant (they cannot), Federal Rule 26 protects against even relevant discovery where, as here, the burden or expense of the discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). *See also In re Cathode Ray Tube (CRT) Antitrust Litig.*, 301 F.R.D. 449, 455 (N.D. Cal. 2014) (where interrogatories sought relevant information, burden of responding to interrogatories nonetheless outweighed the benefit); *Morales v. Allstate Northbrook Indem. Co.*, 2021 WL 6618614, at *6 (C.D. Cal. Dec. 20, 2021) ("[O]verly broad and unduly burdensome interrogatories 'are an abuse of the discovery process' and are routinely denied.") (citation omitted).

As shown above, there are 2,654,270 Nevada yearbook records in Ancestry's database. Godfrey Decl. at ¶ 9. Although Ancestry tracks when it rolls out batches of yearbook records to its site,[1] it does not keep a list of which yearbook records were included in each batch. *Id.* at ¶ 4. Thus, to determine the date any record was uploaded, Ancestry would be required to review each record to determine the rollout of which it was a part. *Id.* For certain older rollouts, this would require Ancestry to restore backup tapes with information that is not supported on Ancestry's systems. *Id.* at ¶¶ 4-6. And for others, Ancestry does not have backup data to restore and it is thus not possible to determine which records were part of those rollouts. *Id.* at ¶¶ 6-7.

Ancestry performed this inquiry for one of the named plaintiff's yearbook records. Even where the rollout was not stored on backup data that needed to be restored, carrying out this inquiry took approximately 10 minutes. *Id.* at ¶ 10. Were that same process carried out for the remaining 2,654,269 Nevada yearbook records on Ancestry's site, it would take hundreds of thousands of hours (*decades* of work) to provide this information for each yearbook record.[2]

---

[1]  Plaintiffs' Exhibit G merely lists the dates of certain yearbook record rollouts. *See* ECF No. 94-8 (e.g., "5 Aug 2020: Added 51 million new records from existing and new books."). But that information is not sufficient to identify what plaintiffs seek here—that is, which specific records were included in each roll out.

[2]  Although plaintiffs contend they are not seeking information "on a record-by-record basis, but rather on a yearbook-by-yearbook basis," ECF No. 94 at 11, Ancestry does not track this information

Courts have routinely determined similarly burdensome requests exceed the permissible scope of Rule 26. *See, e.g.*, *Mey v. Interstate Nat'l Dealer Servs., Inc.*, 2015 WL 11256613, at *3 (N.D. Ga. June 19, 2015) (request was unduly burdensome where it would require the defendant to "identify individuals from among the more than 3,000,000 records produced where only phone numbers, and not names, are available. . . . match individuals to millions of phone numbers . . . [and] obtain and research telephone subscriber records to identify individual subscriber information for telephone numbers . . . many of whom may have no connection to" the defendant); *Gonzalez*, 2021 WL 8016005, at *2 (request unduly burdensome where it would require the production of "several million pages of documents," including some in hard-copy form, and would require "redaction of personal identifying information or other sensitive matter" and thus require "extensive effort"); *Terteryan v. Nissan Motor Acceptance Corp.*, 2017 WL 10991656, at *7 (C.D. Cal. Oct. 19, 2017) (request was unduly burdensome where defendant could not identify information sought regarding non-customers "except by examining each account record" and sought irrelevant information because the request would require the defendant to produce "vast amounts of information unrelated to … class certification" concerning persons not within the putative class); *Morales*, 2021 WL 6618614, at *6 (request denied where burden on defendant to respond would require searching "thousands of claim files" and spending "hundreds of hours and months of time").[3]

---

by yearbook and thus this is a distinction without difference. Even plaintiffs recognize certain records in a single yearbook might have been uploaded on different dates. *Id.* ("if records in a specific yearbook were added to the website in 2018 **and** 2019, the interrogatory response should provide that information") (emphasis added). Thus, identifying the dates the records in each yearbook were uploaded would require review of *each record* in those yearbooks.

[3] Plaintiffs misplace reliance on *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503 (N.D. Ill. 2009). *See* ECF No. 94 at 11-12. *Donnelly* was a TCPA case in which the defendant objected to providing lists of calls allegedly placed to cell phones using an autodialer. 263 F.R.D. at 503-504. Unlike here, the defendant was able "to create special programs to extract this information" and, as a result, the endeavor was estimated to take "several hundred hours to compile," as opposed to the hundreds of thousands of hours at issue here. *See id.* at 503. Moreover, the information sought in *Donnelly* undisputedly pertained to plaintiff's putative class—here, however, plaintiffs are seeking information concerning millions of records without having made any attempt to demonstrate those records are associated with their putative class members.

This result is particularly warranted where, as here, plaintiffs have made no effort to demonstrate which of the millions of Nevada yearbook records are even at issue and thus relevant. *See, e.g.*, *Borenstein*, 2022 WL 3647910, at *3 (interrogatory seeking "the names and addresses of *every* employee, volunteer, or agent of [defendant], regardless of whether they had anything to do with the events at issue" was overbroad) (emphasis in original); *McCullough v. Dairy Queen, Inc.*, 195 F. Supp. 918, 919 (E.D. Pa. 1961) (denying motion to compel that required defendant to compile "an enormous quantity of material, the bulk of which is not even remotely concerned with the issues in this case"); *Dilley v. Metro. Life Ins. Co.*, 256 F.R.D. 643, 645 (N.D. Cal. 2009) (significance of the discovery sought to the issues in the case was substantially outweighed by the burden on the defendant where interrogatory sought information that could not be extracted without substantial difficulty and defendant had no ability to query its electronic database in a manner that would capture such information).

## II.   THE ESI IS NOT REASONABLY ACCESSIBLE AND THE REQUEST SHOULD BE DENIED OR, ALTERNATIVELY, PLAINTIFFS SHOULD BE REQUIRED TO PAY ANCESTRY'S COSTS OF RESPONDING

As an independent ground to deny the request, a party need not provide discovery of ESI that is "not reasonably accessible because of undue burden or cost" and where the requesting party fails to show "good cause."  *See* Fed. R. Civ. P. 26(b)(2)(B).

As shown in Section I.B., to the extent it is even accessible, the requested ESI would be unduly burdensome and unduly costly to produce.  *See, e.g.*, *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 319-20 (S.D.N.Y. 2003) ("[e]rased, fragmented or damaged data" and "[b]ackup tapes" are not reasonably accessible); *Nogle v. Beech St. Corp.*, 2012 WL 3687570, at *8 (D. Nev. Aug. 27, 2012) ("Information stored on archival backup tapes is generally considered not reasonably accessible."); *Gen. Elec. Co. v. Wilkins*, 2012 WL 570048 (E.D. Cal. Feb. 21, 2012) (finding back-up tapes not reasonably accessible and requesting party failed to show good cause to require producing party "to expend the resources necessary to make them reasonably accessible"); *Rodriguez-Torres v. Gov't Dev. Bank of Puerto Rico*, 265 F.R.D. 40, 44 (D.P.R. 2010) (ESI not reasonably accessible where "production of the ESI would cost around $35,000.00," and the court

was "very concerned over the increase in costs that will result from the privilege and confidentiality review … on what could turn out to be hundreds or thousands of documents").  Further, given the overbreadth of the Interrogatory, plaintiffs cannot show good cause; the burdens of responding to the Interrogatory cannot be justified in the circumstances of the case.  *See supra* at 5-9; *Rodriguez-Torres*, 265 F.R.D. at 44 (request that was a broad "fishing expedition" was not sufficient to establish good cause).

Alternatively, should the Court order discovery, because the information is not reasonably accessible, plaintiffs should be required to bear the costs of responding pursuant to the factors set forth in *Zubulake*, 217 F.R.D. at 322.  *See, e.g.*, *Penk*, 816 F.2d at 468 (Rule 26(c)(2) "empowers district courts to order that a party seeking discovery pay a portion of the expenses incurred in obtaining discoverable materials"); *OpenTV v. Liberate Techs.*, 219 F.R.D. 474, 479 (N.D. Cal. 2003) (cost-shifting warranted based on inaccessibility of records and ordering parties to split equally the cost of extraction of source code from party's database).

Specifically, cost-sharing should be ordered based on a consideration of the following factors:

(1) The extent to which the request is specifically tailored to discover relevant information;

(2) The availability of such information from other sources;

(3) The total cost of production, compared to the amount in controversy;

(4) The total cost of production, compared to the resources available to each party;

(5) The relative ability of each party to control costs and its incentive to do so;

(6) The importance of the issues at stake in the litigation; and

(7) The relative benefits to the parties of obtaining the information.

*Zubulake*, 217 F.R.D. at 322; *see also OpenTV*, 219 F.R.D. at 476-77.  Here, the majority of the factors weigh in favor of cost-shifting.

*First,* the request is not specifically tailored to discover relevant information.  As shown above (*supra* at 5-6), plaintiffs' Interrogatory seeks information that is undisputedly unrelated to their putative class members and, as a result, is not relevant.  *See, e.g.*, *Rowe Entmt. v. William Morris Agency, Inc.*, 205 F.R.D. 421, 429-30 (S.D.N.Y. 2002) ("The less specific the requesting

1   party's discovery demands, the more appropriate it is to shift the costs of production to that

2   party . . .Where a party multiplies litigation costs by seeking expansive rather than targeted

3   discovery, that party should bear the expense").

4       *Second,* the total cost of production compared with the amount in controversy likewise

5   weighs in favor of cost-shifting due to the substantial burden and cost of production.  *See* Godfrey

6   Decl. at ¶¶ 3-11; *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 288 (S.D.N.Y. 2003) ("In an

7   ordinary case, a responding party should not be required to pay for the restoration of inaccessible

8   data if the cost of that restoration is significantly disproportionate to the value of the case.").[4]

9       *Third,* while Ancestry has some control over the costs of the discovery (and incentive to

10  keep those costs low), the control truly lies with plaintiffs who have the ability to narrow their

11  request but have refused to do so.  Moreover, Ancestry's ability to keep its costs low is limited by

12  the individualized nature of the information plaintiffs have requested, which will unavoidably need

13  to be tracked down on a record-by-record basis for each of the millions of records from Nevada

14  schools.  Similarly, the sixth factor (the importance of the litigation) is, at most, neutral because

15  plaintiffs' lawsuit does not raise issues of unique public importance.  *See Zubulake*, 216 F.R.D. at

16  289 ("[T]his factor 'will only rarely come into play.' Although this case revolves around a weighty

17  issue—discrimination in the workplace—it is hardly unique. Claims of discrimination are common,

18  and while discrimination is an important problem, this litigation does not present a particularly novel

19  issue.").

20      Finally, the relative benefits to plaintiffs from obtaining the information weighs in favor of

21  cost-shifting.  At the threshold, any "benefit" of the information plaintiffs seek is reduced due to the

22  overbreadth of the Interrogatory.  Moreover, plaintiffs assert this information is relevant only

23  because it may allow Ancestry to establish its affirmative defenses.  While plaintiffs are wrong that

24  the upload date of records from Nevada schools (as opposed to the records of the Nevada residents

25

26  [4]   While the second factor, that the information is not be available from other sources, might weigh
    against cost-shifting if the request were more targeted to relevant information, it is not.  Similarly,
27  considering the fourth factor, the costs of production compared to the parties' resources, given the
    substantial burden of producing the information and the breadth of the request, cost-shifting is
28  appropriate.

plaintiffs purport to represent) are relevant to Ancestry's affirmative defenses, even if they were, it is Ancestry's burden to establish its defenses. Thus, were plaintiffs correct that this information is necessary to establish, for example, when the statute of limitations lapsed (they are not), Ancestry's production of this information would put plaintiffs in no better position than if Ancestry did not produce it at all—the burden to prove these defenses lies with *Ancestry*. *See, e.g.*, *Gaines*, 2014 WL 3894348 at *4.

In sum, the majority of the *Zubulake* factors favor cost-shifting should Ancestry be required to respond to this Interrogatory.

### III.   ANCESTRY SHOULD BE AWARDED ITS EXPENSES AND FEES

Should the Court deny the motion to compel, Ancestry seeks its expenses incurred in opposing this motion, including its attorney's fees. *See* Fed. R. Civ. P. 37(a)(5)(B); *Gonzalez*, 2021 WL 8016005, at *5 (award of expenses to party opposing motion to compel, where "[p]laintiffs' motion to compel fail[ed] on numerous grounds, including overbreadth, undue burden, and irrelevance" and the plaintiffs' positions were "not well-founded"). Plaintiffs' motion to compel is not substantially justified because it is overly broad and unduly burdensome, as explained herein.

### IV.   PLAINTIFFS' REQUEST FOR EXPENSES AND FEES SHOULD BE DENIED

In all events, Ancestry should not be required to pay plaintiffs' expenses and fees because an award of expenses is not proper if a party's position was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii). A position is substantially justified when "the parties had a genuine dispute on matters on which reasonable people could differ as to the appropriate outcome." *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 609 (D. Nev. 2016) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). As shown above, Ancestry's responses are justified and have a reasonable basis in law and fact because plaintiffs' Interrogatory is overbroad, seeks information irrelevant to the putative class's claim, and is unduly burdensome. Given the significant burden associated with responding, as Ancestry explained to plaintiffs in meet and confer communications and its interrogatory responses and as detailed herein, Ancestry is substantially justified in its position. Further, Ancestry offered a compromise by offering to produce information from named plaintiffs' records, but plaintiffs refused that compromise. Plaintiffs' request for expenses and fees should be denied.

1 | DATED December 2, 2022

Respectfully submitted,

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By_____/s/ Shon Morgan_____
Shon Morgan (*Pro Hac Vice*)
shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendants Ancestry.com
Operations Inc., Ancestry.com Inc., and
Ancestry.com LLC

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b)(2)(E), I hereby certify that on this day, I caused a true and correct copy of the foregoing to be served via the Court's electronic system on all registered and active parties.

DATED December 2, 2022.

*/s/ Shon Morgan*
Shon Morgan

-14-

Case No. 2:20-cv-02292

OPPOSITION TO MOTION TO COMPEL