Miles N. Clark, Esq.
Nevada Bar No. 13848
LAW OFFICES OF MILES N. CLARK, LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY SESSA AND MARK SESSA, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company,<br><br>      Defendants. | Case No.: 2:20-cv-02292-GMN-BNW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hon. Gloria M. Navarro |

## NOTICE OF MOTION AND MOTION

TO:     ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that Plaintiffs Anthony Sessa and Mark Sessa will and hereby do move for an Order certifying the following Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3):

> All persons: (1) who are Nevada residents or were Nevada residents at any time between December 17, 2017, and the present; (2) who are not paying subscribers, free trial users, or registered users of Ancestry.com and have never donated a yearbook to Ancestry; and (3) for whom one or more of their yearbook photographs were searchable on Ancestry.com at any time between December 17, 2017, and the present.

Plaintiffs further request the Order appoint them as Class Representatives and appoint Morgan & Morgan LLP, Turke & Strauss LLP, Law Offices of Miles N. Clark, LLC, and the Law Office of Benjamin R. Osborn as Class Counsel.

In support of this Motion, Plaintiffs refer to the Memorandum of Points and Authorities below, and the accompanying declarations of Cliff Kupperberg, Brandon Schwartz, Michael F. Ram, Raina C. Borrelli, Benjamin R. Osborn, Miles Clark, Mark Sessa, and Anthony Sessa, and the accompanying Proposed Order Granting Class Certification.

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..................................................................... i

TABLE OF CONTENTS.......................................................................................... ii

TABLE OF AUTHORITIES ..................................................................................... iii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................1

   I.   INTRODUCTION .............................................................................................1

   II.  PROCEDURAL BACKGROUND AND PROPOSED CLASS .........................3

   III. LEGAL STANDARD.......................................................................................4

   IV. ARGUMENT ...................................................................................................5

       A.  The Requirements of Rule 23(a) are satisfied. ........................................5

           1.   The proposed Class is so numerous that joinder is impracticable. ...................5

           2.   There are questions of law and fact common to the proposed Class. ...............5

           3.   Plaintiffs' claims are typical of those of the proposed Class. ...........................9

           4.   Plaintiffs and their counsel are adequate representatives..............................13

               a. There is no fundamental conflict of interest. ..............................................14

               b. Plaintiffs and their counsel have and will prosecute vigorously. ..............15

       B.  The Predominance Requirement of Rule 23(b)(3) is Satisfied. .............16

               a. Common issues predominate........................................................................16

               b. Ancestry's potential arguments do not defeat predominance....................17

       C.  The Superiority Requirement of Rule 23(b)(3) is Satisfied. ..................19

       D.  The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2). .............21

CONCLUSION........................................................................................................21

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Amgen v. Conn. Ret. Plans and Trust Funds*,
568 U.S. 455 (2013).................................................................................................16

4

*Bateman v. American Multi-Cinema*,
623 F.3d 708 (9th Cir. 2010) ...................................................................................19

5

6

*Bemis v. Estate of Bemis*,
114 Nev. 1021, 967 P.2d 437 (1998) ......................................................................12

7

*Bias v. Wells Fargo & Co.*,
312 F.R.D. 528 (N.D. Cal. 2015).............................................................................12

8

9

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .....................................................................................5

10

*Bonilla v. Ancestry.com*,
574 F. Supp. 3d 582 (N.D. Ill. Dec. 7, 2021)......................................................2, 12

11

12

*Braundmeier v. Ancestry.com*,
No. 20-cv-7390 (N.D. Ill. Filed Nov. 23, 2022) .....................................................14

13

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ...........................................................................20, 21

14

15

*Callahan v. PeopleConnect*,
No. 20-cv-09203, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021) ......................2, 7, 15

16

17

*Camacho v. Control Group Media Co.*,
No. 21-cv-1954, 2022 WL 3093306 (S.D. Cal. July 18, 2022)..................................2

18

*Edwards v. First Am. Corp.*,
798 F.3d 1172 (9th Cir. 2015) ...................................................................................4

19

20

*Eisen v. Carlisle Jacquelin*,
417 U.S. 156 (1974)..................................................................................................20

21

22

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011)..................................................................................................16

23

*Espinosa v. Ahearn*,
926 F.3d 539 (9th Cir. 2019) ...................................................................................13

24

25

*Fischer v. InstantCheckmate LLC*,
No. 19 C 4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022)..................3, 9, 10, 17, 18

26

27

*Gabiola v. Sarid*,
No. 16-cv-02076, 2017 WL 4264000 (N.D. Ill. Sep. 26, 2017) ...........................................2

*Grand Canyon Skywalk Dev., LLC v. Cieslak*,
No. 2:13-CV-596, 2014 WL 2123255 (D. Nev. May 21, 2014)...........................................12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...........................................................................5, 14, 16

*Hernandez v. Wells Fargo Bank, N.A.*,
No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020)......................................................................20

*Hoffower v. Seamless Contacts, Inc.*,
No. 22-cv-2019, 2022 WL 17128949 (N.D. Ill. Nov. 22, 2022) ...........................................2

*Huebner v. Radaris, LLC*,
No. 14-CV-04735-VC, 2016 WL 8114189 (N.D. Cal. Apr. 12, 2016) ...............................3, 9

*In re Clearview AI, Inc. Consumer Privacy Litig.*,
585 F.Supp.3d 1111 (N.D. Ill. Feb. 14, 2022) ...................................................................2

*Kellman v. Spokeo*,
No. 21-cv-08976, --- F. Supp. 3d ----, 2022 WL 1157500 (N.D. Cal. April 19, 2022)................2

*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021).......................................................................2, 10

*Kristensen v. Credit Payment Servs.*,
12 F. Supp. 3d 1292 (D. Nev. 2014).................................................................................20

*Levya v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ...........................................................................................19

*Lukis v. Whitepages, Inc.*,
542 F. Supp. 3d 831 (N.D. Ill. 2020) ............................................................................2, 15

*Martin v. Yasuda*,
829 F.3d 1118 (9th Cir. 2016) ..........................................................................................14

*Martinez v. ZoomInfo Techs. Inc.*,
No. 21-cv-5725, 2022 WL 1078630 (W.D. Wash. Apr. 11, 2022) .....................................2, 19

*Meyer v. Portfolio Recovery Assocs., LLC*,
707 F.3d 1036 (9th Cir. 2012) .......................................................................................9, 11

*Morgan v. Sundance, Inc.*,
142 S. Ct. 1708 (2022).....................................................................................................15

*Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*,
No. 19-56514 (9th Cir. Apr. 8, 2022) ...................................................................4

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .........................................................................21

*Raymond G. Schreiber Revocable Trust v. Estate of Knievel*,
984 F. Supp. 2d 1099 (D. Nev. 2013) ...........................................................12

*Resnick v. Frank*,
779 F.3d 934 (9th Cir. 2015) ....................................................................14, 15

*Rodriguez v. Hayes*,
591 F.3d 1105 (9th Cir. 2009) ..................................................................9, 13

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) .......................................................................16

*Schofield v. Delta Air Lines, Inc.*,
No. 18-cv-00382 (N.D. Cal. Feb. 27, 2019) .................................................13

*Siegel v. ZoomInfo Techs*,
No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021) ......................10

*Silber v. Mabon*,
18 F.3d 1449 (9th Cir. 1994) ........................................................................21

*Spindler v. Seamless Contacts, Inc.*,
No. 22-cv-787, 2022 WL 16985678 (N.D. Cal. Oct. 24, 2022) ......................2

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) .........................................................................14

*True Health Chiropractic, Inc. v. McKesson Corp.*,
896 F.3d 923 (9th Cir. 2018) .........................................................................12

*Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*,
268 F.R.D. 670 (W.D. Wash. 2010) .................................................................5

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)..................................................................................12, 16

*Tyus v. Wendy's of Las Vegas, Inc.*,
407 F. Supp. 3d 1088 (D. Nev. 2019) ...........................................................4, 5

*United Steel v. Conocophillips Co.*,
593 F.3d 802 (9th Cir. 2010) .........................................................................13

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ......................................................................................................5, 16

*West v. California Servs. Bureau, Inc.,*
323 F.R.D. 295 (N.D. Cal. 2017) .........................................................................................21

*Wolin v. Jaguar Land Rover North America, LLC,*
617 F.3d 1168 (9th Cir. 2010) .............................................................................................9

**Statutes**

Nev. Rev. Stat. §§ 597.770 *et seq.* ........................................................1, 2, 3, 9, 11, 13, 16, 18, 19

**Rules**

Fed. R. Civ. P. 23 ...........................................................2, 3, 4, 5, 9, 12, 13, 14, 16, 19, 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Defendants (collectively, "Ancestry") own and operate the website www.ancestry.com. Ancestry is in the business of selling individual's names, childhood photographs, and personal information without their consent. Ancestry uses Nevada residents' names and childhood photographs in advertisements promoting paid subscriptions to Ancestry. Nevada law recognizes the intellectual property and privacy rights of individuals to control the commercial use of their names and likenesses. Ancestry's non-consensual use of Nevada residents' names and photographs violates these important and long-standing legal rights.

Plaintiffs move for certification under Rules 23(b)(3) and 23(b)(2) of their claim under Nevada's statutory right of publicity, Nev. Rev. Stat. §§ 597.770 *et seq.* ("NRPA"). This is a paradigmatic case for class treatment. Plaintiffs' and Class members' claims arise from Ancestry's use of their names and yearbook photographs in public webpages and marketing emails designed to advertise subscriptions to Ancestry.com. ███████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████. *See, e.g.*, Osborn Decl., Exs. 1-2; Ex. 3 ("Godfrey Tr."), 69:5-20. Ancestry incorporated each Class members' name and childhood photograph into the same advertisements in the same way. *See* Dkt. No. 1 ("Compl."), at ¶¶3-12; 25-32; 37-44; 53-56. Ancestry publishes three types of advertisement. First, Ancestry advertises using limited access "teaser" profiles. Ancestry extracted photographs and written information from yearbooks to create profiles associated with individual students. *See, e.g.*, *id.* at ¶¶27, 39. Each profile contains the individual's name, photograph as a child, and biographical information including estimated age and the high school they attended. *Id.* Ancestry publishes on the Internet a limited access "teaser" version of each profile in which the photograph appears in low resolution and the biographical information is redacted. *Id.*, at ¶¶31; 43; Godfrey Tr., at 47:4-11. When users click to view the full version of the profile, they receive a pop-up message from Ancestry displaying the student's name and photograph along with a prompt to "Sign Up Now" for a paid subscription. Compl., at ¶¶31, 43; Godfrey Tr., at 48:4-10. Second, ████████████████████████

██████████████████████████████████. Compl., at ¶¶26-28, 38-40; Godfrey Tr., at 31:20-32:1. ████████████████████████████████████████████████████████████████

████████████████████████████████████████████. Compl., at ¶¶32; 44; Godfrey Tr., at 51:13-52:1; 54:25-55:24. All three types of advertisements function in the same manner for every student in Ancestry's database, and therefore for every Class member. Because Ancestry displays the same advertisements for every Class member, and because the Class members have no relationship with Ancestry and therefore have not provided written consent, liability is subject to Class-wide proof.

Damages are also subject to Class-wide proof. The NRPA provides for $750 in minimum statutory damages per violation. Class members are entitled to the statutory minimum if they suffered "injury[] sustained by reason of the unauthorized use." Nev. Rev. Stat. §§ 597.810(1)(b). Here, as this Court ruled in denying Ancestry's motion to dismiss Plaintiffs' NRPA claim, Class members have suffered the injury the NRPA and its common-law analogue were designed to redress. 561 F.Supp.3d 1008, 1011 ("Plaintiffs have alleged injury recognized at common law because they assert that Ancestry used their names and likenesses to motivate a decision to purchase a particular product or service.") (quotation omitted).[1] Class members were injured by Ancestry's denial of their right to control the use of their names and likeness, and by Ancestry's

---

[1] At least eleven courts have agreed with this Court's ruling that Plaintiffs' allegations establish both Constitutional injury-in-fact and statutory injury under state right of publicity statutes. *See, e.g.*, *Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *14-15 & *18 (N.D. Cal. Nov. 1, 2021) (analyzing statutory standing under Cal. Civ. Code § 3344 and California's UCL); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 878 (W.D. Wash. 2021); *Bonilla v. Ancestry.com*, 574 F. Supp. 3d 582, 590-91 (N.D. Ill. Dec. 7, 2021); *Kellman v. Spokeo*, No. 21-cv-08976, --- F. Supp. 3d ----, 2022 WL 1157500, at *7 (N.D. Cal. April 19, 2022); *Gabiola v. Sarid*, No. 16-cv-02076, 2017 WL 4264000, at *6 (N.D. Ill. Sep. 26, 2017); *Spindler v. Seamless Contacts, Inc.*, No. 22-cv-787, 2022 WL 16985678, at *3-4 (N.D. Cal. Oct. 24, 2022); *Lukis v. Whitepages, Inc.*, 542 F. Supp. 3d 831, 804-05 (N.D. Ill. 2020); *Camacho v. Control Group Media Co.*, No. 21-cv-1954, 2022 WL 3093306, at *27-28 (S.D. Cal. July 18, 2022) (analyzing statutory standing under § 3344); *Hoffower v. Seamless Contacts, Inc.*, No. 22-cv-2019, 2022 WL 17128949, at *1-2 (N.D. Ill. Nov. 22, 2022); *In re Clearview AI, Inc. Consumer Privacy Litig.*, 585 F.Supp.3d 1111, 1126-30 (N.D. Ill. Feb. 14, 2022); *Martinez v. ZoomInfo Techs. Inc.*, No. 21-cv-5725, 2022 WL 1078630, at *2-4 (W.D. Wash. Apr. 11, 2022).

failure to compensate them for its commercial use of their names and likenesses in advertisements. The record shows that Ancestry ascribes provable economic value to Class members' yearbook photographs. Because each Class member is entitled to the same statutory minimum damages so long as they suffered injury in some amount, even were there variation within the Class in the economic value Ancestry derived from each photograph, this would be irrelevant to the calculation of damages in this case.

At least two courts have granted class certification in highly similar cases involving statutory right of publicity claims. In *Fischer v. InstantCheckmate LLC*, Judge Feinerman certified under Rule 23(b)(3) a class of Illinois residents whose names and personal information appeared in a searchable database published by InstantCheckmate. No. 19 C 4892, 2022 WL 971479, at *3, 15 (N.D. Ill. Mar. 31, 2022). InstantCheckmate.com is owned by PeopleConnect, █████████. *See* Osborn Decl., Ex. 1. Like Ancestry.com, InstantCheckmate.com used search results containing individuals' names and identities to advertise subscriptions. *See* 2022 WL 971479, at *8. The *Fischer* court considered and rejected many of the arguments Ancestry may raise here. Similarly, in *Huebner v. Radaris, LLC*, Judge Chhabria certified under Rules 23(b)(3) and 23(b)(2) a class of individuals asserting California claims against a similar people-search site. No. 14-CV-04735-VC, 2016 WL 8114189, at *1-2 (N.D. Cal. Apr. 12, 2016). Plaintiffs' counsel are unaware of any court that has denied class certification in a similar case. There is no reason for a different result here. Plaintiffs' motion should be granted.

## II.   PROCEDURAL BACKGROUND AND PROPOSED CLASS

On December 17, 2020, Plaintiffs filed a class action complaint in the United States District Court for the District of Nevada asserting claims under the NRPA; Nevada's Deceptive Trade Practices act, Nev. Rev. Stat. §§ 598.09093 *et seq.*; Nevada intrusion upon seclusion; and Nevada unjust enrichment. *See* Compl. Plaintiffs alleged that Ancestry used their names and yearbook photographs as children without consent to advertise paid subscriptions to the

Ancestry.com website in violation of their intellectual property and privacy rights. *Id*. On September 16, 2021, the Court granted in part and denied in part Ancestry's motion to dismiss, denying the motion with respect to Plaintiffs' statutory right of publicity (NRPA) claim. Dkt. No. 36. On October 4, 2021, this Court entered a scheduling Order indicating that discovery should close on March 16, 2022. Dkt. No. 42.

On September 30, 2021, Ancestry filed a notice of appeal and sought interlocutory appeal to the Ninth Circuit of this Court's denial of its anti-SLAPP motion to strike. Dkt. No. 39. In April 2022 Ancestry voluntarily dismissed its appeal. *See* Dkt. 51. On May 23, 2021, this Court entered a scheduling order under which fact discovery would close on October 25 and Plaintiff would move for class certification by November 29, Dkt. No. 64, which was later modified by stipulation to December 6, 2022. Dkt. No. 99.

Plaintiffs now respectfully move for an Order certifying the following Class pursuant to Rule 23(a), Rule 23(b)(2), and Rule 23(b)(3):

> All persons: (1) who are Nevada residents or were Nevada residents at any time between December 17, 2017, and the present; (2) who are not paying subscribers, free trial users, or registered users of Ancestry.com and have never donated a yearbook to Ancestry; and (3) for whom one or more of their yearbook photographs were searchable on Ancestry.com at any time between December 17, 2017, and the present.

### III.   LEGAL STANDARD

"[P]laintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop. v. Bumble Bee Foods LLC*, No. 19-56514 (9th Cir. Apr. 8, 2022). "However, when presented with a motion to certify, a court should not turn class certification into a mini-trial on the merits." *Tyus v. Wendy's of Las Vegas, Inc.*, 407 F. Supp. 3d 1088, 1097 (D. Nev. 2019) (*quoting Edwards v. First Am. Corp.*, 798 F.3d 1172, 1178 (9th Cir. 2015)).

## IV.   ARGUMENT

### A.  The Requirements of Rule 23(a) are satisfied.

#### 1.   The proposed Class is so numerous that joinder is impracticable.

There can be no serious dispute that the proposed Class satisfies the numerosity requirement. Plaintiff retained Clifford I. Kupperberg, a Certified Public Accountant, to assist in estimating the size of the Class. Mr. Kupperberg estimates the size of the class to be approximately 112,000. Kupperberg Decl., at ¶10. Mr. Kupperberg used two alternate methods to reach this estimate. *Id.* First, he began with the total number of photographs from Nevada yearbooks in Ancestry's database. *Id.* ¶¶11-17. He then conservatively assumed that each Class member appears in eight separate photographs, and that no photograph represents more than one Class member. *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.*; Osborn Decl., Ex. 7 (▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Second, Mr. Kupperberg began from the number of yearbooks from Nevada schools in Ancestry's and multiplied by a conservative estimate of the average number of seniors whose photographs appear in each yearbook. *Id.* ¶¶18-23. In both methods, Mr. Kupperberg applied adjustments for migration, mortality, and Ancestry users who are excluded from the Class. *See id.* ¶¶11-23.

#### 2.   There are questions of law and fact common to the proposed Class.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. The requirements for showing commonality are "minimal." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "[E]ven a single common question will do for the purposes of Rule 23(a)(2)." *Tyus*, 407 F. Supp. 3d at 1098 (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). Where the defendant is alleged to "have engaged in standardized conduct toward the members of the proposed class," commonality is easily satisfied. *See Trustees of Red Dot Corp. Employee Stock Ownership Plan and Trust*, 268 F.R.D. 670, 676 (W.D. Wash. 2010).

Commonality is not "defeated by slight differences in class members' positions." *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

The Class satisfies commonality. Ancestry's liability hinges on its commercial use of Class members' names and yearbook photographs in three types of advertisement for its subscription service without written consent. Ancestry uses each Class members' name and photograph in the same way. First, Ancestry publicly displays searchable profiles containing Class member's names, biographical information, and photographs as children to its free trial users. *See* Compl., at ¶¶27 & 39; 561 F.Supp.3d 1008 at 1017. Testifying on behalf of the company, Ancestry's Vice President of Global Content confirmed that the screenshots in the Complaint accurately represent what any free trial user would see after searching for any person in Ancestry's yearbook database. Godfrey Tr., 58:2-11. Ancestry also confirmed that "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮]." *Id.*, at 33:11-21. Second, for users who have not signed up for a subscription or free trial, Ancestry displays limited access "teaser" profiles containing the Class members' names, low-resolution photographs, the categories of biographical information Ancestry possesses, and a message that "There's more to see" about the Class member if the user "Sign[s] Up Now" for a subscription. Compl., at ¶¶31, 43; *see* 561 F.Supp.3d 1008 at 1023 (holding these allegations "indicate that Ancestry has used Plaintiffs' likeness for commercial purposes."). Again, Ancestry confirmed that the screenshots in the Complaint accurately represent its limited access "teaser" profiles, which Ancestry displays in the same way for every individual in its yearbook database. Godfrey Tr., 60:3-62:19. Third, Ancestry sends promotional "hint emails," which incorporate Class members' names and a link to their yearbook photographs, to users who have not yet purchased a subscription. Compl., at ¶¶32, 44; Godfrey Tr., at 51:8-52:1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" *Id.*, at 55:13-16. Because Ancestry incorporates every Class member's

name and likeness into the same advertisements in the same way, liability may be established by common proof.

Damages may also be established by common proof. Class members may claim statutory minimum damages of $750 per use if they can show they suffered "injury[] sustained by reason of the unauthorized use." Nev. Rev. Stat. §§ 597.810(1)(b). That Class members suffered injury may be established by proof that "Ancestry has used Plaintiffs' likeness for commercial purposes" without written consent, because that is the injury the related common law tort of misappropriation of name or likeness was designed to redress. 561 F.Supp.3d 1008, 1022-23. Therefore, Class members' entitlement to statutory damages may be proved by the same common proof discussed above.

That Class members suffered injury may also be established by proof that Ancestry used and earned a benefit from their names and likenesses "without providing any economic value for the use." 561 F.Supp.3, at 1026; *see also Callahan v. PeopleConnect*, No. 20-cv-09203, 2021 WL 5050079, at *19 (N.D. Cal. Nov. 1, 2021) ("Plaintiffs have alleged an economic injury; they were not paid – implicitly, by PeopleConnect – for the use of their names and likenesses"). That Ancestry ascribes an economic value to, and earns a benefit from, Class members' likenesses may be shown by:

(1) Ancestry's use of Class members' names and likenesses to advertise.

(2) Ancestry's ██████████████████████████████████████████████████████████████████ *See* Ex. 9, response to ROG 6 (████████████████████████████████████████); Osborn Decl., Exs. 1 & 2 (████████████████████████); Godfrey Tr., 92:20-23 ████████████████████████); 97:21-98:3; 87:3-12; 86:8-16.[2]

---

[2] Ancestry may argue that ████████████████████████████████████████████████████████████████████████████████████████. *See* Godfrey Tr., at

(3) ██████████████████████████████████████████
███████████████████████████ Osborn Decl., Ex. 8;
Godfrey Tr., 103:6-105:21.

(4) ████████████████████████████. Osborn Decl., Ex. 2;
Godfrey Tr., 120:5-123:19 ██████████████████
██████████).

(5) Similar use by Ancestry's competitors. PeopleConnect and DDO own the websites www.classmates.com and www.e-yearbook.com, respectively. They use Class members' yearbook photographs for the same commercial purpose Ancestry does: advertising website subscriptions.

(6) ██████████████████████████████████████████
███████████████████. See, e.g., Osborn Decl., Ex. 4,
Ancestry_00002575 & Ex. 5, at Ancestry_00002915 ████████
████████████████████████████████████████; Ex. 6,
Ancestry_00002935, at pg. 4 (███████████████████
█████████████████.

Each of these proofs is independently sufficient to establish Class-wide injury, and each may be shown using common evidence.

Thus, while only one common question of law or fact is required, there are many questions of law and fact common to the proposed Class, including:

- Whether Ancestry used Class members' names and likenesses to advertise website subscriptions in advertisements identical or substantially similar to those shown and described in the Complaint;

- Whether Ancestry's regular practices and policies include obtaining written consent from Class members prior to using their names and likenesses;

---

98:21-99:18. This argument is unsupported by the facts. See, e.g., Ex. 1 (██████████
████████; Godfrey Tr., at 98:21-99:18 (██████████████████████████
█████████). It is also irrelevant under the law. ██████████████████████
██████████████████████████████████████████████.

- Whether Ancestry ascribes economic value to and derives an economic benefit from its commercial use of Class members' names and likenesses;

- Whether the provision for statutory damages in the NRPA entitles each Class member to $750 for each of their yearbook photographs Ancestry used to advertise subscriptions;

- Whether Class members are entitled to injunctive relief, including (1) changes to the Ancestry website that would de-associate the display of Class members' names and yearbook photographs from solicitations for the purpose of a website subscription, and/or (2) Ancestry obtaining written consent before making commercial use of Plaintiffs' names and photographs.

The courts in *Fischer* and *Huebner* found commonality was satisfied in cases presenting the same types of common issues. *See Fischer*, 2022 WL 971479, at *4 (commonality satisfied in Illinois statutory right of publicity case against website that, like Ancestry, uses profiles of personal information to advertise subscriptions); *Huebner*, 2016 WL 8114189, at *1 (granting class certification under Rule 23(b)(3) because the defendant people-search website "seems to have acted uniformly in all respects relevant to the plaintiffs' [California statutory right of publicity] . . . claims").

### 3. Plaintiffs' claims are typical of those of the proposed Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The "test of typicality [] is whether other [class] members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168 (9th Cir. 2010). This test is met when the claims of the named plaintiffs are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012) (quotation omitted). "Defenses unique to a class representative counsel against class certification only where they threaten to become the focus of the litigation." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2009). In determining whether a unique defense "threatens to become the focus," a court may consider the plausibility

of the defense and its own prior rulings. *See id.* (rejecting argument that unique defense undermined typicality because the court had already rejected the defense).

Here, typicality is satisfied because Plaintiffs' claims arise from the same course of conduct, are based on the same legal theories, and seek the same relief as those of Class members. As explained above, Plaintiffs' names and photographs were incorporated in Ancestry's advertisements in the same manner as those of absent Class members. Plaintiffs never registered on Ancestry.com. Osborn Decl., Exs. 13 & 14 (Plaintiffs' responses to Interrogatory 14). By definition, neither did the absent Class members. Plaintiffs seek the same relief as absent Class members, most notably statutory minimum damages in the amount of $750 per photograph and an injunction prohibiting Ancestry from advertising subscriptions using Class members' yearbook photographs without their written consent.

Ancestry may argue, as InstantCheckmate did in *Fischer*, that Plaintiffs' claims are subject to various issues and "unique" defenses that render their claims atypical. *See Fischer*, 2022 WL 971479, at *4-7. None of its potential arguments hold water.

**Viewing by a Member of the Public**: Ancestry may argue that Plaintiffs' claims are atypical because, while the free trial and limited access "teaser" profiles incorporating their names and yearbook photographs have been viewed by other individuals, *see* Godfrey Tr., at 157:3-21, for some members of the Class it is possible the advertisements incorporating their photographs have not yet been viewed by a member of the public, because no one has yet searched for their names on www.ancestry.com. This argument fails because, as multiple courts have held, whether an advertisement was viewed by a member of the public is not relevant to a right of publicity claim. The claim turns on the defendant's commercial use, not whether a third party witnessed the use. The right of publicity "does not impose a viewership requirement." *See Fischer*, 2022 WL 971479, at *11; *Siegel v. ZoomInfo Techs*, No. 21-cv-2032, 2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021) (rejecting argument that "actual view[ing]" must be alleged); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865, 876 (W.D. Wash. 2021) (while common law false light

claims require "some allegation that members of the public saw the offending image," there is "no valid basis" to import this requirement into the right of publicity). As with the Illinois and Ohio laws at issue in *Fischer*, *Siegel*, and *Knapke*, there is no viewership requirement in the NRPA. Plaintiffs' and Class members' claims arise from Ancestry's creation of advertisements making unauthorized commercial use of their likenesses. The Class is not required to show whether or how often the advertisements were viewed by members of the public. *See Fischer*, 2022 WL 971479, at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . . is immaterial to whether InstantCheckmate violated the IRPA").

Similarly, Ancestry may argue that Plaintiffs' claims are atypical because it is possible Ancestry has not yet sent a "hint email" incorporating Plaintiffs' names and yearbook photographs to a potential subscriber, *see* Godfrey Tr., 162:23-163:6 (admitting Ancestry "[doesn't] know one way or the other"), while for other Class members Ancestry has done so. *See, e.g.*, Osborn Decl., Ex. 5 (███████████████████████████████████ ██████████████████████████████████████████). Again, this argument fails. First, Ancestry admits that ████████████████████████████████ ██████████████████████████████████" Godfrey Tr., 55:13-24. ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████ does not alter the fact that Ancestry has publicly distributed every Class member's photograph as part of its free trial and limited access advertisements. Nor does it change the fact that every Class member's claim arises from the same fundamental course of conduct: the commercial use of a yearbook photograph to advertise subscriptions without consent. *See Meyer*, 707 F.3d 1036, 1042 (the named plaintiffs' claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical."). Plaintiffs do not seek different relief depending on ███████████████

██████████████████████████████████████████. Plaintiffs seek the same relief for all Class members: statutory damages of $750 for each photograph in the Ancestry database, and an injunction prohibiting use in any form of advertisement without written consent.

**Statute of Limitations**: Ancestry may argue that some Class members are subject to a "unique" statute of limitations defense because Ancestry uploaded their yearbook photographs and began advertising using their names and likenesses more than three years prior to the date on which Plaintiffs filed their Complaint. *See* Dkt. No. 38 ("Answer"), at ¶104 (asserting claims are "barred in whole or in part by the applicable statutes of limitation"); *see also* Nev. Rev. S. § 11.190 (three-year limitations period for "[a]n action upon a liability created by statute."). This argument would not defeat typicality. First, affirmative defenses do not typically defeat typicality. "[C]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 542 (N.D. Cal. 2015). A court may certify a Rule 23(b)(3) class "even though [] important matters will have to be tried separately, such as some affirmative defenses peculiar to some individual Class members." *True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (alterations omitted) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

Second, "Nevada follows the discovery rule," under which "a claim accrues when a claimant knows or should have known the fact giving rise to the claims." *Raymond G. Schreiber Revocable Trust v. Estate of Knievel*, 984 F. Supp. 2d 1099, 1111 (D. Nev. 2013) (citing *Bemis v. Estate of Bemis*, 114 Nev. 1021, 1025, 967 P.2d 437, 440 (1998)); *see also Grand Canyon Skywalk Dev., LLC v. Cieslak*, No. 2:13-CV-596, 2014 WL 2123255 (D. Nev. May 21, 2014) (applying discovery rule to defamation claim).[3] Here, Plaintiffs first learned their yearbook

---

[3] Because Nevada follows the discovery rule, Judge Kendall's decision granting summary judgment with respect to some of the Illinois claims in *Bonilla v. Ancestry.com*, No. 20-cv-7390, Dkt. No. 96 (N.D. Ill. Sep. 16, 2022), is not relevant here. Judge Kendall's ruling rested on her

photographs were being used to advertise Ancestry subscriptions shortly before the Complaint was filed, and well within the three-year limitations period. *See* Osborn Decl., Ex. 15 ("Anthony Sessa Tr."), 20:23-22:4; Ex. 16 ("Mark Sessa Tr."), 22:7-15. Like the absent Class members, Plaintiffs are not users of Ancestry.com, and Ancestry never attempted to contact them to solicit their written consent as required by the NRPA. Due in large part to Ancestry's failure to follow the law, neither Plaintiffs nor the other Class members reasonably could have discovered Ancestry's commercial misuse prior to this suit being filed.

Third, at class certification the relevant question is not how the statute of limitations inquiry ultimately would be resolved, but whether the issue is unique to the named Plaintiffs and, if so, whether the issue would threaten to become the "focus of the litigation." *See Rodriguez*, 591 F.3d at 1124; *United Steel v. Conocophillips Co.*, 593 F.3d 802, 808-809 (9th Cir. 2010). Whether and how the NRPA's statute of limitations applies to Ancestry's conduct in this case is an issue that affects the Class as a whole. *See Schofield v. Delta Air Lines, Inc.*, No. 18-cv-00382, at *5-6 (N.D. Cal. Feb. 27, 2019) (statute of limitations defense did not defeat typicality because "when members should have learned of [the publication] is likely to turn on common evidence or patterns of evidence.").

In sum, Plaintiffs' claims are typical of those of the Class because they suffered the same injury and seeks the same relief. Ancestry's potential arguments against typicality fail.

### 4. Plaintiffs and their counsel are adequate representatives.

Rule 23(a)(4) requires that the parties will "fairly and adequately protect the interests of the class." A court must "resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Espinosa v. Ahearn*, 926 F.3d 539 (9th Cir. 2019) (quotation omitted). Here, both questions resolve in favor of certification.

---

conclusion that, unlike in Nevada, the discovery rule does not apply to Illinois right of publicity claims. *Id.*

### a.   There is no fundamental conflict of interest.

Courts "do not favor denial of class certification on the basis of speculative conflicts." *Resnick v. Frank*, 779 F.3d 934, 942 (9th Cir. 2015) (quotation omitted). Nor will "trivial" conflicts defeat adequacy. *Id.* "Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Id.* (quotation omitted). "[R]elatively small differences in damages and potential remedies" do not constitute a fundamental conflict of interest. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, no fundamental conflict exists between the proposed Class and Plaintiffs and their counsel. Plaintiffs seek the same monetary compensation for themselves that they do for absent Class members, *i.e.*, $750 in minimum statutory damages per yearbook photograph. An injunction prohibiting Ancestry from using Class members' names and photographs to advertise subscriptions without written consent would affect all Class members in the same way. The claims of all Class members arise under the same state's law. Because "the requested relief applies equally throughout the class," as Plaintiffs prove their claims, they will also be proving the claims of millions of absent Class members. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (quotation omitted). Therefore, there are no fundamental conflicts of interest.

Ancestry may argue, as it did unsuccessfully in a parallel case, that even though Plaintiffs have never visited Ancestry.com and therefore never saw or agreed to any terms of service, Plaintiffs are nevertheless bound by the arbitration clause by virtue of their counsel's creation of an account on www.ancestry.com. *See Braundmeier v. Ancestry.com*, No. 20-cv-7390 (N.D. Ill. Filed Nov. 23, 2022) (denying Ancestry's motion to compel arbitration). This argument would fail for multiple reasons. First, by willingly litigating this case against Plaintiffs for more than two years – including briefing and then withdrawing an appeal to the Ninth Circuit, engaging in motion practice, and willingly participating in extensive discovery – Ancestry has waived any supposed right to seek an alternate forum. *See, e.g., Martin v. Yasuda,* 829 F.3d 1118 (9th Cir.

2016) (defendant waived arbitration when it "failed to move for arbitration for seventeen months"); *overruled in part by Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022) (federal courts may no longer "condition a waiver of the right to arbitrate on a showing of prejudice" to the party opposing arbitration). Second, as *Braundmeier* recognized, a principal cannot be bound by implied authority or ratification to an agreement her agent entered before any agency relationship existed. *See also Lukis v. Whitepages Inc.*, 549 F. Supp. 3d 798, 807-08 (N.D. Ill. 2021) (same). Should Ancestry pursue this argument, Plaintiffs will show that counsel created the account on www.ancestry.com before Plaintiffs had even met counsel. Third, as Judge Chen ruled in the similar case *Callahan v. PeopleConnect, Inc.*, "absent client consent or ratification, a lawyer cannot bind a client to an arbitration agreement by virtue of the attorney-client relationship alone." No. 20-cv-09203, 2021 WL 1979161 (N.D. Cal. May 18, 2021), *aff'd*, No. 21-16040, 2022 WL 823594 (9th Cir. Mar. 18, 2022). Here, Plaintiffs neither consented nor ratified any supposed agreement to arbitrate. Even were Plaintiffs subject to a viable arbitration defense, the issue would not present a "fundamental" conflict because it does not render their interests adverse to the Class, nor does it "go to the heart of the litigation." *See Resnick*, 779 F.3d at 942.

### b.  Plaintiffs and their counsel have and will prosecute vigorously.

Plaintiffs submit with this motion declarations demonstrating their ability and interest in representing the Class and prosecuting this action, as they have done since the Complaint was filed nearly two years ago. *See* Anthony Sessa Decl., Mark Sessa Decl. With respect to proposed Class counsel, the law firms seeking to represent the Class include qualified lawyers experienced in the successful prosecution of consumer class actions. To support the determinations required under Rules 23(a)(4) and 23(g), the firms each submit with this motion declarations and/or firm resumes setting forth their relevant experience and expertise. *See* Clark Decl. and Ex. A; Osborn Decl., ¶¶18-25; Borrelli Decl. and Ex. A; Ram Decl. and Ex. A.[4] These firms stand ready, willing,

---

[4] The firms are Morgan & Morgan, LLP; Turke & Strauss, LLP; the Law Office of Benjamin R. Osborn; and Law Offices of Miles N. Clark, LLC.

and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution. Counsel have already devoted substantial resources to this matter, litigating substantial motion practice before this Court (*see, e.g.*, Dkt. Nos. 36, 50, and 82), briefing an interlocutory appeal to the Ninth Circuit, which Ancestry voluntarily dismissed (*see* Dkt. No. 52) and conducting discovery.

### B. The Predominance Requirement of Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) requires that common questions of law or fact predominate over individual ones. This inquiry focuses on whether the "common questions present a significant aspect of the case and [if] they can be resolved for all members of the class in a single adjudication." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. at 338 (internal quotations and citation omitted); *see also Tyson Foods*, 577 U.S. at 453. Each element of a claim need not be susceptible to class-wide proof, *see Amgen v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 469 (2013), and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 at 1134 (9th Cir. 2016). Rule 23(b)(3) permits certification when "one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, 577 U.S. at 453.

### a. Common issues predominate.

The elements of Plaintiffs' NRPA claim may be proved for the entire Class using the same evidence. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (the predominance inquiry "begins, of course, with the elements of the underlying cause of action.") (quotation omitted). Whether Ancestry's advertisements are a "commercial use . . . of the name . . . photograph or likeness of a person" can be determined by examining the advertisements

themselves, which Ancestry presents in substantially the same form for all members of the Class. *See* Nev. Rev. S. § 597.790(1); Compl., at ¶¶22-45 (showing advertisements as they appear for Plaintiffs); Part(a)(2) *above* (███████████████████████████████████████ ███████████████████████████████). As shown in Part(a)(2) above, damages under the NRPA as also subject to Class-wide proof. Whether a First Amendment defense or statutory exception applies may also be established by reference to the advertisements Ancestry displays in the same way for all Class members.

Likewise, that Ancestry did not obtain "written consent" can be established by showing that Ancestry has no policy for contacting and soliciting consent from the individuals whose decades-old photographs as children appear in its yearbook database. The sole methods by which Ancestry claims it obtains "consent" are by "users . . . donating a yearbook or agreeing to Ancestry's Terms and Conditions." Osborn Decl., Ex. 9 (Response to Interrogatory 3); Godfrey Tr., 138:7-16 ████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████████████; *id.* at 138:23-139:2 (██████████████ ████████████████████████████████████████████████████). This purported consent defense does not affect the certification analysis, because the proposed Class definition excludes both users who have agreed to the Ancestry terms of service and individuals who have donated yearbooks. *See Fischer*, 2022 WL 971479, at *8-9 (rejecting argument that individualized issues of consent would predominate when defendant admitted it did not receive consent apart from the terms of use). Even were it applicable to Class members, Ancestry's purported consent defense is contradicted by the facts. Neither the terms of service nor the yearbook donation form elicits consent for Ancestry's use of yearbook photographs to advertise subscriptions. *See* Osborn Decl., Ex. 10, 11, 12. Ancestry's 30(b)(6) witness was unable to identify any portion of the terms of service relating to such consent. Godfrey Tr., 139:19-143:9.

**b.  Ancestry's potential arguments do not defeat predominance.**

Ancestry may argue, as did the defendant in *Fischer*, that various individualized issues preclude a finding of predominance. *See generally Fischer*, 2022 WL 971479. None of its potential arguments hold water.

**Consent**: Ancestry may argue that determining whether Class members have consented to Ancestry's use of their names and likenesses requires individualized proof. However, as discussed above, the only methods by which Ancestry claims to receive consent are via a person's agreement to the terms of service, and via a person's completion of a yearbook donation form. *See* Osborn Decl., Ex. 9 (Response to Interrogatory 3). Because the Class excludes anyone who has agreed to the terms or donated a yearbook, by Ancestry's admission it has not obtained consent – written or otherwise – from any Class member.

Ancestry speculates that individuals "could consent by providing consent to a third party who, in turn, provided consent to Ancestry," *id.*, but failed to identify even a single instance of a Class member relaying consent to Ancestry via a third party. Godfrey Tr., 144:24-155:9 (admitting that "I [testifying on behalf of the company] don't have any knowledge" of "any records of explicit written consent . . . through a third party."). These speculations, even if true, are irrelevant to Plaintiffs' claims. The relevant question under the NRPA is whether Class members gave their "written consent" to Ancestry for use in advertising its website, not to some third party for some other use. *See Fischer*, 2022 WL 971479, at *9 ("[W]hatever consent a putative class member gave to a non-party to use or share her identity has no bearing on whether that putative class member consented to [the defendant]'s use of her identity.").

**Privacy:** Ancestry may argue that the degree to which individual Class members voluntarily share their own personal information and photographs with the public – for example by posting information on social networking sites – presents an individualized issue. Ancestry may argue that Class members who have voluntarily shared their own photographs have "less" of a claim than those who have not. This argument fails. Plaintiffs' and Class members' claims arise not from the disclosure of otherwise "private" information, but rather from Ancestry's

*commercial use* of their information to advertise subscriptions without consent. *See* 561 F.Supp.3d 1008, 1022 n.3 ("[R]ight of publicity claims do not depend on publication of private photos, but rather the use of one's likeness for commercial purposes"); *see also Martinez v. ZoomInfo*, No. 21-cv-5725, 2022 WL 1078630, at *5 (W.D. Wash. Apr. 11, 2022). That some Class members may voluntarily share some photographs and personal information with the public does not affect their right to prevent Ancestry from using their names and photographs to advertise its product. The NRPA makes no such distinction.

### C.  The Superiority Requirement of Rule 23(b)(3) is Satisfied.

Rule 23 provides a non-exhaustive list of factors for consideration when determining whether a class action is superior to other methods for adjudicating the controversy:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and]

(D) the difficulties likely to be encountered in the management of a class action.

*See Bateman v. American Multi-Cinema*, 623 F.3d 708, 713 (9th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)). These factors weigh in favor of class treatment here.

With respect to the first factor, the Class members' claims are so relatively small – $750 per photograph – that it would cost more to litigate an individual case than they could hope to recover. Class certification is "the only feasible means for them to adjudicate their claims." *See Levya v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013).

The second and third factors also weigh in favor of certification. This case has been pending for nearly two years. Plaintiffs' counsel are not aware of any other action asserting Nevada right of publicity claims against Ancestry. This Court has become familiar with the factual

and legal issues by handling the Defendant's motion to dismiss, anti-SLAPP motion to strike, motion to stay, and the Plaintiffs' motion to compel. *See Hernandez v. Wells Fargo Bank, N.A.*, No. 18-cv-07354 (N.D. Cal. Jan. 29, 2020) (third factor weighed in favor of certification because "this Court has overseen this case for well over a year and is familiar with the underlying issues"). Holding separate trials for claims that could be tried together would be costly, inefficient, and a burden on the court system.

The fourth "management" factor focuses on the "practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle Jacquelin*, 417 U.S. 156, 163 (1974). Here, Plaintiff does not foresee any serious manageability problems, and certainly none that would render millions of individual actions a better alternative.

Although manageability does not require "demonstrating an administratively feasible way to identify class members," *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1133 (9th Cir. 2017), Plaintiff submits with this motion the Declaration of Brandon Schwartz, an experienced claims administrator, attesting to the feasibility of Class member identification and Class notice. *See* Schwarz Decl. The proposed Class is defined by "objective and definite" criteria, all of which would be easily verified as part of a claims process. *See Briseno*, 844 F.3d at 1126 n. 6. First, Class members are current and former Nevada residents, which may be established by the claimant providing their Nevada address and averring their state of residence during the relevant period. Second, Class members are not registered users of www.ancestry.com, which may be established by averment and by Ancestry checking the claimant's email address against their database of registered users. Ancestry collects emails as part of the registration process. Godfrey Tr., 133:2-9. Third, Class members must be the subject of one or more yearbook photographs searchable on Ancestry.com. This can be established by the claimant searching for their own name and yearbook photograph on the site. That Class members may self-identify subject to verification by Ancestry's own records is sufficient. *See Kristensen v. Credit Payment Servs*., 12 F. Supp. 3d 1292, 1303 (D. Nev. 2014) ("Prospective plaintiffs can readily identify themselves as class

members" based on "[d]ata from T-Mobile calling lists."). Ancestry may "challenge the claims of absent Class members if and when they file claims." *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 306 (N.D. Cal. 2017).

Class notice is also feasible. "[T]he Due Process Clause does not require actual, individual notice in all cases." *Briseno*, 844 F.3d at 1129. Here, individual notice is not practicable because the Class is limited to people who have not registered for an account on www.ancestry.com, and for whom Ancestry therefore does not possess contact information. In his Declaration, Mr. Schwartz describes a notice plan that he estimates would reach 95% of Nevada Class members. Schwartz Decl. The plan would also provide notice to individuals who migrated out of Nevada during the relevant period. The plan incorporates digital banners, print media, press releases, a toll-free hotline, and an informational website. *See id*. "Court have routinely held that notice" by similar methods such as "publication in a periodical, on a website, or even at an appropriate physical location is sufficient." *Briseno*, 844 F.3d at 1129 (quoting *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994)).

For these reasons, the superiority requirement is satisfied.

**D.  The Proposed Class Also Satisfies the Requirements of Rule 23(b)(2).**

The requirements of Rule 23(b)(2) "are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole." *Parsons v. Ryan*, 754 F.3d 657, 688 (9th Cir. 2014). Here, Plaintiffs seek an injunction prohibiting Ancestry from using names and yearbook photographs to advertise subscriptions without written consent, a practice that Ancestry engages in with respect to every member of the Class. Because Plaintiffs seek uniform injunctive relief from practices generally applicable to the class, the Class should be certified under Rule 23(b)(2).

<u>**CONCLUSION**</u>

For the reasons above, Plaintiffs respectfully request the Court GRANT their motion to certify the Class pursuant to Rules 23(b)(3) and 23(b)(2).

1

2   Dated: December 6, 2022          By:  */s/ Miles N. Clark*
                                          Miles N. Clark, Esq.
3                                         Nevada Bar No. 13848
                                          Law Offices of Miles N. Clark, LLC
4                                         5510 S. Fort Apache Rd., Suite 30
                                          Las Vegas, NV 89148-7700
5                                         Phone: (702) 856-7430
                                          Fax: (702) 552-2370
6

7                                         Benjamin R. Osborn (*Pro Hac Vice*)
                                          ben@benosbornlaw.com
8                                         LAW OFFICE OF BENJAMIN R. OSBORN
                                          102 Bergen Street
9                                         Brooklyn, NY 11201
                                          Telephone: (347) 645-0464
10

11                                        Michael F. Ram (*Pro Hac Vice*)
                                          mram@forthepeople.com
12                                        Marie N. Appel (*Pro Hac Vice*)
                                          mappel@forthepeople.com
13                                        MORGAN & MORGAN
                                          COMPLEX LITIGATION GROUP
14                                        711 Van Ness Avenue, Suite 500
                                          San Francisco, CA 94102
15                                        Telephone: (415) 358-6913
                                          Facsimile: (415) 358-6923
16

17                                        Raina C. Borrelli (*Pro Hac Vice*)
                                          raina@turkestrauss.com
18                                        Samuel J. Strauss (*Pro Hac Vice*)
                                          sam@turkestrauss.com
19                                        TURKE & STRAUSS LLP
                                          613 Williamson St., Suite 201
20                                        Madison, Wisconsin 53703-3515
                                          Telephone: (608) 237-1775
21                                        Facsimile: (608) 509-4423
22

23                                        *Attorneys for Plaintiffs and the Proposed Class*

24

25

26

27

## CERTIFICATE OF SERVICE

I, Lucille Chiusano, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 6th day of December, 2022.

By:  */s/ Lucille Chiusano*
An employee of LAW OFFICES OF MILES
N. CLARK, LLC