# EXHIBIT F

# Declaration of Brandon Schwartz in Support of Plaintiffs' Motion for Class Certification

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY SESSA and MARK SESSA, *on behalf of themselves and all others similarly situated*, | |
| Plaintiffs, | Case No.: 2:20-cv-02292 |
| v. | |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM INC., a Delaware Corporation; and ANCESTRY.COM LLC, a Delaware Limited Liability Company | Judge Gloria M. Navarro |
| Defendants. | |

**DECLARATION OF BRANDON SCHWARTZ IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Brandon Schwartz, declare as follows:

1. I am the Director of Notice for Postlethwaite & Netterville, APAC ("P&N"), a full-service administration firm providing legal administration services, including the design, development, and implementation of unbiased complex legal notification programs. The following statements are based on my personal knowledge as well as information provided by other experienced P&N employees working under my supervision, and my review of information and documents provided by counsel.

2. P&N routinely develops and executes notice plans and administers a wide variety of class action and mass action settlements, with subject matters including, but not limited to, privacy, products liability, consumer, mass tort, antitrust, insurance, and healthcare. P&N team members have extensive experience designing and implementing notice, class certification, and settlement programs. Additional information about P&N can be found on our website at www.pnclassandmass.com.

**EXPERIENCE**

3. With more than 15 years of class action, legal notice, advertising, media and marketing experience, I have developed noticing solutions for all aspects of class action certification and settlement and have an in-depth knowledge conducting demographic research, designing media plans, developing and buying media, managing postal and email distribution, creating commercial/video productions, and utilizing best practices for social media outreach through platforms such as Instagram and Facebook.

4. I have designed and implemented notice campaigns for more than 100 high-profile cases in addition to the hundreds of cases I have managed. Some of my notice plans include: *McMorrow v. Mondelez International, Inc.,* No. 3:17-cv-02327 (S.D. Cal.); *Hadley v. Kellogg Sales Co.,* No. 5:16-cv-04955 (N.D. Cal.)*; Winters v. Two Towns Ciderhouse Inc.*, No. 3:20-cv-00468 (S.D. Cal.); *Rivera, et al. v. Google LLC*, No. 2019-CH-00990 (Cir. Ct. Cook Cnty.); *Jones v. Monsanto,* No. 4:19-cv-00102 (W.D. Mo.); *In re: Interior Molded Doors Indirect Purchaser Antitrust Litigation,* No. 3:18-cv-00850 (E.D. Va.); and *Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico,* No. 2:10-md-02179 (E.D. La.). A description of my experience is attached as **Exhibit A**.

5. As detailed below, courts have repeatedly recognized P&N (curriculum vitae attached hereto as **Exhibit B**) and the efficacy of my class action notice plans. Sample court opinions on the adequacy of our notice efforts include:

a. On April 8, 2022, in the Order: 1) Granting Motion for Final Approval of Class Settlement; 2) Granting Motion for Attorney's Fees, Costs, and Service Awards; and 3) Overruling Objection to Motion for Attorneys' Fees, Costs, and Service Awards in *McMorrow, et al. v. Mondelez International, Inc.*, No. 17-cv-02327 (S.D. Cal.), Judge Cynthia Bashant ruled:

> Notice was administered nationwide and achieved an overwhelmingly positive outcome, surpassing estimates from the Claims Administrator both in the predicted reach of the notice (72.94% as compared to 70%) as well as in participation from the class (80% more claims submitted than expected). (Schwartz Decl. ¶ 14, ECF No. 206-1; Final App. Mot. 3.) Only 46 potential Class Members submitted exclusions (Schwartz Decl. ¶ 21), and only one submitted an objection—however the objection opposes the distribution of fees and costs rather than the settlement itself. (Obj. 3.) The Court agrees with Plaintiffs that the strong claims rate, single fee-related objection, and low opt-out rate weigh in favor of final approval.

b. In the matter *Hadley, et al. v. Kellogg Sales Co.*, No. 16-cv-04955 (N.D. Cal.), Judge Lucy H. Koh ruled on November 23, 2021:

> The Class Notice and claims submission procedures set forth in Sections 4 and 6 of the Settlement Agreement, and the Notice Plan filed on March 10, 2021, fully satisfy Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process, were the best notice practicable under the circumstances, provided individual notice to all Settlement Class Members who could be identified through reasonable effort, and support the Court's exercise of jurisdiction over the Settlement Classes as contemplated in the Settlement Agreement and this Order. See Fed. R. Civ. P. 23(e)(2)(C)(ii).

c. In the matter *Miracle-Pond, et al. v. Shutterfly, Inc.*, No. 2019-CH-07050 (Cir. Ct. Cook Cnty.), Judge Raymond W. Mitchell ruled on September 9, 2021:

> This Court finds that the Settlement Administrator performed all duties thus far required as set forth in the Settlement Agreement. The Court finds that the Settlement Administrator has complied with the approved notice process as confirmed by its Declaration filed with the Court. The Court further finds that the Notice plan set forth in the Settlement as executed by the Settlement Administrator satisfied the requirements of Due Process and 735 ILCS 5/2-803. The Notice plan was reasonably calculated and constituted the best notice practicable to apprise Settlement Class Members of the nature of this litigation, the scope of the Settlement Class, the terms of the Settlement, the right of Settlement Class Members to object to the Settlement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. Accordingly, the Court finds and concludes that the Settlement Class Members have been

provided the best notice practicable under the circumstances, and that the Notice plan was clearly designed to advise the Settlement Class Members of their rights.

## OVERVIEW

6. Plaintiffs' counsel have asked that I provide expert analysis regarding the development and implementation of a class notice plan and administration ("Notice Plan") in the above-referenced matter (the "Action"). In forming my analysis and opinion, I have relied upon my class action experience, and the experience of my team, to curate a Notice Plan that satisfies due process standards, provides the best notice practicable under the circumstances, adheres to Fed. R. Civ. P. 23, and comports with the guidance set forth in the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010)[1].

7. After review of the Class Action Complaint and discussions with Plaintiffs' Counsel, I understand the class definition to be:

> All persons: (1) who are Nevada residents or were Nevada residents at any time between December 17, 2017, and the present; (2) who are not paying subscribers, free trial users, or registered users of Ancestry.com and have never donated a yearbook to Ancestry; and (3) for whom one or more of their yearbook photographs were searchable on Ancestry.com at any time between December 17, 2017, and the present.

## DETAILS OF THE NOTICE PLAN

8. The Notice Plan has been designed in a reasonable and practicable manner to reach an overwhelming majority of Class Members through a multifaceted approach, engineered through a combination of (1) digital notice, (2) print media, (3) press release, (4) toll-free hotline, and an (5) informational website. The Notice Plan has been crafted to ensure Class Members would be exposed to, see, review, and understand the notice, their rights and options.

9. The recommended Notice Plan as outlined is estimated to have a measurable reach of a minimum of 95% of the Target Audience with an average frequency of 3.0. Reach and frequency[2]

---

[1] https://www.fjc.gov/content/301350/illustrative-forms-class-action-notices-notice-checklist-and-plain-language-guide

[2] Reach refers to the estimated percentage of the unduplicated audience exposed to the notice. Frequency refers to how many times, on average, the target audience had the opportunity to view the notice.

1 calculations are used by advertising and communications firms worldwide and are a critical element to help provide the basis for determining adequacy of notice in class actions. The total reach is calculated utilizing a formula that accounts for potential duplication across media titles and vehicles rather than by adding the individual reach figures together.

10. The recommended Notice Plan has been designed using methods accepted within the advertising industry and the courts to understand the Target Audience (inclusive of Class Members) by examining their demography and media consumption habits. P&N utilized the nationally syndicated research bureau MRI-Simmons (formerly GfK Mediamark Research, Inc.) ("MRI")[3], comScore[4], and Basis Audience Measurement Tools[5], among others.

11. Utilizing the media research data, P&N has designed the Notice Plan to give notice to the Class in the most practicable manner possible and determined that the best qualitative target is "Adults 18 years old and older in Nevada" (the "Target Audience"). This Target Audience is intentionally over-inclusive and encompasses an overwhelming majority of the Class, but as described more fully below, additional notice would be segmented and served to a national audience to account for the small population that may have migrated out of state during the Class Period.

12. Based on the Target Audience definition, the size of the audience is approximately 2,490,000 individuals. An excerpt of the Target Audience demographics include:

- 52% male / 48% female
- 55% are between 18-54 years old
- The average individual income is $57,700 and the average household income is $94,200
- 39% work full time / 46% are not working

---

[3] MRI-Simmons is a nationally-syndicated research tool. It is the leading supplier of multi-media audience research, and provides comprehensive reports on demographic, lifestyle, product usage and media exposure. MRI-Simmons conducts more than 30,000 personal interviews annually to gather their information and is used by more than 450 advertising agencies as the basis for the majority of media and marketing campaigns.

[4] comScore is a global internet information provider on which leading companies and advertising agencies rely for consumer behavior insight and internet usage data. comScore maintains a proprietary database of more than 2 million consumers who have given comScore permission to monitor their browsing and transaction behavior, including online and offline purchasing. comScore panelists also participate in survey research that captures and integrates their attitudes.

[5] Basis provides a digital advertising solution that includes advanced planning and audience measurement tools. Basis has access to more than 30 exchanges, 20 third-party data providers, six billion users and two trillion impressions per month. Basis audience measurement tools allow you to accurately forecast the audience and impression availability for the specific targets of your plan.

- 65% own their own home

13. Additionally, demographic data compiled by the Legislative Counsel Bureu regarding the racial origin of Nevada residents include:[6]

- 29% are Hispanic or Latino[7]
- 12% are Black or African American
- 11% are Asian
- 3% are American Indian and Alaska Native

14. Notice experts use socioeconomic data, audience characteristics and media consumption habits to design impartial notice plans. Objective data points such as these helps guide the delivery of messaging to the Target Audience and shape the media vehicles used to place a notice before a class member.

**Digital Banner Notice**

15. The internet is an efficient, cost-effective and accepted method to target and provide measurable reach to Class Members. According to MRI research, 97% of the Target Audience has used the internet in the last 30 days and 62% are medium-to-heavy users of the internet.[8] Accordingly, P&N would run banner notices on select websites where Class Members may visit regularly and utilize networks based on cost efficiency, timing, and their contribution to the overall reach of the Target Audience as well as social media advertising on Facebook and Instagram.

16. Additionally, MRI reveals that 25% of the Target Audience speak Spanish most often at home. Thus, digital notices would appear in Spanish and English, where appropriate.

17. P&N follows advertising industry best practices when designing and implementing digital notice programs. We incorporate a programmatic approach to developing and implementing notice programs. Working in a programmatic environment brings multiple consumer data points into a single platform which allows us to monitor the placement of notices on websites that Class Members may be

---

[6] The population database is derived from the 2020 Census Public Law 94-171 Redistricting Data as provided by the U.S. Census Bureau and validated by the Legislative Counsel Bureau, August, 2021.

[7] Id. Hispanic or Latino is reported by the Census Bureau as a language group.

[8] 2022 GfK MRI-Simmons Spring Doublebase USA

5

DECLARATION OF BRANDON SCHWARTZ

visiting and take active, real-time, measures to improve efficiencies. Furthermore, we develop a unique mix of segment targeting that are based on the metrics of a target audience.

18. Here, P&N would propose including a mix of segments that will target Class Members based on metrics such as:

- *Demographic* – individuals that fall within our key demographic traits such as age (18+) and income earned, etc.;
- *Language* – individuals who utilize English and Hispanic websites;
- *Cultural Affinity* – targeting individuals that identify as Black/African American, Native American, Asian, or Hispanic/Latino;
- *Device* – individuals on both desktop and mobile devices; and
- *Select Placement* – high traffic premier websites in the shopping, sports, weather, entertainment, and local sites.

19. In addition to targeting Nevada residents, we would implement a geo-targeting component to account for Class Members that may have moved out of state during the Class Period. Past Census data on migration flows from state-to-state, for example, would act as a guide on the placement of notice.

20. The banner notices would have the opportunity to run on thousands of websites through Basis (formerly known as Centro) programmatic demand-side platform (DSP) allowing the notices to appear on websites that are relevant to the user. These sites would provide an opportunity for a Class Member to see the banner notice while they are reading content relevant to them.

21. In addition to the banner notices described above, P&N would run banner notifications on the top-visited social media sites, Facebook and Instagram. Facebook and Instagram represent the leading group of social network sites with over 250 million users in the United States.[9] Additionally, 62% and 35% of our Target Audience use Facebook and Instagram, respectively.[10] Social media encourages users to share information, which can organically raise the reach of a notice plan by users sharing the notices with their friends, family, and followers.

---

[9] "Number of Facebook users in United States from 2018 to 2027" (Statista; June 2022), and "Number of Instagram users in the United States from 2020 to 2023" (Statista; May 2021).

[10] 2022 GfK MRI-Simmons Spring Doublebase USA

22. To reduce the possibility of bot viewership of the digital banner ads, P&N employs DoubleVerify[11], an independent platform that authenticates the quality and effectiveness of banner placement.

23. The banner notices would utilize standard Interactive Advertising Bureau ("IAB") ad sizes (350x250, 728x90, 370x250, 300x600) and custom ads sizes according to Facebook and Instagram advertising guidelines. P&N estimates 45.2 million impressions would be served over four weeks.

**Print Media**

24. The recommended Notice Plan includes an approximate one-eighth page version of the short form notice in Nevada's most circulated newspapers the *Las Vegas Review-Journal* (English and Spanish editions) and the *Reno Gazette-Journal*. These newspapers have a combined average circulation of 137,315.

**Press Release**

25. A press release would be distributed over PRNewswire's Nevada Newsline in substantially the same form as the short form notice. The press release would be issued broadly to media outlets, including newspapers, magazines, wire services, television, radio, and online media outlets. Combined, the Newsline distributes to more than 50 media outlets and contacts in Nevada.

**Informational Website**

26. P&N would create and maintain a website dedicated to this Action. The website address would be included in the short form notice and all digital banners will link directly to the informational website. The notices, along with other relevant documents, would be posted on the informational website for Class Members to review and download. The informational website would also include relevant dates, other case-related information, instructions for how to be excluded from the Class, and contact information for the Administrator.

**Dedicated Toll-Free Hotline**

27. A dedicated toll-free informational hotline would be available 24 hours per day, seven days per week. The hotline would utilize an interactive voice response ("IVR") system where Class Members could obtain essential information regarding the Action and be provided responses to frequently asked

---

[11] https://doubleverify.com

questions. Class members would also have the option to leave a voicemail and receive a call back from the Administrator.

**REQUESTS FOR EXCLUSION**

28. Class Members who would like to exclude themselves may submit their request for exclusion by mail to a Post Office Box that P&N would maintain. P&N would monitor all mail delivered to that Post Office Box and would track all exclusion requests received, which would be provided to Plaintiffs' counsel.

**CONCLUSION**

29. In 2010, the Federal Judicial Center issued the *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide.* The guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." This recommended Notice Plan is designed to deliver an estimated 95% reach with an average frequency of 3.0. The measurable reach of the Notice Plan does not include the local newspapers, press release, dedicated website, and toll-free hotline, as these media vehicles are not calculable. They, however, will meaningfully strengthen the reach and frequency of the Notice Plan.

30. It is my opinion that the Notice Plan described here would provide a method of focused notice dissemination, is a measured and targeted approach to provide effective notice in this case, would provide the best notice that is practicable, and exceeds the requirements of due process, including its "desire to actually inform" requirement.[12]

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 6th day of December, 2022 in Portland, Oregon.

_____
Brandon Schwartz

---

[12] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 US 306, 315, 70 S Ct 653, 94 L Ed 865 (1950)