Miles N. Clark, Esq.
Nevada Bar No. 13848
Law Offices of Miles N. Clark, LLC
5510 S. Fort Apache Rd., Suite 30
Las Vegas, NV 89148-7700
Phone: (702) 856-7430
Fax: (702) 552-2370

*Attorneys for Plaintiffs and the Proposed Class*
*Additional Counsel Listed in Signature*

# THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY SESSA AND MARK SESSA, individually and on behalf of all others similarly situated, | Case No.: 2:20-cv-02292-GMN-BNW |
| Plaintiffs, | **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| v. | |
| ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company, | Assigned to Hon. Gloria M. Navarro |
| Defendants. | |

# TABLE OF CONTENTS

**Page No.**

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ............................................................................................ii

I. INTRODUCTION ................................................................................................1

II. ARGUMENT .......................................................................................................1

  A. Ancestry's Arguments Fail to Undermine Plaintiffs' Showing of Commonality, Typicality, and Predominance With Respect to Liability Issues. ...........................1

    1. Ancestry Uses Each Class Members' Persona in the Same Way. ...............1

    2. Recognizability is Provable on a Classwide Basis. ...................................6

    3. Commercial Use Within Nevada can be Shown on a Class Wide Basis.....8

    4. Whether the Exception for Use Not Directly Connected with Commercial Sponsorship Applies Can be Addressed on a Classwide Basis. ...............10

    5. That Some Class Members are Public Figures Does Not Make Their Yearbook Photographs as Children Matters of Public Interest. ...............11

  B. Ancestry's Arguments Fail to Undermine Plaintiffs' Showing of Commonality, Typicality, and Predominance With Respect to Damages Issues.........................12

    1. Entitlement to Statutory Damages is Provable on a Class Wide Basis. ....12

    2. Plaintiffs' Damages Model Flows Directly From their Liability Theory..14

    3. Damages may be Calculated on a Class Wide Basis................................14

  C. Ancestry Fails to Undermine Plaintiffs' Showing of Superiority. ........................16

  D. Ancestry's Arguments Against Rule 23(b)(2) Certification Are Unavailing........16

III. CONCLUSION ................................................................................................17

1

## <u>TABLE OF AUTHORITIES</u>

2
<u>Page No.</u>

3
**Cases**

4

*Boshears v. PeopleConnect, Inc.*,

5
2022 WL 888300 (W.D. Wash. Mar. 25, 2022) ........................................................9, 10

6
*Callahan v. PeopleConnect*,
20-cv-09203-EMC, 2021 WL 5050079 (N.D. Cal. Nov. 1, 2021)...................................13

7
*Dancel v. Groupon, Inc.*,

8
949 F.3d 999 (7th Cir. 2019) ...........................................................................................7

9
*Dobrowolski v. Intelius*,

10
No. 17-CV-1406, 2018 WL 11185289 (N.D. Ill. May 21, 2018)......................................3

11
*Eisen v. Carlisle Jacquelin*,
417 U.S. 156 (1974) .......................................................................................................15

12

13
*Eisen v. Carlisle Jacquelin*,
479 F.2d 1005 (2d Cir. 1973) ........................................................................................15

14
*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*,

15
688 F. Supp. 2d 1148 (D. Nev. 2010)...............................................................................9

16
*Fischer v. InstantCheckmate LLC*,
No. 19-cv-4892, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022) ...............................2, 4, 5, 7

17

18
*Fowler v. Guerin*,
899 F.3d 1112 (9th Cir. 2018) .......................................................................................16

19
*Hetter v. Eighth Jud. Dist. Ct. of State In & For Cnty. of Clark*,

20
110 Nev. 513 (1994) ......................................................................................................12

21
*Hilton v. Hallmark Cards*,
599 F.3d 894 (9th Cir. 2009) ....................................................................................11, 12

22

23
*Huston v. Hearst Communications, Inc.*,
53 F.4th 1097 (7th Cir. 2022) .......................................................................................2, 3

24
*Jimenez v. Allstate Ins. Co.*,

25
765 F.3d 1161 (9th Cir. 2014) .......................................................................................14

26
*Knapke v. PeopleConnect*,
553 F. Supp. 3d 865 (W.D. Wash. 2021) ......................................................................2, 4

27

*Kristensen v. Credit Payment Servs.*,
    12 F. Supp. 3d 1292 (D. Nev. 2014)..........................................................................16

*Lukis v. Whitepages*,
    542 F. Supp. 3d 831 (N.D. Ill. 2020) ..........................................................................3

*Motschenbacher v. R. J. Reynolds Tobacco Co.*,
    498 F.2d 821 (9th Cir. 1974) (*overruled in part on other grounds*)..................................13

*Resnick v. Frank*,
    779 F.3d 934 (9th Cir. 2015) .....................................................................................15

*Sessa v. Ancestry.com*,
    561 F. Supp. 3d 1008 (D. Nev. 2021)...................................................................8, 13

*Siegel v. ZoomInfo Techs*,
    No. 21-cv-2032, 2021 WL 4306148 (N.D. Ill. Sep. 22, 2021)..........................................2

*Weinberg v. Feisel*,
    110 Cal.App.4th 1122 (Cal. Ct. App. 2003)...............................................................11

*West v. Cal. Servs. Bureau, Inc.*,
    323 F.R.D. 295 (N.D. Cal. 2017) ...............................................................................17

**Statutes**

765 ILCS 1075/5 ....................................................................................................4

Cal. Civ. Code § 3344 ..........................................................................................12

Ind. Code §§ 32-36-1-1 ...........................................................................................9

Ind. Code §§ 32-36-1-8 ...........................................................................................9

Nev. Rev. Stat. § 597.770(1)................................................................................4, 5

Nev. Rev. Stat. § 597.780..........................................................................................8

Nev. Rev. Stat. § 597.810..........................................................................................2

Nev. Rev. Stat. § 597.810(b)....................................................................................14

Nev. Rev. Stat. §§ 597.770 *et seq.*..........................................................................1

Nev. Rev. Stat. §§ 597.810(1)(b)..............................................................................13

Ohio Rev. Code § 2741.02........................................................................................4

## I.    INTRODUCTION

As shown in Plaintiffs' Motion for Class Certification ("Motion"), this matter presents a prototypical case for class treatment. Ancestry's standardized webpages present advertisements that incorporate each Class member's name and yearbook photograph in exactly the same way. The damages provision in Nevada's right of publicity statute provides a standardized measure of damages across all Class members. And because none of the Class members are Ancestry subscribers, there are no individualized issues surrounding written consent.

As shown below, none of Ancestry's asserted reasons for denying class certification hold muster. Plaintiffs' motion for certification should be granted.

## II.    ARGUMENT

**A.    Ancestry's Arguments Fail to Undermine Plaintiffs' Showing of Commonality, Typicality, and Predominance With Respect to Liability Issues.**

**1.    Ancestry Uses Each Class Members' Persona in the Same Way.**

Ancestry makes the same "commercial use" of every yearbook photograph in its database. *See* Dkt. No. 103, at *8. Ancestry advertises by making a "limited access" version of its database searchable for free, by making the full version of its database searchable for a limited time as part of a "free trial," and by sending "hint" emails to prospective subscribers that incorporate names and photographs from the yearbook database. *See id.* Limited access and free trial users who perform database searches are shown (a) a list of search results comprising names, biographical information, and yearbook photographs; and (b) messages and pop-ups prompting the user to "Sign Up Now" for a paid subscription to learn more about the individuals represented in Ancestry's database. *Id.* As Ancestry's Rule 30(b)(6) witness confirmed, any yearbook photograph in Ancestry's database can appear in a search result on either the limited access or free trial version of the site. *Id.* And as shown below, every yearbook photograph in Ancestry's database—including every Class member's yearbook photograph—has appeared in such a search result.

Ancestry argues that some Class members do not have claims under Nevada's right of publicity statute, Nev. Rev. Stat. §§ 597.770 *et seq.* ("NRPA"), because no free trial or limited

1   access user has "access[ed]" their records. *See* Dkt. No. 122 ("Opp."), at *15. In Ancestry's view,

2   no "commercial use" of a Class member's persona has occurred unless and until a free trial or

3   limited access user has actually viewed a page of search results containing that Class member's

4   yearbook record. *See id.* Indeed, Ancestry makes the existential claim that its advertisements

5   literally "do not exist" until a user views the webpage on which Ancestry displays them. *See id.*

6       This argument fails both on the law and the facts. ***First***, with respect to the law, and as

7   Plaintiffs showed in their Motion, courts have unanimously rejected the argument that an

8   advertisement must have been viewed by a member of the public to constitute a "commercial use"

9   under the right of publicity. *See* Mot., at *17; *Fischer v. InstantCheckmate LLC*, No. 19-cv-4892,

10  2022 WL 971479, at *11 (N.D. Ill. Mar. 31, 2022); *Siegel v. ZoomInfo Techs*, No. 21-cv-2032,

11  2021 WL 4306148, at *3 (N.D. Ill. Sep. 22, 2021); *Knapke v. PeopleConnect*, 553 F. Supp. 3d 865,

12  876 (W.D. Wash. 2021). A right of publicity claim turns on the defendant's "commercial use," *see*

13  Nev. Rev. Stat. § 597.810, not on whether a third party witnessed that use. Here, Ancestry does

14  not dispute that every Class member's name and yearbook photograph is stored in its database,

15  and that every name and photograph in its database can be pulled into a search result requested by

16  a limited access or free trial user. Accordingly, Ancestry uses every Class member's persona to

17  advertise. This is so regardless of whether any member of the public has viewed a search result

18  that included a specific Class member's name and photograph. *See Fischer*, 2022 WL 971479,

19  at *10 ("how many (if any) InstantCheckmate users saw a putative class member's search result . . .

20  is immaterial to whether InstantCheckmate violated the IRPA").

21      Ancestry claims the Seventh Circuit's decision in *Huston* v. *Hearst Communications, Inc.*,

22  53 F.4th 1097 (7th Cir. 2022), "cast[s] into doubt" the district court decisions in *Fischer* and *Siegel*.

23  *See* Opp., at *19 n.7. On the contrary, *Huston* supports the reasoning in *Fischer* and *Siegel*. The

24  Seventh Circuit confirmed that a plaintiff states a right of publicity claim when she alleges that

25  "prospective . . . purchasers were able to see her . . . information . . . prior to their purchase."

26  *Huston*, 53 F.4th at 1100. The Seventh Circuit observed that in both *Lukis v. Whitepages*, 542 F.

27

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(No. 2:20-cv-02292-GMN-BNW) - 2

Supp. 3d 831, 837-38 (N.D. Ill. 2020), and in *Dobrowolski v. Intelius*, No. 17-CV-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), the defendant websites engaged in commercial use when they "held out limited information about the plaintiff to entice a commercial transaction" by distributing a searchable "free preview" of information about the plaintiff, which anyone could access by entering the plaintiff's name in a search bar on the defendants' websites. *Id*., at *5; *see Lukis*, 542 F. Supp. 3d at 835 ("Anyone can search the Whitepages website for a person's name and gain access to free information connected with that name"); *Dobrowolski*, 2018 WL 11185289, at *3 ("When a consumer searches for a person's first and last name . . . an advertisement is automatically generated"). That is precisely what Plaintiffs allege here. Contrary to Ancestry's argument, nothing in *Huston* suggests a plaintiff must allege that a member of the public searched for his name and viewed the specific advertisement incorporating his name and photograph. In fact, the Seventh Circuit affirmed the lower court's dismissal because the plaintiff in that case "did not allege that Hearst solicited . . . purchasers by publicizing her information" and "did not allege prospective . . . purchasers were **able to see** her or any other subscribers' information, in whole or in part, prior to their purchase." *Huston*, 53 F.4th at 1100 (emphasis added). Thus, the Seventh Circuit confirmed that a plaintiff alleges "commercial use" so long as the defendant "publiciz[ed] her information" such that prospective purchasers "were **able to see** her . . . information." *Id.* (emphasis added). Here, Plaintiffs allege that Ancestry "publiciz[ed]" the advertisements incorporating Class members' photographs as children by making them publicly accessible on the Internet. Plaintiffs further allege that prospective purchasers were "able to see" Class members' names and likenesses because they could freely search for Class members on the free trial and limited access versions of Ancestry's site. As *Huston* confirms, this establishes "commercial use" under Illinois' right of publicity statute. As the Seventh Circuit wrote, "able to see" – not actually saw – is all that is required.

Ancestry argues this Court should reach a different conclusion than the courts in *Fischer*, *Siegel*, and *Huston*, because those courts "addressed claims under Illinois' right-of-publicity

1   statute," and the language of Nevada's statute is different. Opp., at *19 n.7. But Ancestry's own

2   analysis of the statutory text illustrates why the argument for importing a "viewership" or "actual

3   display" requirement is even weaker for the NRPA. The IRPA requires allegations of either "public

4   use" or "holding out." 765 ILCS 1075/5. The NRPA, by contrast, requires only allegations of "use."

5   Nev. Rev. Stat. § 597.770(1). Given that making an individual's persona searchable as part of a

6   limited access trial establishes both "public use" and "holding out," surely those same actions also

7   establish "use." Ancestry's analysis also ignores *Knapke*, which held that there is no viewership

8   requirement for claims under Ohio's right of publicity statute. 553 F. Supp. 2d at 876. The language

9   of Ohio's statute is nearly identical to the NRPA, requiring "use . . . for a commercial purpose,"

10  with no mention of "public use" or "holding out." Ohio Rev. Code § 2741.02.

11         The Class Plaintiffs seek to certify here is nearly identical to the "SEO Directory Class"

12  the court certified in *Fischer*. *See* 2022 WL 971479, at *3. That class is defined to include "[a]ll

13  Illinois residents who were listed in the SEO Directory . . . where such listing included that person's

14  name, age, location(s), and relative(s)." *Id.* There, as here, class membership turned on whether an

15  individual's information appeared in the defendant's searchable directory, <u>not</u> on whether any third

16  party had searched for and viewed that individual's information. *See id.*, at *5 ("the SEO Directory

17  Class definition, by its terms, does not require that a class member's profile have been displayed

18  to any third-party user."). So too here: all Nevada residents whose names and yearbook

19  photographs are searchable in Ancestry's database are members of the proposed Class.

20         ***Second***, with respect to the facts, Ancestry's argument fails because even were Ancestry

21  correct that there is no "commercial use" unless and until Ancestry delivers a given Class members'

22  name and record as part of a search result, Ancestry <u>has</u> delivered search results containing every

23  Class member's name and record, and has likely done so many times both inside and outside

24  Nevada. Plaintiffs attach herewith a screenshot showing the results of a search performed in

25  Nevada on March 1, 2023, on the free limited access version of Ancestry's website. Chiusano

26  Decl., ¶ 2 & Ex. 1. The search requested all yearbook records from schools in Nevada on

27

1    Ancestry.com. *Id.* The search was easily performed: the user needed only to select "Nevada, USA"

2    and click "Search." *Id.* In response, Ancestry delivered search results containing 2,687,194 records

3    *Id.*, ¶ 4 & Ex. 1. The same user performed a similar search and received a similar search results

4    page for each of the other forty-nine states. *Id.*, ¶ 5. These searches encompass every individual

5    with a yearbook photograph that is searchable on Ancestry.com.[1] The Class is defined to include

6    people "for whom one or more of their yearbook photographs were searchable on Ancestry.com

7    at any time between December 17, 2017, and the present." Mot., at *11. Because Ancestry has

8    delivered every yearbook record in its database as part of a search result to a user in Nevada,

9    Ancestry has by definition delivered every Class member's name and persona as part of a search

10   result.[2] Given that the search interface encourages searching for yearbook records by state of origin,

11   Plaintiffs expect discovery would reveal that Ancestry has delivered similar search results many

12   times, both within and outside Nevada. Therefore, even on Ancestry's flawed definition of

13   "commercial use," it has made commercial use of every Class member's persona in Nevada.[3]

14

15

16   _____

17   [1]    Ancestry's yearbook database is limited to the United States. *See* Chiusano Decl., Ex. 1
     (showing the relevant database is "All U.S. School yearbooks, 1900-2016."). Accordingly, that
18   Ancestry has delivered searches containing every record in each of the fifty states means it has
     included every record in its yearbook database in a search result.
19   [2]    Defendant cannot reasonably claim it did not know Ancestry had delivered every Nevada
     yearbook record as part of a search result. In his declaration estimating the size of the class,
20   Plaintiffs' expert, Clifford Kupperberg, relied on the results of a similar search he performed. *See*
     Kupperberg Decl., ¶ 11 ("The latter figure is roughly confirmed by a search I performed on
21   Ancestry's website, which yielded 2,687,197 records from Nevada yearbooks.").
     [3]    Ancestry argues that any use it makes of Class member's personas – including, presumably,
22   its incorporation of Class members' name and yearbook record in the search result shown in
     Exhibit 1 to the Chiusano Declaration – does not count as a "commercial use" under the NRPA if
23   the person viewing the search result is Plaintiff or one of Plaintiff's agents. *See* Opp., at *11-12.
     This argument finds no support in the statute or caselaw. The NRPA applies to "the use of the
24   name, voice, signature, photograph or likeness. . . on or in any product . . . or for the purposes of
     advertising . . . any product." Nev. Rev. Stat. § 597.770(1). There is no hint of an exception for
25   advertisements that are presented to the person or agent of the person who appears in the
     advertisement. *See Fischer*, 2022 WL 971479, at *5 (rejecting argument that plaintiff must show
26   his "search results were selected by a user *other than themselves*") (emphasis in original).

27

### 2. Recognizability is Provable on a Classwide Basis.

Ancestry claims that whether the Class member depicted in each advertisement is recognizable is an individualized issue defeating class certification. *See* Opp., at *20-23. On the contrary, that the Class definition is limited to individuals whose yearbook photographs are searchable on Ancestry.com ensures that the advertisements Ancestry distributes about each Class member contain sufficient information to identify that Class member. Further, Ancestry's advertisements are expressly designed to enable the user to identify an individual of interest.

Every yearbook record Ancestry delivers in response to a search for a person on the limited access version of its website includes the person's name, the state where they attended school, and a low-resolution version of the person's photograph. *See* Dkt. No. 1 ("Compl."), ¶ 31; Opp., at *9. And every yearbook record Ancestry delivers in response to a search for a person on the free trial version of its website includes the person's name, name of the school they attended, city where they attended school, and full-resolution photograph. *See* Compl., ¶¶ 27, 39.

Ancestry observes that in some cases, the record information in a limited access search may not be enough to uniquely identify an individual. But Ancestry fails to show a single example where this is the case. *See* Opp., at *9 (showing search results for "John Smith," but failing to show whether mousing over the "View Image" link would have revealed a photograph that enabled unique identification).[4] Regardless, Ancestry's argument focuses entirely on the limited access records, ignoring the fact that the free trial version of each record includes the student's name, full-resolution photograph, the name of the school, and the city in which the school is located. Ancestry does not argue, nor could it, that the information in free trial records does not uniquely identify the individual portrayed. *See* Compl., ¶ 39 (free trial records plainly and uniquely identifying Plaintiff Mark Sessa). Furthermore, the selected information Ancestry provides in response to a limited

---

[4]    The only Class members Ancestry discusses are the named Plaintiffs. As shown in the Complaint, both Mark Sessa and Tony Sessa are the only individuals of that name who are listed in Ancestry's limited access search results as attending high school in "Nevada, USA." Compl., ¶¶ 31, 43. Ancestry's limited access search results therefore uniquely identify the named Plaintiffs.

access search is designed to prompt the user to upgrade to a full-access "free trial" in order to verify whether the individual listed is in fact the person they are searching for. *See* Compl., ¶ 31 (pop-up prompting the user to "Sign Up Now" to see a full-resolution photograph, "School," and "School Location"). Thus, even the hypothetical case where the name, city, and low-resolution photograph in a limited access record is not enough to identify an individual, the limited access record is linked directly to the free trial record, which does identify that individual.

The facts are nearly identical to those in *Fischer*. There, as here, the defendant's database identified individuals based on an "array of personal attributes"—in that case, "name, age, location(s), [and] possible relative(s)." 2022 WL 971479, at *8. The court acknowledged that the defendant's website "will sometimes produce multiple resulting entries with similar names." *Id.* But, the court observed, the defendant displayed the attributes it did "precisely *because* those attributes allow a user to identify the *particular* person for whom the user is searching." *Id.* So too here. Ancestry's limited access and free trial searches are both designed to enable the user to identify the particular person for whom they are searching. The only significant difference between this case and *Fischer* is that here, each record includes an image of the individual's face. Seeing a face is perhaps the single most reliable and effective technique humans have for recognizing one another. If the records in *Fischer* were sufficient to identify individuals even though they did not include images of faces, surely Ancestry's records, which do include faces, are sufficient as well.[5]

Ancestry also argues that it is possible that some names are searchable in Ancestry's yearbook database even though no yearbook photograph depicting that individual appears on the site. Ancestry identifies two examples: (a) a record that contains no photographs, comprising only an index of names; and (b) a group photograph in Mark Sessa's yearbook that "crops the image of

---

[5]    Ancestry's reliance on *Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019), is misplaced for the same reasons articulated by the court in *Fischer*, 2022 WL 971479, at *8. In *Dancel*, the Seventh Circuit concluded that "Instagram usernames identify only Instagram accounts," not the individuals who created the accounts. 949 F.3d at 1008-09. Here, by contrast, an individual's name, photograph, location, and school they attended are attributes tied to that individual, not to an account they created.

1  [one] student" whose name was listed in the caption. Opp., at *21. These observations are

2  irrelevant because, by definition, the Class is limited to individuals whose <u>photographs</u> are

3  searchable on Ancestry's website. Mot., at *11. If a search for an individual yields only a name

4  but does not yield at least one photograph depicting the individual, then by definition that

5  individual is not a member of the Class.

### 3. Commercial Use Within Nevada can be Shown on a Class Wide Basis.

7  Ancestry argues that because the NRPA "appl[ies] to any commercial use within this state,"

8  to state a claim a plaintiff must show that someone in Nevada viewed the advertisement depicting

9  the plaintiff's yearbook photograph and persona. Opp., at *24-26; Nev. Rev. Stat. § 597.780.

10  Ancestry argues that establishing liability would therefore require an individualized inquiry into

11  which Class members' records Ancestry has delivered in search results to free trial or limited

12  access users in Nevada. *See* Opp., at *24-26.

13  This issue does not defeat predominance. First, Plaintiffs intend to show as a matter of law

14  that, for the same reasons this Court concluded it has personal jurisdiction over Plaintiffs' claims,

15  Ancestry's distribution of advertisements incorporating Nevadan's names and likenesses over the

16  Internet to potential customers in Nevada establishes "commercial use within this state" under the

17  NRPA. In denying Ancestry's motion to dismiss for lack of personal jurisdiction, this Court wrote:

18
19
20
21

> [I]t strains credulity that Ancestry would not know that, by creating a commercial
> database of many millions of Americans, over one million of whom went to school
> in Nevada, a substantial market for the database would be persons residing in
> Nevada. . . Ancestry has targeted the Nevada market by appropriating the names,
> images, and likenesses of over one million Nevadans. . . . [A]t least a plurality of
> individuals interested in learning about Plaintiff likely reside in Nevada.

22  *Sessa v. Ancestry.com*, 561 F. Supp. 3d 1008, 1026 (D. Nev. 2021). On these facts, Ancestry

23  "expressly aim[ed] [its] advertising activity at Nevada citizens." *Id.*, at 1025. By the same token,

24  that Ancestry incorporates the misappropriated names and likenesses of many Nevada residents in

25  advertisements it knows are likely to be of interest primarily to other Nevada residents establishes

26  "commercial use" within Nevada. Whether someone in Nevada has viewed an advertisement

27

incorporating a given Class member's name and likeness is not relevant. The statute requires only "commercial use" within Nevada. As discussed in Part A(1) above, it is well established that actual viewing of an advertisement is not required to establish a "commercial use" under the right of publicity. Because Plaintiffs can and will show that Ancestry makes available its advertisements incorporating all Class members' names and photographs to potential subscribers in Nevada, commercial use "within" Nevada can be shown on a class wide basis.

*Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A., Inc.*, 688 F. Supp. 2d 1148 (D. Nev. 2010), which Ancestry cites, supports this conclusion. There, as here, the plaintiffs brought NRPA claims arising from "internet advertisements" distributed by a company that was not based in Nevada. *Id.*, at 1163. Addressing the question of whether advertisements distributed nationwide via the Internet satisfy the NRPA's territoriality requirement, the court held that "[w]hether such internet activity constitutes a use 'within' Nevada . . . is a question of fact for the jury." *Id.* Here, the facts supporting a finding of "commercial use within this state" are stronger than in *Fifty-Six Hope Road*, because Ancestry intentionally incorporates Nevada residents' names and likenesses in its Internet advertisements and knows Internet users in Nevada are the most likely to be interested. At the very least, under *Fifty-Six Hope Road*, the question is one for the finder of fact. And it is a question that affects all Class members in the same way.

Ancestry relies on *Boshears v. PeopleConnect, Inc*., 2022 WL 888300 (W.D. Wash. Mar. 25, 2022). But the *Boshears* court evaluated a claim under Indiana's right of publicity statute, which has a more exacting territoriality requirement. Whereas the NRPA requires only that the same "commercial use" that gave rise to the claim occurred in Nevada, the Indiana statue requires both a showing "use . . . for a commercial purpose" and a separate showing of "an act or event that occur[ed] within Indiana." Ind. Code §§ 32-36-1-8; 32-36-1-1.

Finally, even were Ancestry correct that "use within this state" requires actual delivery of a search result to a user in Nevada, Ancestry <u>has</u> displayed every Class member's name and yearbook record as part of a search result to a user in Nevada, and has likely done so many times.

As discussed in Part A(1) above, the search interface encourages limited access and free trial users to request all yearbook records in a given state, and Plaintiffs have shown Ancestry has delivered search results containing all Ancestry yearbook records from every state in the Country to a user in Nevada. *See* Chiusano Decl., Ex. 1 & ¶6. In granting the motion to dismiss Indiana right of publicity claims on territoriality claims, the *Boshears* court granted leave to amend, noting that "the Court believes this pleading deficiency can be overcome with additional allegations and/or supporting materials such as an affidavit." *Boshears*, 2022 WL 888300, at *3. Here, even were the NRPA's territoriality provision equally exacting as the Indiana statute's (it is not), Plaintiffs have provided the evidence that would have cured the pleading deficiency in *Boshears*.

Because actual display of an advertisement to a user in Nevada is not required, and because, even were it required, Plaintiffs can and have demonstrated that such display occurred for every Class member, NRPA's requirement of "commercial use within this state" is not an individualized issue that would defeat class certification.

### 4.   Whether the Exception for Use Not Directly Connected with Commercial Sponsorship Applies Can be Addressed on a Classwide Basis.

In a variation on its argument that "commercial use" requires a showing of actual viewing, *see* Part A(1), Ancestry argues that its use of a Class member's persona to advertise is not "directly connected with commercial sponsorship" unless the record "ha[s], in fact, been viewed or searched." Opp., at *27. This argument fails for similar reasons. First, there is no support in the statutory text or caselaw for Ancestry's assertion that "connection with commercial sponsorship" turns on "actual viewing." As shown in Part A(1), actual viewing is not required to demonstrate "commercial use," and Ancestry fails to provide any reason why actual viewing should be required to demonstrate "commercial sponsorship" when it is not required to demonstrate "commercial use."

Second, as shown in Part A(1), even were "viewing" or "searching" required to demonstrate use "connected with commercial sponsorship," Plaintiffs have shown that every Class member's record has in fact been "searched" and the search results "viewed." *See* Chiusano Decl., Ex. 1 & ¶¶ 2-6.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**5.      That Some Class Members are Public Figures Does Not Make Their Yearbook Photographs as Children Matters of Public Interest.**

Ancestry argues that whether a given yearbook photograph is "in connection with . . . public affairs" is an individualized issue that turns on the identity of the person depicted. *See* Opp., at *27-30. It is likely some members of the Class are "public figures." Because they are public figures, Ancestry reasons, their yearbook photographs as children concern "public affairs." *See id.* As examples, Ancestry points to three records in its yearbook database, corresponding to Justice Sotomayor, former President Clinton, and Governor Lombardo. *See id.*

This issue does not defeat predominance. First, that a person is a public figure does not render every piece of information about her a matter of public interest. Analyzing a right of publicity claim under California's analogue to the NRPA, the Ninth Circuit observed, "for the activities of celebrities to be a public issue, the activities, as well as the personages involved must be public." *Hilton v. Hallmark Cards*, 599 F.3d 894, 907-08 (9th Cir. 2009) (citing *Weinberg v. Feisel*, 110 Cal.App.4th 1122 (Cal. Ct. App. 2003)). That a person is a celebrity or public figure does not transform his high school attendance as a child into an activity of public interest that "concern[s] a substantial number of people." *See id.*, at 907.

Ancestry's purported examples confirm the point. The only record Ancestry identifies that might correspond to a Class member is that of Mr. Lombardo. The record reveals only that he attended school in "Nevada, USA." Opp., at *30. While Mr. Lombardo's activities as Governor are "in connection with . . . public affairs," his attendance at a Nevada school is not. The records concerning Mr. Clinton and Ms. Sotomayor further emphasize that Ancestry's website is focused solely on communicating facts about the person's school attendance, to the exclusion of any matter of public interest. While the photographs appear to depict Ms. Sotomayor's and Mr. Clinton's swearing in to public office, the caption information provided by Ancestry indicates (falsely) that each of them was "Abt 16" years old at the time of the photograph, and that each attended the high school from which the photograph was extracted. *Id.*, at *29. While the appointments to public office were events of public interest, Ancestry is clearly not interested in communicating any

information related to those events. Indeed, it appears Ancestry's captioning system assumes every photograph in its yearbook database depicts a student who attended that school (as the vast majority do). That is because Ancestry's website is designed to allow its users to discover personal information about their friends, neighbors, and family members—not to communicate information about public events.

Second, even were the "public figure" issue legally relevant, Ancestry has failed to show the issue is significant enough to defeat predominance. Indeed, Ancestry's motion fails to identify even a single Class member to whom this issue would apply. Ms. Sotomayor and Mr. Clinton are not Class members, both because they are not residents of Nevada, and because the records to which Ancestry points do not depict "**their** yearbook photographs," *see* Mot., at *11 (emphasis added), instead depicting photographs that obviously did not appear in any of either Ms. Sotomayor's or Mr. Clinton's yearbooks. And as shown above, Mr. Lombardo's record does not implicate an activity of public interest. *See Hilton*, 599 F.3d at 907-08.

**B.**   **Ancestry's Arguments Fail to Undermine Plaintiffs' Showing of Commonality, Typicality, and Predominance With Respect to Damages Issues.**

**1.**   **Entitlement to Statutory Damages is Provable on a Class Wide Basis.**

Ancestry argues that entitlement to statutory damages under the NRPA requires proof of actual damages, and that proving that each Class member suffered actual damages would require individualized proof. Opp., at *31-32. Ancestry is wrong on both counts.

First, the Nevada Supreme Court has ruled that proof of actual damage is not required to show entitlement to statutory damages under the NRPA. *Hetter v. Eighth Jud. Dist. Ct. of State In & For Cnty. of Clark*, 110 Nev. 513, 519 (1994) ("It seems clear that what the legislature intended was to allow plaintiffs a minimum of $750 in damages even if no actual damages could be proven in order to discourage such appropriation."). Every case Ancestry cites to the contrary analyzed California's right of publicity statute, Cal. Civ. Code § 3344. While the two statutes are similar in many respects, they differ with respect to whether plaintiffs must show actual damage in some amount to recover the statutory minimum.

1         What the NRPA does require is proof that the claimant suffered "injury[] sustained by

2   reason of the unauthorized use." Nev. Rev. Stat. §§ 597.810(1)(b). Here, Class members can show

3   they suffered an "injury recognized at common law" by showing that "Ancestry used their names

4   and likenesses to motivate a decision to purchase a particular product or service." *See Sessa v.*

5   *Ancestry.com*, 561 F. Supp. 3d at 1021. As this Court observed, "[t]he use of an individual's

6   likeness for commercial purposes, even of a relatively unknown person, establishes common law

7   injury for right of publicity claims as long as the individual is recognizable." *Id.*, at 1022. As shown

8   in Plaintiffs' Motion and in Parts A(1) and A(2) above, use to motivate decisions to purchase and

9   recognizability are both provable on a class wide basis.

10         Second, even were proof of actual damage required, Plaintiffs intend to prove that every

11   Class member suffered economic damage because Ancestry appropriated their identities to

12   advertise—which it would not have done if their identities did not have some economic value—

13   and because Ancestry pays licensing fees in exchange for the right to make commercial use of

14   Class members' identities. The fee Ancestry is willing to pay to license a yearbook photograph is

15   a reasonable approximation of the actual damage each Class member suffered. *See*

16   *Motschenbacher v. R. J. Reynolds Tobacco Co*., 498 F.2d 821, 825–27 n.11 (9th Cir. 1974)

17   (*overruled in part on other grounds*) ("[T]he appropriation of the identity of a relatively unknown

18   person may result in economic injury or may itself create economic value in what was previously

19   economically valueless."); *see also Callahan v. PeopleConnect*, 20-cv-09203-EMC, 2021 WL

20   5050079, at *14 (N.D. Cal. Nov. 1, 2021) ("If a defendant uses a plaintiff's name and/or likeness

21   to advertise, then it can reasonably be inferred that the name and/or likeness has some economic

22   value, even if small."). Ancestry points out that it received some yearbook photographs in its

23   database for free via donations, but the fact that it was able to obtain some small percentage of

24   yearbook photographs for free does not change the fact that it is willing to pay licensing fees and

25   therefore ascribes concrete economic value to Class members' personas.

26

27

Finally, even were Ancestry correct that this case requires individualized proof of actual damages (it does not), this would not defeat certification. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) ("So long as the plaintiffs were harmed by the same conduct, disparities in how or by how much they were harmed d[oes] not defeat class certification.").

### 2.  Plaintiffs' Damages Model Flows Directly From their Liability Theory.

As discussed in Part A(1) above, Plaintiffs' liability theory is that, because every yearbook photograph in Ancestry's database is capable of being incorporated in a search result shown to a limited access of fee trial user, Ancestry has and continues to make commercial use of every Class members' name and photograph without consent, in violation of the NRPA. Plaintiffs' damages model exactly matches this theory, seeking statutory damages of $750 for each photograph in the database. Ancestry's counterargument rests on the same misconception that appears throughout their Opposition, *i.e.*, that Plaintiffs' liability theory hinges on a given Class member's record being searched for and actually viewed by a limited access or free trial user. Again, as discussed in Part A(1) above, there is no viewership requirement for liability under the right of public. The right of publicity is concerned with Ancestry's <u>distribution</u> of the advertisements via its limited access and free trial offerings, not whether any potential customer has requested and viewed a given advertisement.

Even were Plaintiff's theory of liability as Ancestry misrepresents it, Plaintiffs' damages model would still be an exactly match the liability theory because, as shown in Parts A(1) and A(3) above, Ancestry has displayed search results incorporating every yearbook photograph in its database to limited access and free trial users, including to at least one such user in Nevada.

### 3.  Damages may be Calculated on a Class Wide Basis.

Ancestry argues that the NRPA's statutory minimum damages of $750 apply to each Class member, not to each photograph. Opp., at *33-34. Plaintiffs disagree—the statutory reference to "injuries sustained by reason of the unauthorized use" suggests that <u>each</u> unauthorized use gives rise to a new injury, *see* Nev. Rev. Stat. § 597.810(b)—but the issue need not be resolved at this

stage. Under either interpretation, there is a clear method for calculating aggregate damages: either by multiplying the number of class members by the statutory minimum, or by multiplying the number of yearbook photographs by the statutory minimum. *See* Dkt. No. 103-25 ("Kupperberg Decl.").[6]

Ancestry argues that Plaintiffs' proposed method for calculating class wide damages "runs headlong into the Ninth Circuit's bar against 'fluid recovery.'" Opp., at *35. This argument is both premature—Plaintiffs have not at this stage proposed a methodology for dividing the Class wide recovery among Class members—and misunderstands the term "fluid recovery."[7] As the Ninth Circuit explained in *Resnick v. Frank*:

> [W]e are careful not to conflate the concepts of 'claimant fund approach' and 'fluid recovery.' Indeed, we have previously used 'fluid recovery' interchangeably with 'cy pres' distributions to describe a distribution that confers an indirect benefit on class members. A cy pres remedy, sometimes called 'fluid recovery,' is a . . . structure wherein class members receive an indirect benefit (usually through defendant donations to a third party) rather than a direct monetary payment. The claimant fund approach in this case, however, provides direct compensation to class members.

779 F.3d 934, 944-45 (9th Cir. 2015) (internal quotation omitted). The *Resnick* court affirmed the district court's "us[e] of the claimant fund mechanism . . . whereby each class member who submits a claim receives an equal share of the settlement fund, regardless of the harm he or she suffered." *Id.* Here, Plaintiffs have not proposed, and do not intend, a method of distribution whereby Class members would receive only an "indirect benefit." *See id.* On the contrary, it is Plaintiffs' intention to secure "direct monetary payment" for the Class members. *See id.*

---

[6]     Ancestry levies various critiques at the methods by which Plaintiff's expert Cliff Kupperberg estimated the size of the Class. Plaintiffs address these critiques via a separately filed Response to Ancestry's Motion to Exclude, and via Mr. Kupperberg's Reply Declaration, filed herewith.

[7]     Ancestry's discussion of fluid recovery relies almost entirely on *Eisen v. Carlisle Jacquelin*, 479 F.2d 1005 (2d Cir. 1973), a fifty-year-old out-of-circuit decision that was subsequently vacated by the Supreme Court, *see Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

**C.      Ancestry Fails to Undermine Plaintiffs' Showing of Superiority.**

Ancestry argues that the availability of statutory minimum damages weighs against a finding that the Class action mechanism is superior to individual litigation, because "$750 . . . provid[es] sufficient incentive for plaintiffs to pursue individual claims." Opp., at *38. This argument does not pass the laugh test. This case has been pending for more than two years, involving significant motion practice and discovery, most of which would have been required regardless of whether this case was pursued as a class or individual action. It has already cost both sides vastly more than $750 to litigate. As a court in this district recently found, "[a] $500 statutory damage amount for each violation, even if increased to $1,500 for willful violations, is insufficient to incentivize individual actions." *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1308 (D. Nev. 2014).

Ancestry also quibbles with Plaintiffs' proposed method for identifying Class members for the purpose of distributing recovery, but its arguments rest on misrepresentations of Plaintiff's proposal. Plaintiffs do not propose that a "claims processor" would "resolve whether class members consented to the use" of their names and likenesses. *See* Opp., at *37. Rather, Plaintiffs propose that <u>Ancestry</u> resolve this issue by "checking the claimant's email address against their database of registered users." Mot., at *102.

**D.      Ancestry's Arguments Against Rule 23(b)(2) Certification Are Unavailing.**

Ancestry argues that Rule 23(b)(2) certification is not appropriate because "each class member would be entitled to an individualized award of monetary damages." Opp., at *39. But here, the award of monetary damages is not "individualized." Because the liability theory and resulting statutory minimum damages are the same for all Class members, this is not "a claim requiring individualized determinations of eligibility for damages." *See Fowler v. Guerin*, 899 F.3d 1112, 1120 (9th Cir. 2018). Accordingly, certification under Rule 23(b)(2) is appropriate. *See id.* (reversing district court's denial of Rule 23(b)(2) certification). Furthermore, "in cases where a plaintiff seeks both declaratory and monetary relief, [courts] may certify a damages-seeking class

1  under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2)." *West v. Cal. Servs.*

2  *Bureau, Inc.*, 323 F.R.D. 295, 307 (N.D. Cal. 2017).

3        Ancestry also argues that an injunctive class is unavailable because some Class members

4  may not share the goal of "blocking access to Ancestry's records." Opp., at *39. This argument

5  misinterprets the injunctive relief Plaintiffs seek. Plaintiffs do not seek the removal of yearbook

6  records from Ancestry.com, a fact Ancestry acknowledges elsewhere in its own brief. *See id.*,

7  at *14. Rather, Plaintiffs seek to prevent Ancestry from incorporating Class members' yearbook

8  photographs in advertisements without their consent. That is, Plaintiffs seek an order that Ancestry

9  may not incorporate a Class member's name and/or yearbook photograph in a limited access search

10  result, a free trial search result, or a hint email without that Class member's consent. To the extent

11  some Class members may want their names and photographs to continue appearing in Ancestry's

12  advertisements, they may say so when Ancestry requests their consent, as Nevada law says it

13  should have done in the first place.

14             **III.**      **CONCLUSION**

15        For the reasons above, Plaintiffs respectfully requests the Court GRANT their motion to

16  certify the Class pursuant to Rules 23(b)(3) and 23(b)(2).

17  Dated: March 2, 2023          By:  */s/ Miles N. Clark*

18                          Miles N. Clark, Esq.

19                          Nevada Bar No. 13848
                        Law Offices of Miles N. Clark, LLC

20                          5510 S. Fort Apache Rd., Suite 30
                        Las Vegas, NV 89148-7700

21                          Phone: (702) 856-7430
                        Fax: (702) 552-2370

22  
23                          Benjamin R. Osborn (*Pro Hac Vice*)
                        ben@benosbornlaw.com

24                          LAW OFFICE OF BENJAMIN R. OSBORN
                        102 Bergen Street

25                          Brooklyn, NY 11201
                        Telephone: (347) 645-0464

26  
27

Michael F. Ram (*Pro Hac Vice*)
mram@forthepeople.com
Marie N. Appel (*Pro Hac Vice*)
mappel@forthepeople.com
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
711 Van Ness Avenue, Suite 500
San Francisco, CA 94102
Telephone: (415) 358-6913
Facsimile: (415) 358-6923

Raina C. Borrelli (*Pro Hac Vice*)
raina@turkestrauss.com
Samuel J. Strauss (*Pro Hac Vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

*Attorneys for Plaintiffs and the Proposed Classes*

### CERTIFICATE OF SERVICE

Pursuant to NEFCR 9, NRCP 5(b), and EDCR 7.26, I hereby certify that on  March 2, 2023 I served a true and correct copy of **REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** to be electronically filed with the Clerk of the Court of the U.S. District Court of Nevada via the Court's CM/ECF system, which will send a notification of such filing to all registered counsel of record.

Signed:        /s/ *Lucille Chiusano*
               An employee of Law Offices of Miles N. Clark, LLC