Cohen-Johnson, LLC
H. Stan Johnson, Esq.
(sjohnson@cohenjohnson.com)
375 E. Warm Springs Road, Suite 104
Las Vegas, Nevada 89119
Telephone: (702) 823-3500
Facsimile: (702) 823-3400

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Shon Morgan (*Pro Hac Vice*)
(shonmorgan@quinnemanuel.com)
John W. Baumann (*Pro Hac Vice*)
(jackbaumann@quinnemanuel.com)
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Cristina Henriquez (*Pro Hac Vice*)
(cristinahenriquez@quinnemanuel.com)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5000

Attorneys for ANCESTRY.COM OPERATIONS INC., ANCESTRY.COM INC., and ANCESTRY.COM LLC

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANTHONY SESSA and MARK SESSA, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ANCESTRY.COM OPERATIONS INC., a Virginia Corporation; ANCESTRY.COM, INC., a Delaware Corporation; ANCESTRY.COM LLC, a Delaware Limited Liability Company; and DOES 1 through 50, inclusive,

Defendants.

Case No.: 2:20-cv-02292-GMN-BNW

**DEFENDANTS' MOTION FOR RECONSIDERATION OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 1

LEGAL STANDARD ....... 4

ARGUMENT ....... 5

CONCLUSION ....... 7

## TABLE OF AUTHORITIES

**Page**

### Cases

*Aevoe Corp. v. AE Tech Co.*,
2014 WL 1577308 (D. Nev. Apr. 17, 2014) .......... 4, 5

*Bank of Am., N.A. v. Redrock Park Homeowners Ass'n*,
2018 WL 6310057 (D. Nev. Nov. 29, 2018) .......... 4

*Bank of Am., N.A. v. Willows Homeowners' Ass'n*,
2019 WL 4757802 (D. Nev. Sept. 30, 2019) .......... 4

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023) .......... 1, 3, 4, 5, 6, 7

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) .......... 7

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*,
647 F.3d 1218, *cert. denied*, 132 S. Ct. 1101, 181 L. Ed. 2d 979 (2012) .......... 2

*School Dist. No. 1J v. ACandS, Inc.*,
5 F.3d 1255 (9th Cir. 1993) .......... 4

### Other Authorities

Federal Rule of Civil Procedure 59(e) .......... 4

Rule 59 .......... 4

## PRELIMINARY STATEMENT

Plaintiffs filed this putative class action against out-of-state defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC (collectively, "Ancestry"). At the outset of the case, Ancestry moved to dismiss for lack of personal jurisdiction. Ancestry's motion presented the Court with the question whether Ancestry expressly aimed its conduct at the forum state by operating "an interactive website that can be viewed nationwide but contains materials allegedly infringing the [ ] rights of millions of [the forum state's] citizens." ECF No. 36 at 15.

The Court noted this presented a "difficult fact pattern" with which the Ninth Circuit—at that time—had "struggled." *Id.* Lacking clear guidance from the Ninth Circuit, the Court concluded personal jurisdiction existed because "Ancestry intentionally targeted all fifty states" in building "a Database with nationwide appeal by allegedly collecting as many yearbooks as possible from across the country." *Id.* at 17.

However, in a very recent "case of first impression," the Ninth Circuit addressed this precise issue and concluded in-forum contacts arising from a website's nationwide availability ***do not*** give rise to personal jurisdiction. *Briskin v. Shopify, Inc.*, 87 F.4th 404, 409 (9th Cir. 2023). Applying *Briskin*'s analysis to the facts alleged here makes clear personal jurisdiction is absent.

Given this recent change in controlling law, Ancestry respectfully requests the Court reconsider its denial of Ancestry's motion to dismiss for lack of personal jurisdiction. *See* ECF No. 36 at 13-18.

## BACKGROUND

**Plaintiffs' Complaint.** Ancestry is a genealogy company that provides searchable access to a variety of historical records, including school yearbooks, through its interactive website ancestry.com. *See generally* ECF No. 1.

According to plaintiffs, Ancestry's website "contains 730 million" yearbook records, of which "1.7 million records correspond to schools in Nevada." *Id.* at ¶ 61. Plaintiffs allege "[a]t least some, and possibly all, of the Yearbook Database was built via" "visitors . . . donat[ing] their old yearbooks to Ancestry." *Id.* at ¶ 50. Plaintiffs contend visitors to Ancestry's website may also search the site for records of individuals in whom they might be interested and, to the extent such a record exists, the

website will display the record in response to the user's search query. *Id.* at ¶¶ 26-27, 29-31, 38-39, 41-43. Plaintiffs also allege Ancestry's website generates "promotional email messages" containing names and likenesses from yearbook records. *Id.* at ¶¶ 32, 44.

Although plaintiffs allege approximately 0.2% of the yearbook records on Ancestry's website are from Nevada schools, and that these records were most likely to be of interest to "family and classmates" who were "likely Nevada residents," (*see* ECF No. 26 at 3-5), plaintiffs do not allege the ability to search for these records (or any purported "promotional email messages") *differed* for those visiting the website in Nevada. To the contrary, plaintiffs concede these functions are the same for *any* visitor to Ancestry's website. *See id.* They contend only that Nevada visitors are most likely to be interested in records from Nevada schools. *See id.*

**<u>The Court's Order On Ancestry's Motion To Dismiss</u>.** Ancestry moved to dismiss for lack of personal jurisdiction, arguing the "incidental connection with Nevada" resulting from "the universal reach of Ancestry's website and the national focus of its yearbook database is insufficient to show the actions were 'aimed at the forum state.'" *See* ECF No. 19 at 6-7. Plaintiffs opposed by relying on their allegations that Ancestry's website contains—among millions of other records—yearbook records from Nevada schools, which plaintiffs argued were most likely to be of interest to (and thus searched by) visitors in Nevada. ECF No. 26 at 3-5.

In finding personal jurisdiction, the Court explained:

> This case presents a difficult fact pattern: whether Ancestry, in operating an interactive website that can be viewed nationwide but contains materials allegedly infringing the publicity rights of millions of Nevada citizens, expressly aimed its conduct at Nevada. The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229, *cert. denied*, 132 S. Ct. 1101, 181 L. Ed. 2d 979 (2012).

ECF No. 36 at 15. The Court reasoned that Ancestry "sought to build a Database with nationwide appeal by allegedly collecting as many yearbooks as possible from across the country" and "intentionally targeted all fifty states in doing so." *Id.* at 17. Based on the alleged inclusion of more than one million Nevadans' yearbook information in Ancestry's U.S. yearbook database, the Court

concluded "Ancestry has targeted the Nevada market by appropriating the names, images, and likenesses of over one million Nevadans in its drive to create a nationwide database." *Id.* The Court further identified as forum-specific contacts that the information at issue came from Nevada, and that prospective customers would be in Nevada. *Id.* at 18.

**<u>The Ninth Circuit's Decision In *Briskin*</u>.** In a "case of first impression" decided on November 28, 2023, the Ninth Circuit resolved "whether a court has personal jurisdiction . . . in a suit alleging the unlawful extraction, retention, and sharing of consumer data" through a website. The court concluded personal jurisdiction was absent. *Briskin*, 87 F.4th at 409, 422.

In *Briskin*, the plaintiff (a California resident) alleged the out-of-state defendant (Shopify) had improperly collected the plaintiff's personal information when he completed a transaction in California, transmitted the plaintiff's information to Shopify's business partner in California (Stripe), and used the plaintiff's information to create a customer profile for the plaintiff. *Id.* at 410. In assessing these allegations, *Briskin* first noted that subjecting the operator of an "interactive website" to jurisdiction in every state in which the site is accessible would be inconsistent with due process. *Id.* at 411.

*Briskin* then held "the fact that a broadly accessible web platform knowingly profits from consumers in the forum state is not sufficient to show that the defendant is expressly aiming its intentional conduct there." *Id.* at 419. Rather, "the plaintiff must allege that the defendant platform has a 'forum-specific focus,' . . . appeal[s] to an audience in a particular state . . . or actively target[s] the forum state." *Id.* at 419-20 (quotations, alterations, citations omitted). This must include "some prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum state . . . beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Id.* at 420.

*Briskin* also recognized "the role of third parties is important" in determining whether the defendant has purposefully directed its activities at the forum state. *Id.* "Actions of third parties that the defendant does not control . . . tend to be less reflective of the defendant's own express aiming toward the forum because they invite a greater degree of attenuation between the plaintiff's injuries and the defendant's jurisdictional contacts." *Id.*

Applying those principles to the facts alleged, *Briskin* concluded the plaintiff's allegations were insufficient to confer jurisdiction. *Id.* at 423. The plaintiff had not alleged Shopify's website had "a forum-specific focus," "specifically appeal[ed] to an audience in California," or "actively target[ed] the forum state"—instead, the plaintiff alleged only that "Shopify's platform is accessible across the United States, and the platform is indifferent to the location of either the merchant or the end consumer." *Id.* at 422 (quotations, citations, alterations omitted). Although the court recognized Shopify "no doubt benefits from consumers who are present in California," it found "that California is a large market does not answer the purposeful direction question because a defendant foreseeably profiting from persons making online purchases in California does not demonstrate express aiming." *Id.* at 423.

The court further acknowledged "the significance of Shopify operating a broadly accessible web-based platform," and recognized "[t]he nature of such an operation leads to due process concerns when the implication of Briskin's position is that Shopify is subject to specific jurisdiction in every state." *Id.*

## LEGAL STANDARD

"Reconsideration is appropriate if . . . there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Specifically, Federal Rule of Civil Procedure 59(e) "permits a district court to reconsider and amend a previous order." *Bank of Am., N.A. v. Redrock Park Homeowners Ass'n*, 2018 WL 6310057, at *2 (D. Nev. Nov. 29, 2018) (quotation, citation omitted). Although Rule 59 is framed in terms of amendments to judgments, courts have consistently applied this rule to amend a variety of orders—indeed, as this Court has correctly recognized "[t]he Court has the power to alter, at any time before final judgment, [any] non-appealable interlocutory order." *Aevoe Corp. v. AE Tech Co.*, 2014 WL 1577308, at *2 (D. Nev. Apr. 17, 2014) (Navarro, J.). *See also, e.g., Bank of Am.*, 2018 WL 6310057 at *2-3 (granting reconsideration of denial of a motion for summary judgment based on an intervening change in controlling law); *Bank of Am., N.A. v. Willows Homeowners' Ass'n*, 2019 WL 4757802, at *2 (D. Nev. Sept. 30, 2019) (Navarro, J.) (granting motion to reconsider earlier grant of partial summary judgment based on intervening

change in controlling law); *Aevoe Corp.*, 2014 WL 1577308 at *2 (granting motion to reconsider an earlier sanctions order based on "an intervening change in the controlling law").

**ARGUMENT**

There can be no legitimate dispute *Briskin* reflects an intervening change in controlling law. As the Ninth Circuit recognized, *Briskin* was a "case of first impression." *Briskin*, 87 F.4th at 409. And as this Court correctly observed in its dismissal order, the Ninth Circuit had previously "struggled" with the question presented both here and in *Briskin*. ECF No. 36 at 15. When applied to the facts alleged and question presented here—specifically "whether Ancestry, in operating an interactive website that can be viewed nationwide but contains materials allegedly infringing the publicity rights of millions of Nevada citizens, expressly aimed its conduct at Nevada" (ECF No. 36 at 15)—it is now clear under *Briskin* that personal jurisdiction is absent.

*First, Briskin* held that operation of an interactive, universally-available website is not sufficient to confer jurisdiction—rather, the website must evince a "forum-specific focus" by "prioritiz[ing]," "differentiat[ing]," or having some "focused dedication" to the forum state that goes "beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Id.* at 420.

Here, plaintiffs make no such allegation. To the contrary, they contend the Nevada yearbook records on Ancestry's website comprise a small fraction (around 0.2%) of the available yearbook records. And they allege only that those Nevada records *might* be sought out by users located in Nevada because those *users* are interested in the records. Plaintiffs do not allege Ancestry displays its records differently to Nevada residents than it does to others. Rather, as in *Briskin*, plaintiffs concede the website "is indifferent to the location of . . . the end consumer." *Id.* at 422 (recognizing that, as here, there was no allegation Shopify "alters its [ ] activities based on the location of a given online [user].").

*Briskin* thus cannot be reconciled with the Court's earlier determination Ancestry's "[d]atabase with nationwide appeal" reflects express aiming at Nevada simply because it contains records for

"many millions of Americans, over one million of whom went to school in Nevada." *See* ECF No. 36 at 17.

*Second, Briskin* held "the role of third parties is important" in the jurisdictional analysis. As *Briskin* recognized, the "[a]ctions of third parties that the defendant does not control . . . tend to be less reflective of the defendant's own express aiming toward the forum[.]" *Id.* at 420. Once again, applying *Briskin* to the facts alleged here demonstrates jurisdiction is absent.

With respect to the acquisition of Nevada yearbook records (although it is not relevant because plaintiffs' claims do not arise from the acquisition of the yearbooks, but rather from the alleged use of those yearbooks), even were it an appropriate consideration, plaintiffs do not allege *Ancestry* had any contact with the forum in acquiring the yearbooks—rather, plaintiffs allege the Yearbook Database was built via" "visitors . . . donat[ing] their old yearbooks to Ancestry." *Id.* at ¶ 50.[1] Likewise, with respect to the alleged display of those records, plaintiffs contend this results from the actions of *users* of Ancestry's website who are seeking out the records (*e.g.,* by conducting a search for a specific person)—they do not allege *Ancestry* took action to display the records in Nevada other than by virtue of its operation of the website, which is equally available everywhere else. *Briskin* makes clear such third-party actions do not give rise to jurisdiction.

*Finally, Briskin* specifically opined on the Constitutional implications associated with permitting nationwide jurisdiction over websites simply because the website has a national audience. *Briskin*, 87 F.4th at 423 ("[t]he nature of" a "broadly accessible web-based platform" "leads to due process concerns when the implication of [the plaintiff's] position is that [the website operator] is subject to specific jurisdiction in every state."). As *Briskin* explained, "as a matter of due process, web-

---

[1] Although not alleged in their complaint, to the extent plaintiffs contend they can amend based on subsequent discovery showing Ancestry licensed certain yearbooks from third-parties, reference to these materials would not cure the jurisdictional problem. Whether received by donation or licensed from other businesses, Ancestry still obtains the yearbook records from *third parties* and did not itself have any contact with Nevada in obtaining plaintiffs' yearbook records.

based platforms cannot be subject to specific jurisdiction in any forum from which they are accessible, which would lead to 'the eventual demise of all restrictions' on personal jurisdiction." *Id.* at 421.

This holding cannot be reconciled with the Court's earlier finding that "Ancestry intentionally targeted all fifty states" through operation of a website that appeals *generally* to individuals located across the country. *See* ECF No. 36 at 17. Indeed, in reaching this conclusion, the Court relied on *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). However, *Briskin* held that *Keeton* is "distinguishable" because it "involved the distribution of *products* into the forum state." *Briskin*, 2023 WL 8225346 at *12 (emphasis added). As *Briskin* rightly observed, "online sales of physical products" must be "differentiated" from "other internet-related activities"—"the sale of physical items through the internet is simply different from other forms of internet activity, based on long-held understandings about the jurisdictional significance of physical shipments into a forum." *Id.* at 422.

## CONCLUSION

Although the law was unclear at the time the Court initially assessed plaintiffs' jurisdictional allegations, the Ninth Circuit has since issued a controlling decision on the precise question presented here. The recent decision in *Briskin* warrants reconsideration of the Court's order on Ancestry's motion to dismiss and mandates dismissal on personal jurisdiction grounds.

DATED this 21st day of December, 2023

Respectfully submitted,

Quinn Emanuel Urquhart & Sullivan, LLP

*/s/ Shon Morgan*

Shon Morgan
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017

**Attorneys for Defendants Ancestry.com Operations Inc., Ancestry.com Inc., and Ancestry.com LLC**

**CERTIFICATE OF SERVICE**

Pursuant to FRCP 5(b)(2)(E), I hereby certify that on this day, I caused a true and correct copy of the foregoing to be served via the Court's electronic system on all registered and active parties.

DATED December 21, 2023.

/s/ *Shon Morgan*___________
Shon Morgan