UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY SESSA, *et al.*, <br><br>　　　　　Plaintiffs, <br>　vs. <br><br>ANCESTRY.COM OPERATIONS INC., *et al.*, <br><br>　　　　　Defendants. | Case No.: 2:20-cv-02292-GMN-BNW <br><br>**ORDER GRANTING MOTION TO RECONSIDER AND DISMISSING CASE FOR LACK OF PERSONAL JURISDICTION** |

Pending before the Court is the Motion for Reconsideration, (ECF No. 158), filed by Defendants Ancestry.com Operations Inc., Ancestry.com, Inc., and Ancestry.com LLC, (collectively, "Defendants" or "Ancestry"). Plaintiffs Anthony Sessa and Mark Sessa filed a Response, (ECF No. 166), to which Plaintiff filed a Reply, (ECF No. 169).

For the reasons set forth below, the Motion for Reconsideration is **GRANTED**. Upon reconsideration, the Court **GRANTS** Defendants' Motion to Dismiss, (ECF No. 19), for lack of personal jurisdiction. The Court further **DENIES as moot** all other pending motions and **VACATES** the January 19, 2024, hearing.

I.　**BACKGROUND**

This case arises from Ancestry's alleged use of Plaintiffs' names, images, and identities to sell access to Ancestry subscriptions, without consent from Plaintiffs. (*See generally* Compl., ECF No. 1). Plaintiffs, Nevada citizens, allege they were injured when Ancestry stored their personal information in the Ancestry yearbook database, which was used for a commercial purpose. (*Id.*). The Court's previous Order granting in part and denying in part Defendant's Motion to Dismiss contains the relevant factual background, and the Court incorporates that background here. (Order 1:18–4:4, ECF No. 36). In that Order, the Court dismissed all claims

against Ancestry except the claim brought under Nevada's right of publicity statute, NRS § 597.770. (*See generally id.*). The Order also found that the Court had personal jurisdiction over Ancestry under the purposeful direction test. (*Id.* 14:13–18:16) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Defendant now brings the instant Motion for Reconsideration of the Court's denial of its Motion to Dismiss for lack of personal jurisdiction. (*See generally* Mot. Reconsideration, ECF No. 158).

## II.  LEGAL STANDARD

Generally, a district court may rescind an interlocutory order "[a]s long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). This plenary power derives from the common law and is not limited by the provisions of the Federal Rules of Civil Procedure. *See id.* at 886–87. When a district court issues an interlocutory order, the power to reconsider or amend that order is not subject to the limitations of Rule 59. *Id.* at 885 (quoting *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000)). Courts also derive power to revise interlocutory orders from Federal Rule of Civil Procedure 54(b). Interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

While other districts in the Ninth Circuit have local rules governing motions to reconsider an interlocutory order, the District of Nevada has "utilized the standard for a motion to alter or amend judgment under Rule 59(e)." *See, e.g.*, *Evans v. Inmate Calling Solutions*, No. 3:08-CV-0353-RCJ (VPC), 2010 WL 1727841, *1 (D. Nev. Apr. 27, 2010); *Hanson v. Pauli*, No. 3:13-CV-00397-MMD, 2015 WL 162987, at *1 (D. Nev. Jan. 13, 2015). A motion to reconsider must set forth (1) a valid reason why the court should revisit its prior order; and (2)

facts or law of a "strongly convincing nature" in support of reversing the prior decision. *Frasure v. U.S.*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003) (using this standard for motion for reconsideration of district court's denial of defendant's motion to dismiss). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County, Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993). A motion for reconsideration is properly denied if it presents no new arguments. *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). "Whether or not to grant reconsideration[,]" however, "is committed to the sound discretion of the court." *Navajo Nation v. Confederated Tribes & Bands of the Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

## III. DISCUSSION

The Court will first determine whether to grant Defendants' Motion for Reconsideration, and then, if necessary, reconsider the underlying Motion to Dismiss.

### A. Motion for Reconsideration

Ancestry argues that reconsideration is warranted due to an intervening change in controlling law, namely, a recent opinion from the Ninth Circuit, *Briskin v. Shopify, Inc.*, 87 F.4th 404, 417 (9th Cir. 2023). (*See generally* Mot. Reconsideration). Generally, mere clarification or confirmation of existing law does not constitute an intervening change in controlling law. *See, e.g.*, *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 282 F.R.D. 216, 222 (D. Ariz. 2012); *Dr. Seuss Enters., L.P. v. ComicMix LLC*, 553 F. Supp. 3d 803, 810 (S.D. Cal. 2021). But intervening change in controlling law is found where the reasoning or theory of a case is "clearly irreconcilable with the reasoning or theory of intervening higher authority," or where "a subsequent decision 'creates a significant shift in [a court's] analysis.'" *Castellar v. Mayorkas*, No. 17-CV-00491-BAS-AHG, 2021 WL 3856488,

at *4 (S.D. Cal. Aug. 30, 2021) (citing *Miller v. Grammie*, 335 F.3d 889, 893 (9th Cir. 2003) (overruled on other grounds by *Sanchez v. Mayorkas*, 593 U.S. 409 (2021)); *Teamsters Loc. 617*, 282 F.R.D. at 223.

Plaintiffs respond that *Briskin* is not a change in controlling law because it merely applies existing law to it a matter of first impression. (Resp. 7:14–8:6). They argue that even though the Ninth Circuit has never considered whether passive data tracking and collection could confer jurisdiction, it had previously decided how a state may properly exercise personal jurisdiction over a website-based business. (*Id.* 6:16–7:13). In its Reply, Defendants point out that the *Briskin* court acknowledged it was dealing with a "novel" situation that had not yet been addressed by other circuits. (Reply 2:10–14) (citing *Briskin*, 87 F.4th at 415). Defendants argue that *Briskin* "created new law in two respects:" (1) the decision created a "never-previously-articulated" test to determine what constitutes "something more" for purposes of determining jurisdiction over an interactive website, and (2) it instructed courts not to rely on precedent involving the distribution of physical products when assessing only web-based contacts. (*Id.* 2:15–20).

Though Plaintiffs are correct that the *Briskin* court relied on existing website-based personal jurisdiction decisions, the Court finds that *Briskin* did not merely clarify or confirm existing law. Rather, the Court agrees with Defendants that *Briskin* expanded on the application of personal jurisdiction jurisprudence as it applies to website-based contacts and established a clear test. *See Briskin*, 87 F.4th at 419–20.

The Ninth Circuit's opinion in *Briskin v. Shopify, Inc.* is controlling law and contains similar underlying facts as they pertain to personal jurisdiction. The plaintiff in *Briskin* used his phone to purchase fitness apparel from an online retailer using defendant Shopify's payment processing system. *Id.* at 409. Shopify collected and stored the plaintiff's personal information, created customer profiles, and shared the data with other merchants. *Id.* at 409–410. The

plaintiff alleged that Shopify reached into California to extract consumers' personal data and contracted directly with California merchants. *Id.* at 410. The *Briskin* court framed the issue as "whether defendants' extracting and retaining of consumer data and their tracking of customers exposes them to personal jurisdiction in California, where a consumer made his online purchase." *Id.* at 409.

In this Court's previous order, it framed the issue in this case as "whether Ancestry, in operating an interactive website that can be viewed nationwide but contains materials allegedly infringing the publicity rights of millions of Nevada citizens, expressly aimed its conduct at Nevada." (Order 15:18–20). This case and *Briskin* both involve internet-based companies, operating and accessible nationwide, retaining personal information without consent. In addition to their personal information being stored, however, Plaintiffs in this case further allege that Ancestry uses their personal information to sell subscriptions. (Compl. ¶ 69) ("Ancestry conducts business in Nevada, by among other things, appropriating the likenesses of Nevada residents and using those likenesses to advertise and as part of its products and service, and by offering its subscription products for sale to Nevada residents."). Even with these additional allegations, the Court finds sufficient factual similarities between the cases for the *Briskin* court's reasoning to be pertinent to this case.

The *Briskin* Court established a test for personal jurisdiction that conflicts with this Court's analysis in its prior order. The Ninth Circuit's reasoning in *Briskin* "creates a significant shift" in the Court's analysis because *Briskin* describes a personal jurisdiction test to be applied in scenarios such as this one, and the Court did not apply that test when it analyzed Defendant's Motion to Dismiss. Specifically, *Briskin* held that when courts determine whether an internet-based company expressly aimed its activities at a particular state, the plaintiff must allege a "forum-specific focus," that the defendant is specifically "appeal[ing] to . . . an audience in a particular state," or that the defendant is "actively targeting" the state. *Id.* at 419–

420.  Specifically, a plaintiff must allege that the defendant prioritized the forum state, differentiated that state from other locations, or had "focused dedication" to the forum state. *Id.* at 420.

This rule shifts the Court's analysis because the Court did not evaluate whether Plaintiffs alleged a forum-specific focus.  The Court previously relied on cases involving advertisements and the shipment of products into the forum state. (*See* Order 16:6–17:23).  Though the advertisement cases are relevant and will be discussed below, the *Briskin* court distinguished cases involving the shipment of physical products from other internet-related activities, such as the extraction of consumer data by Shopify. *Briskin*, 87 F.4th at 422.  The Court finds that the motion to reconsider sets forth a valid reason why this Court should revisit its prior order and provides controlling Ninth Circuit law of a "strongly convincing nature" in support of reversing the prior decision. *See Frasure v. U.S.*, 256 F. Supp. 2d 1180, 1183 (D. Nev. 2003).  Because the Court's reasoning in the previous Order is inconsistent with the Ninth Circuit's holding in *Briskin*, the Court exercises its inherent power to amend interlocutory orders and GRANTS Defendant's Motion for Reconsideration.  The Court will now apply the Ninth Circuit's reasoning in *Briskin* to the case at hand.

**B.  Motion to Dismiss for Lack of Personal Jurisdiction**

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,

414–16 (1984)). Specific jurisdiction exists where claims "arise[] out of" or "relate[] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.* Specific jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007).

Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger*, 374 F.3d at 802.

Under the first prong of the specific personal jurisdiction test, purposeful availment and purposeful direction are two distinct concepts, and the "exact form of our jurisdictional inquiry [generally] depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Courts typically use a "purposeful direction test" for claims sounding in tort "where the alleged conduct took place outside the forum state." *Strayer v. Idaho State Patrol*, No. 21-cv-35247, 2022 WL 685422, at *2 (9th Cir. Mar. 8, 2022); *see also Schwarzenegger*, 374 F.3d at 802. This test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Specific jurisdiction must arise out of "contacts that the 'defendant himself' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).

First, Ancestry claims that Plaintiffs did not properly allege "something more," to demonstrate Ancestry's "forum-specific focus" on Nevada. (Mot. Reconsideration 5:12–24). Plaintiffs must allege "prioritization of the forum state, some differentiation of the forum state from other locations, or some focused dedication to the forum which permits the conclusion that the defendant's suit-related conduct 'create[s] a substantial connection' with the forum." *Briskin*, 87 F.4th at 420. The substantial connection to the forum state "must be something substantial beyond the baseline connection that the defendant's internet presence already creates with every jurisdiction through its universally accessible platform." *Id.* The case comparisons made by the *Briskin* court shed additional light on how this requirement should be interpreted by lower courts.

The Ninth Circuit found "express aiming" in two instructive cases. *See id.* at 418–19. In *Will Co. v. Lee,* the defendant adult-video website caused its website to load faster in the United States than in other countries and hosted legal materials relevant almost exclusively to the United States. 47 F.4th 917, 924–25 (9th Cir. 2022). The court found express aiming at the United States because the operators "prepared for U.S. visitors at the exclusion of all others." *Id.* at 926. Similarly, in *Mavrix Photo Inc. v. Brand Technologies*, the court exercised personal jurisdiction over a celebrity gossip website because it sold space on its website for advertisements directed towards Californians and focused the subject matter of its website on Californian celebrities and entertainment industries. 647 F.3d 1218, 1230–32 (9th Cir. 2011).

The *Briskin* court contrasted these two cases with *AMA*. *See Briskin*, 87 F.4th at 418–19. The defendants in *AMA Multimedia, LLC v. Wanat* operated an internationally available website that hosted adult videos uploaded by individual users, and 20% of the userbase resided in the United States. 970 F.3d 1201, 1210–12 (9th Cir. 2020) The website used geotargeted ads that showed users ads based on their location in the world. *Id.* at 1210–11. The Ninth Circuit held that the district court did not have specific jurisdiction due to lack of a "forum-specific

focus" in the defendant website. *Id.* at 1210.  The court reasoned that 80% of the website's viewers were located outside of the United States, and individual users generated the content, so even if the company "may have foreseen" a substantial United States audience, it did not constitute express aiming. *Id.*  Further, the court found that geo-located advertisements did not rise to the level of express aiming because each forum received ads targeted to their locations. *Id.* at 1211.

Here, Ancestry's actions do not rise to the level of the express aiming found in *Will Co.* and *Mavrix*.  Plaintiffs do not allege that Ancestry's website, like the websites in *Will* and *Mavrix*, operates differently in Nevada than it does in other states.  Nothing in Plaintiffs' allegations allows the court to conclude that Ancestry prepares for visitors from Nevada "at the exclusion of all others." *See Will Co.*, 47 F.4th at 926.  Plaintiffs further do not allege that Ancestry's advertisements and email promotions are specifically focused on Nevada.  Instead, Plaintiffs allege that Ancestry advertises with email promotions containing the names and photos of individuals they might be related to. (Compl. ¶¶ 12, 32).  Plaintiffs' allegations allow the Court to infer that Ancestry markets widely, sending email promotions and advertising subscription services on its website, without regard to the user's location. (*Id.* ¶¶ 10–13, 38, 42–43, 46, 54–56).  Plaintiffs' injury, that their personal information is impermissibly being used to sell Ancestry subscriptions, would "follow [them] wherever [they] might chose to live or travel," and is not enough to demonstrate that Ancestry's actions were aimed at Nevada. *See Briskin*, 97 F.4th at 416.

The operation of the website in this case is more like the *AMA* website analyzed by the *Briskin* court, over which the Ninth Circuit did not find personal jurisdiction. *Id.* at 418.  First, like the content in *AMA* that was uploaded by individual users, the content in the yearbook database is provided by users that donate their yearbooks. (Compl. ¶ 50); *see id.* at 420 ("Actions of third parties that the defendant does not control . . . tend to be less reflective of the

defendant's own express aiming toward the forum because they invite a greater degree of attenuation between the plaintiff's injuries and the defendant's jurisdictional contacts."). Second, in *AMA*, the court found that a forum-focus was lacking in the United States because the United States made up merely 20% of the defendant's business. 970 F.3d at 1210–12. Here, less than 1% of the data in the yearbook database belongs to Nevadans. (Compl. ¶ 47). Third, like the advertisements in *AMA* that were not targeted to a specific state, the advertisements here are based on the unique family tree of each user or are displayed on the website in the same way to every user, regardless of location. (*Id.* ¶¶ 12, 32).

Lastly, as the Court noted above, its previous reliance on *Keeton v. Hustler Magazine* to find that "Ancestry intentionally targeted all fifty states" is inconsistent with *Briskin*. (*See* Order at 17:14–23).  Citing *Keeton*, this Court reasoned that because Ancestry built a database with yearbook records from around the country, it intentionally targeted all 50 states.  But *Briskin* explained that when analyzing personal jurisdiction over a web-based payment processor that retains and shares consumer data, courts should rely on legal principles from *Mavrix*, *AMA*, and *Will Co*. *See Briskin*, 87 F.4th at 422.  These three website cases, and the legal principles they apply are "simply different" from the sale of physical items. *Id.*  The traditional legal backdrop analyzing the significance of physical shipments into a forum "does not extend to the extraction of consumer data. . . ." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the

amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Because this is the Court's first dismissal based on personal jurisdiction, and Plaintiffs may be able to plead additional facts to support their claims that Ancestry had a forum-specific focus on Nevada, the Court GRANTS Plaintiff leave to file an amended complaint within 14 days of the date of this Order.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Reconsideration, (ECF No. 158), is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (ECF No. 19), is **GRANTED,** but the Court dismisses the case **without prejudice.** Plaintiff shall have 14 days from the date of this Order to file an amended complaint. Failure to file an amended complaint by the required date will result in the Court dismissing Plaintiff's claims with prejudice.

**IT IS FURTHER ORDERED** that all pending motions are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the January 19, 2024, hearing is **VACATED**.

**DATED** this   17   day of January, 2024.

_____
Gloria M. Navarro, District Judge
United States District Court