UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ANTHONY SESSA, *et al.*, <br><br>             Plaintiffs, <br>   vs. <br><br> ANCESTRY.COM OPERATIONS INC., *et al.*, <br><br>             Defendants. | Case No.: 2:20-cv-02292-GMN-BNW <br><br> **ORDER GRANTING MOTION TO DISMISS** |

Pending before the Court is the Motion to Dismiss, (ECF No. 174), filed by Defendants Ancestry.com Operations Inc., Ancestry.com, Inc., and Ancestry.com LLC, (collectively, "Defendants" or "Ancestry"). Plaintiffs Anthony Sessa and Mark Sessa filed a Response, (ECF No. 178), to which Defendants filed a Reply, (ECF No. 183). Also pending before the Court is Plaintiffs' Motion to Conduct Jurisdictional Discovery in the Alternative, (ECF No. 180), and Plaintiffs' three Motions for Leave to file Supplemental Authority, (ECF Nos. 189–91).

For the reasons set forth below, the Court GRANTS the Motion to Dismiss, DENIES the Motion to Conduct Jurisdictional Discovery, GRANTS Plaintiffs' first Motion for Leave, and DENIES Plaintiffs' second and third Motions for Leave.[1]

I.     **BACKGROUND**

This case arises out of Plaintiffs' class action against Ancestry for knowingly misappropriating their yearbook photos, without Plaintiffs' consent, for the purpose of selling

---

[1] "A party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause." LR 7-2(g). "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier, LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021). The Court GRANTS Plaintiffs' first motion, (ECF No. 189), because it attaches a helpful Sixth Circuit case discussing Ninth Circuit personal jurisdiction precedent. But the Court DENIES Plaintiffs' second and third motions, (ECF Nos. 190 and 191), because they attach two orders from the Northern District of California involving similar facts but not discussing personal jurisdiction, so the Court does not find them to be precedential, persuasive, or helpful.

access to them. (*See generally* First Am. Compl. ("FAC"), ECF No. 173). Plaintiffs allege that to create its Yearbook Database, Ancestry extracted personal information from school yearbooks and aggregated it into digital records for their website. (*Id.* ¶¶ 2–3). Customers can pay a monthly subscription, ranging from $24.99 to $49.99, to search and download these records. (*Id.* ¶ 6).

To sell subscriptions, Ancestry offers a 14-day promotional free trial that provides temporary access to the Yearbook Database at issue in this case, and offers a limited-access version of its website that encourages visitors to search the database and receive records. (*Id.* ¶¶ 8–10). Users are urged to sign up for a paid subscription to access the full version of the photograph or additional information about the person they searched for. (*Id.*). Ancestry also advertises with email promotions, such as by sending photographs of the gravesites of deceased relatives and messages containing names and likenesses from its Yearbook Database. (*Id.* ¶ 12).

In the Court's first Order granting in part Defendants' initial Motion to Dismiss, it found that the Court had personal jurisdiction over Ancestry. (Order Granting Mot. Dismiss 14:13–18:16, ECF No. 36). Defendants then brought a Motion for Reconsideration of personal jurisdiction based on the Ninth Circuit's decision, *Briskin v. Shopify, Inc.*, 87 F.4th 404, 417 (9th Cir. 2023). (Mot. Reconsideration, ECF No. 158). The Court explained that *Briskin* "expanded on the application of personal jurisdiction jurisprudence as it applies to website-based contacts and established a clear test." (Order Granting Mot. Reconsideration 4:18–20, ECF No. 170). The Court noted that it had not previously evaluated whether Plaintiffs sufficiently alleged that Ancestry had a forum-specific focus on Nevada, and ultimately granted dismissal for lack of personal jurisdiction based on *Briskin* and three previous Ninth Circuit cases: *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022), *Mavrix Photo Inc. v. Brand Technologies*, 647 F.3d 1218 (9th Cir. 2011), and *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir.

2020). (*Id.* 6:17–11:4). The Court granted leave to amend to allow Plaintiffs to plead additional jurisdictional facts, and Plaintiffs filed their First Amended Complaint, (ECF No. 173).

Defendants then filed the instant Motion to Dismiss, arguing that Plaintiffs did not sufficiently allege that Ancestry expressly aimed its conduct at Nevada pursuant to the four cases above. (*See generally* Mot. Dismiss, ECF No. 174). After briefing concluded, Ancestry filed a Notice of Rehearing En Banc, (ECF No. 187), informing the Court that the Ninth Circuit granted a motion for rehearing en banc in *Briskin v. Shopify, Inc.* and vacated the panel opinion.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2). The party asserting the existence of jurisdiction bears the burden of establishing it. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "This prima facie standard 'is not toothless,' however; [plaintiff] 'cannot simply rest on the bare allegations of its complaint.'" *AMA Multimedia*, 970 F.3d at 1207 (quoting *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)). In assessing whether personal jurisdiction exists, a court may consider evidence presented in affidavits or order discovery on jurisdictional issues. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles

of due process when determining personal jurisdiction. *See* NRS 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise[ ] out of" or "relate[ ] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.*

### III. DISCUSSION

Plaintiffs assert that this Court has specific jurisdiction over Defendants because it purposefully directed its suit-related activity into this forum. (*See* FAC ¶¶ 17–18). Defendants disagree, arguing that because its website operates the same way in Nevada as it does everywhere else, the FAC should be dismissed. (Mot. Dismiss 1:2–10). Because the Ninth Circuit's *Briskin* decision has been vacated, the Court will address only the parties' arguments that rely on current Ninth Circuit precedent.

#### A. Motion to Dismiss

Specific jurisdiction refers to "jurisdiction based on the relationship between the defendant's forum contacts and plaintiff's claims." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

> (1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform

some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* If the plaintiff satisfies the first two prongs, the burden will shift to the defendant to show that exercising jurisdiction would be unreasonable. *Id.* "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* Because this case is based in tort, the Court will apply the purposeful direction test. *See id.* Under the purposeful direction analysis, district courts consider whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803. The Parties' dispute centers on the "expressly aimed" prong of the analysis. The Court thus begins with whether Defendants' conduct was expressly aimed at Nevada.

### 1. Express Aiming

The Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix Photo*, 647 F.3d at 1229. The Ninth Circuit utilizes a sliding scale to determine whether a website provides grounds for personal jurisdiction. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418–19 (9th Cir. 1997). "[O]perating even a passive website in conjunction with 'something more'—conduct directly targeting the forum—is sufficient." *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). In determining whether a defendant's operation of a particular website has crossed the line between passively benefiting from U.S. users of its website and expressly aiming its website at

such users, "we have considered several factors, including the interactivity of the defendant's website; the geographic scope of the defendant's commercial ambitions; and whether the defendant 'individually targeted' a plaintiff known to be a forum resident." *Doe v. WebGroup Czech Republic, a.s.*, 93 F.4th 442, 453 (9th Cir. 2024) (quoting *Mavrix Photo*, 647 F.3d at 1229). To establish "something more" based on the first two factors, the plaintiff must show that the operator "both actively appealed to and profited from an audience" in the forum. *Id.* (quoting *Will Co.*, 47 F.4th at 922–23).

Plaintiffs first assert that Ancestry's site has a forum-specific focus on Nevada, which constituted "something more" in *Mavrix*. (Resp. 8:5–14). Plaintiffs rely on their contentions that Ancestry intended to cultivate a Nevada customer-base by cataloging Nevada yearbook data on its Nevada page and encouraging users to search for other Nevadans. (*Id.*). Plaintiffs provide the Declaration of Alex Phillips, their attorney, which includes screenshots of the Ancestry page providing a search tool that site visitors can utilize to search yearbook records. (Phillips Decl. at 2, ECF No. 179); (Resp. 3:20–4:14). Ancestry points out, however, that this page is only reached through an "Explore by location" window that gives site visitors the option to search records for *any* state or territory. (*See* Reply 4:21–5:15). Plaintiffs' screenshots show a dropdown menu from which visitors may select their country and territory or state, of which Nevada is one option.

In *Mavrix*, the Ninth Circuit found that the defendant website expressly aimed its conduct at California because it "operated a very popular website with a specific focus on the California-centered celebrity and entertainment industries." 647 F.3d at 1230. Based on the subject matter of the defendant's site, "as well as the size and commercial value of the California market," the court concluded that the defendant "anticipated, desired, and achieved a substantial California viewer base." *Id.* This case stands in contrast to *AMA Multimedia*, in which the court found that the defendant's adult-content site lacked a forum-specific focus

because "the market for adult content is global," as "evidenced by the fact that the other 80% of [defendant's] viewers were outside the United States." 970 F.3d at 1210.

This case aligns closer with *AMA Multimedia* than it does with *Mavrix*. The fact that a user can search for Nevada records does not mean that Ancestry has a Nevada-specific focus. Unlike the subject matter of defendant's site in *Mavrix* that appealed specifically to California, Ancestry's genealogy and records search site appeals equally to everyone, in any country or state. The scope of Ancestry's geographic commercial ambition, a factor identified in *Mavrix*, is world-wide. Nevada just happens to be one state in one country that site visitors may search, which the Court is not convinced is enough to confer jurisdiction. *See Doctor's Fin. Network, Inc. v. DrDisabilityQuotes.com, LLC*, No. SACV 21-02034-CJC(JDEx), 2022 WL 19404853, at *5 (C.D. Cal. Mar. 3, 2022) (allowing users to select California as the state in which they wish to purchase insurance products is not enough to confer jurisdiction in a state that a user may or may not select because "such reasoning would make Defendant subject to specific jurisdiction in every state it allows its users to choose from"). Additionally, even if Ancestry knows that visitors searching for Nevada yearbook records are "highly likely" to live in Nevada, the actions taken by Nevadans to search for Nevada records are not imputable to Ancestry for purposes of jurisdiction. Specific jurisdiction must arise out of "contacts that the 'defendant himself' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475).

The *Mavrix* court also noted that the California audience was "an integral component" of the defendant's business model and profitability. 647 F.3d at 1230. But here, less than 1% of Ancestry's overall subscribers and free trial users are from Nevada. (Godfrey Decl. ¶ 3, Ex. 1 to Mot. Dismiss, ECF No. 174-1). And while Plaintiffs are correct that there is no particular threshold that must be met, Ninth Circuit case law considers the percentage of the forum's user

base compared to the overall user base. *See WebGroup*, 93 4th at 455 (explaining that the defendant sites profited from the forum's audience as it accounted for "between 12% and 19% of the traffic" and thus the websites "earned considerable revenue from that market"); *AMA Multimedia*, 970 F.3d at 1211 (noting that even though 20% of defendant's traffic came from the U.S., making the United States its largest market, its use of advertising that is tailored based on the perceived location of the viewer did not established express aiming).

Plaintiffs next argue that Ancestry appealed to and profited from Nevadans because Ancestry knew it was "highly likely" Nevadans would search for Nevada records and subscribe. (Resp. 8:15–17); (Ancestry Yearbooks Deep Dive, Ex. 6 to Mot. Certify, ECF No. 103-8). Relying on the Ninth Circuit decisions in *Will* and *WebGroup*, they contend that Ancestry's actions in sourcing Nevada records and uploading them to the site are enough to confer jurisdiction on their own. (*Id.* 8:17–23). Defendants argue that they did not contact Nevada to obtain the yearbook records and argue that Plaintiffs' reliance on *Will* and *WebGroup* is misplaced due to the defendants in those cases "differentially" favoring a particular forum. (Reply 3:2–10, 5:16–23).

In both *Will* and *WebGroup*, the Ninth Circuit found personal jurisdiction to be proper when the defendants used technology that caused their websites to run faster and more efficiently in the United States than in other jurisdictions. *See Will Co.*, 47 F.4th at 925 (explaining that the defendant's choice to have the site load faster for viewers in the United States and slower for viewers in other places around the world was "good evidence that they were motivated to appeal to viewers in the United States more than any other geographical location"); *see also WebGroup*, 93 F.4th at 453 (explaining that the defendant's use of U.S.-based network services to improve the viewing experience of U.S. site visitors "differentially targeted U.S. visitors in a way that, under *Will*, constitutes express aiming at the U.S. market").

      The *WebGroup* court also found the earlier Ninth Circuit *Ayla* decision to be instructive. *Webgroup*, 93 F.4th at 454. The defendant in *Ayla* contracted with an Idaho fulfillment center to ship its products within the United States in two-to-four days, as opposed to five-to-ten days in other countries. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 982 (9th Cir. 2021). The *WebGroup* court explained that, "the use of such a U.S.-based operation to facilitate quick delivery of product to nearby consumers demonstrates the sort of differential targeting that constitutes express aiming at the U.S. market." *WebGroup*, 93 F.4th at 454; *see also Ayla*, 11 F.4th at 982.

      Here, Plaintiffs do not allege the sort of targeting of Nevada that the Ninth Circuit has found to constitute express aiming. Although Ancestry purchased the yearbook records of Nevadans to upload to their site and use in advertising, knowing it would attract Nevada site visitors or subscribers, Plaintiffs fail to assert that Ancestry did so to "appeal to viewers in [Nevada] more than any other geographical location," or to "differentially" target Nevadans. *See Will Co.*, 47 F.4th at 925; *WebGroup*, 93 F.4th at 453. Because Plaintiff does not allege that Ancestry has treated Nevada's yearbook records differently than other states, it is not clear that Ancestry has done anything to differentially encourage Nevada subscribers. Further, while Defendant's conduct in posting Plaintiffs' yearbook photos without their consent may have caused them injury in Nevada, the harm was "entirely personal . . . and would follow [them] wherever [they] might choose to live or travel." *See Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).

      Plaintiffs also point out that pursuant to *WebGroup*, defendants must submit to jurisdiction in every state they have targeted. (Resp. 2:3–13). The *WebGroup* court explained that the "fact that [the defendants] may have also differentially targeted other particular locations does not detract from the fact that their use of U.S.-based CDNs shows that they expressly aimed their websites at the U.S. market." 93 F.4th at 455. But the problem in this

case, as explained above, is that Plaintiffs lack the targeting of Nevada that is required in the first place.  Unlike the defendants in *WebGroup* who demonstrated "differential targeting" by using CDNs in the United States to improve the viewing experience for those site visitors in particular, *see id.*, Plaintiffs do not allege how Ancestry's collection of yearbook photos differentially targeted Nevada, particularly when subscribers and free trial users from Nevada account for less than 1% of Ancestry's subscribers and free trial users. (*See* Godfrey Decl. ¶ 3, Ex. 1 to Mot. Dismiss).  Because Plaintiffs fail to demonstrate that Ancestry's actions were "expressly aimed," Plaintiffs fail on the first prong of the Ninth Circuit's specific jurisdiction test.

### 1. Ancestry's Privacy Notice

Alternatively, Plaintiffs argue that because Ancestry considers itself an "Operator" under Nevada's consumer data privacy law, and that the privacy notice is linked on Ancestry's website, Ancestry concedes to having purposefully directed its activities towards Nevada. (Resp. 9:1–12).  Nevada's privacy law defines "Operator" as a company that "[p]urposefully directs its activities" towards Nevada. NRS 603A.330(1)(c).  Defendants reply that whether Ancestry is an "Operator" under Nevada's privacy law is irrelevant, because specific jurisdiction depends on the claim asserted, and Plaintiffs are not asserting a claim under Nevada's privacy law. (Reply 6:9–22).

The Ninth Circuit's *Will Co.* and *AMA Multimedia* decisions offers helpful guidance on this issue.  In *AMA Multimedia*, the plaintiff argued that because every visitor to defendant's site assented to the Terms of Service, the defendant entered into a contract with every user on the site. *AMA Multimedia*, 970 F.3d at 1212.  The court explained that while the terms of service "could create specific jurisdiction in the United States for [suits alleging] violation of those terms," the plaintiff was not alleging violations of the Terms of Service. *Id.*  The court found that the Terms of Service did not establish targeting, rather, it "at most" suggested that

the defendant site knew it might have U.S. traffic. *Id.* And in *Will Co.*, the court explained that it was insufficient for the defendant site "to have simply anticipated people from the United States might access [the site] and to have set up pages to make sure they could do so lawfully." 47 F.4th at 926; *see also Voodoo SAS v. SayGames LLC*, No. 19-CV-07480-BLF, 2020 WL 3791657, at *5 (N.D. Cal. July 7, 2020) (finding that even though a defendant website's terms contained a release of liability for California and included a section titled "Rights of California Residents," the references showed only that defendant knew its product might be purchased in California, not that it expressly aimed its products at California residents).

In this case, Plaintiffs assert causes of action under Nevada's right to publicity statute and for unjust enrichment, but do not assert a violation of Nevada's privacy law. (*See* FAC ¶¶ 69–80). Thus, the privacy notice on Ancestry's website cannot form the basis of specific jurisdiction in this case. And although Ancestry's website contains a privacy notice specific to residents of Nevada and California, the notice is not enough to constitute express aiming.

Pursuant to Rule 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Because the Court has previously granted leave to amend to allege additional jurisdictional facts, Plaintiffs' additional facts in the FAC did not remedy the deficiencies identified, and Plaintiffs' requested topics for additional discovery would not confer jurisdiction, as described below in Section B, the Court finds that another amendment would be futile. The Court

therefore GRANTS Defendants' Motion to Dismiss without leave to amend but without prejudice.

### A. Motion to Conduct Jurisdictional Discovery

Plaintiffs assert that the Court should permit jurisdictional discovery because discovery closed before the Court granted the earlier Motion for Reconsideration under *Briskin*, and because more discovery will show that Ancestry intentionally targeted Nevada. (*See generally* Mot. Jurisdictional Discovery, ECF No. 180). Specifically, Plaintiffs request discovery on four topics: (1) Ancestry's purpose for collecting Nevada records and advertising them, (2) the number of users from Ancestry's Nevada customer base who subscribed based on the Nevada records, (3) Ancestry's contacts with its Nevada customers, including being an "Operator" in Nevada, and (4) which Nevada yearbook records Ancestry included in its Nevada advertisements. (*Id.* 1:25–2:7).

The decision whether to grant jurisdictional discovery is typically within the discretion of the district court. *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). "[W]here pertinent facts bearing on the question of jurisdiction are in dispute, discovery should be allowed." *American West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989). Discovery should be granted when "the jurisdictional facts are contested or more facts are needed." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

As to Plaintiffs' first argument relating to *Briskin*, this Order does not rely on *Briskin* because it has been vacated and is no longer precedential. But beyond that, the Court denies Plaintiffs' motion because they have not demonstrated that "pertinent facts" are in dispute. Defendants agree that it wants a market in Nevada, and that does not change the Court's analysis that Plaintiffs failed to show Defendants' conduct was expressly aimed at Nevada. (*See* Resp. to Mot. Conduct Jurisdictional Discovery 9:1–6). The same logic applies to the determining the precise number of Nevadans in Ancestry's customer base. And whether

Nevada yearbook records were advertised to Nevadans is not particularly relevant to jurisdiction because, as the Court noted in its previous Order Granting Reconsideration, Ancestry's advertisements are "not targeted to a specific state." *See AMA Multimedia*, 970 F.3d at 1211; (Order Granting Reconsideration 10:6–8). Because the Court does not find that more facts are needed, or that additional facts would change the analysis above, Plaintiffs' Motion to Conduct Jurisdictional Discovery is DENIED.

V. **CONCLUSION**

**IT IS HEREBY ORDERED** that the Motion to Dismiss, (ECF No. 174), is **GRANTED**. This case is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Conduct Jurisdictional Discovery, (ECF No. 180), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' first Motion for Leave, (ECF No. 189), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' second and third Motions for Leave, (ECF Nos. 190 and 191), are **DENIED**.

The Clerk of Court is kindly requested to close this case.

**DATED** this __12__ day of February, 2025.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT