**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ANTHONY SESSA, *et al.*,

                    Plaintiffs,

    vs.

ANCESTRY.COM OPERATIONS INC., *et al.*,

                  Defendants.

Case No.:2:20-cv-02292-GMN-BNW

**ORDER GRANTING MOTION FOR RELIEF FROM FINAL ORDER AND DENYING MOTION TO DISMISS**

Pending before the Court is the Motion for Relief From Final Order Under Rule 60(b), (ECF No. 194), filed by Plaintiffs Anthony Sessa and Mark Sessa. Defendants Ancestry.com Operations Inc., Ancestry.com, Inc., and Ancestry.com LLC, (collectively, "Defendants" or "Ancestry") filed a Response, (ECF No. 197), to which Plaintiffs filed a Reply, (ECF No. 198). Further pending before the Court is the Motion for Leave to File Document, (ECF No. 200), filed by Plaintiffs. Defendants did not file a Response.

For the reasons discussed below, the Court GRANTS Plaintiffs' Motion for Relief From Final Order Under Rule 60(b), DENIES Defendants' Motion to Dismiss, and GRANTS Plaintiffs' Motion for Leave to File Document.

## I.    <u>BACKGROUND</u>

This case is a class action against Ancestry for knowingly misappropriating Plaintiffs' yearbook records, without Plaintiffs' consent, for the purpose of selling access to them. (*See generally* First Am. Compl. ("FAC"), ECF No. 173). Plaintiffs allege that to create its Yearbook Database, Ancestry extracted personal information from school yearbooks and aggregated it into digital records for their website. (*Id.* ¶¶ 2–3). Customers can pay a monthly subscription, ranging from $24.99 to $49.99, to search and download these records. (*Id.* ¶ 6).

Page 1 of 14

To sell subscriptions, Plaintiffs allege that Ancestry offers a 14-day promotional free trial that provides temporary access to the Yearbook Database at issue in this case and offers a limited-access version of its website that encourages visitors to search the database and receive records. (*Id.* ¶¶ 8–10).  Users are urged to sign up for a paid subscription to access the full version of the photograph or additional information about the person they searched for. (*Id.*).  Plaintiffs further allege that Ancestry also advertises with email promotions, such as by sending photographs of the gravesites of deceased relatives and messages containing names and likenesses from its Yearbook Database. (*Id.* ¶ 12).

The Court has now ruled on two Motions to Dismiss filed by Ancestry. (*See* Order Granting Mot. Dismiss, ECF No. 193); (Order Granting in Part Mot. Dismiss, ECF No. 36).  In its first Order granting in part Defendants' initial Motion to Dismiss, the Court found that it had personal jurisdiction over Ancestry. (Order Granting in Part Mot. Dismiss 14:13–18:16).  Defendants then filed a Motion for Reconsideration of the Court's decision with respect to personal jurisdiction based on the Ninth Circuit's decision in *Briskin v. Shopify, Inc.*, 87 F.4th 404, 417 (9th Cir. 2023). (*See generally* Mot. Reconsideration, ECF No. 158).  The Court granted Ancestry's Motion, explaining that *Briskin* expanded on the application of personal jurisdiction jurisprudence as it applies to website-based contacts by requiring a plaintiff to show that the defendant is "actively targeting" the forum state. (Order Granting Mot. Reconsideration 4:18–6:3, ECF No. 170 (quoting *Briskin*, 87 F.4th at 419–20)).

The Court noted that it had not previously evaluated whether Plaintiffs sufficiently alleged that Ancestry had actively targeted Nevada, and ultimately granted dismissal for lack of personal jurisdiction based on *Briskin* and three previous Ninth Circuit cases: *Will Co. v. Lee*, 47 F.4th 917 (9th Cir. 2022), *Mavrix Photo Inc. v. Brand Technologies*, 647 F.3d 1218 (9th Cir. 2011), and *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020). (*Id*. 6:17–11:4).

The Court granted leave to amend to allow Plaintiffs to plead additional jurisdictional facts, and Plaintiffs thereafter filed their First Amended Complaint, (ECF No. 173).

Defendants then filed their second Motion to Dismiss, (ECF No. 174), arguing that Plaintiffs did not sufficiently allege that Ancestry expressly aimed its conduct at Nevada pursuant to the four cases above. (*See generally* Mot. Dismiss, ECF No. 174).  After briefing concluded, Ancestry filed a Notice of Rehearing En Banc, (ECF No. 187), informing the Court that the Ninth Circuit had granted a motion for rehearing en banc in *Briskin v. Shopify, Inc*. and vacated the panel opinion.  The Court thus addressed the merits of Ancestry's Motion to Dismiss without relying on *Briskin*. (Order Granting Mot. Dismiss 12:19–20).  However, relying on *AMA*, the Court granted Ancestry's Motion to Dismiss, concluding that Plaintiffs had not alleged sufficient factual allegations to establish that Ancestry had actively targeted Nevada. (Order Granting Mot. Dismiss 5:17–10:9).  The Court granted the Motion without prejudice, but did not give Plaintiffs leave to amend, and closed the case. (*Id.* 13:8–16).

Just over two months after that Order, the Ninth Circuit decided *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc) (*Briskin II*), which "overrule[d] *AMA* and any other cases that require some sort of differential treatment of the forum state for a finding of 'express aiming' of the defendant's allegedly tortious conduct." *Id.* at 758.  Plaintiffs thereafter filed the instant Motion for Relief from Final Order, requesting that this Court relieve Plaintiffs' from its Order Granting Ancestry's Motion to Dismiss and reopen the case. (Mot. Relief 1:20–21, ECF No. 194).

## II.  LEGAL STANDARD

### A.  Motion for Relief From Final Judgment

Federal Rule of Civil Procedure ("FRCP") 60(b) provides for relief from a district court's final judgment on six grounds: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered

in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.  Fed. R. Civ. P. 60(b).

Rule 60(b)(6) allows a court to reopen a case "for 'any. . . reason that justifies relief' other than the more specific reasons set out in Rule 60(b)(1)–(5)." *Wood v. Ryan*, 759 F.3d 1117, 1119–20 (9th Cir. 2014) (quoting Fed. R. Civ. P. 60(b)(6)).  Under Rule 60(b)(6), "extraordinary circumstances" are required to justify the reopening of a final judgment. *Federal Trade Commission v. Hewitt*, 68 F.4th 461, 468 (9th Cir. 2023) (internal quotations omitted). An intervening "change in controlling law can—but does not always—provide a sufficient basis for granting relief under Rule 60(b)(6)." *Henson v. Fidelity National Financial, Inc.*, 943 F.3d 434, 444 (9th Cir. 2019).  To evaluate a Rule 60(b)(6) motion predicated on an intervening change in the law, a district court must "evaluate the circumstances surrounding the specific motion before the Court." *Id.* (quoting *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009)) (internal quotations omitted).

### B.  Motion to Dismiss for Lack of Personal Jurisdiction

FRCP 12(b)(2) permits a defendant, by way of motion, to assert the defense that a court lacks personal jurisdiction over a defendant. Fed. R. Civ. P. 12(b)(2).  The party asserting the existence of jurisdiction bears the burden of establishing it. *See Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003).  When a 12(b)(2) motion is based on written materials, rather than an evidentiary hearing, a "plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  This prima facie standard "is not toothless," however; a plaintiff "cannot simply rest on the bare allegations of its complaint." *AMA Multimedia, LLC v. Wanat*,

970 F.3d 1201, 1207 (9th Cir. 2020) (quoting *In re Boon Glob. Ltd.*, 923 F.3d 643, 650 (9th Cir. 2019)), *overruled in part on other grounds by Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025).

In reviewing a motion, the court accepts "as true all uncontroverted allegations in the complaint." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020).  If the defendant comes forward with a "contradictory affidavit, the plaintiff cannot simply rest on the bare allegations of its complaint." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (internal citation and quotations omitted).  However, "[i]f both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)).

When no federal statute applies to the determination of personal jurisdiction, the law of the state in which the district court sits applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  Because Nevada's long-arm statute reaches the outer limits of federal constitutional due process, courts in Nevada need only assess constitutional principles of due process when determining personal jurisdiction. *See* Nev. Rev. Stat. 14.065; *Galatz v. Eighth Jud. Dist. Ct.*, 683 P.2d 26, 28 (Nev. 1984).

Due process requires that a non-resident defendant have minimum contacts with the forum state such that the "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash. Off. of Unemployment Compl. & Placement*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  Minimum contacts may give rise to either general jurisdiction or specific jurisdiction. *LSI Indus., Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000).  General jurisdiction exists where a defendant maintains "continuous and systematic" ties with the forum

state, even if those ties are unrelated to the cause of action. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984)). Specific jurisdiction exists where claims "arise[ ] out of" or "relate[ ] to" the contacts with the forum, even if those contacts are "isolated and sporadic." *Id.*

## III.    **DISCUSSION**

The Court first addresses Plaintiffs' Motion for Leave to File Document, before determining whether to grant Plaintiffs' Motion for Relief From Final Judgment and the underlying Motion to Dismiss.

### A. Motion for Leave to File Document

Plaintiffs seek leave of the Court to file supplemental authority in support of their Motion for Relief From Final Order. (*See generally* Mot. Leave, ECF No. 200). The proposed supplemental authority is *Coney Island Auto Parts Unlimited, Inc. v. Burton Tr. For Vista-Pro Auto.*, No. 24-808, 2026 WL 135998 (U.S. Jan. 20, 2026), in which the Supreme Court held that "Rule 60(c)(1)'s reasonable-time limit applies to a motion alleging that a judgment is void under Rule 60(b)(4)." *Id.* at \*1. Plaintiffs explain that the *Coney Island* court further observed that *all* motions filed under Rule 60(b) must be filed within a reasonable time limit, including Plaintiffs' instant Rule 60(b)(6) motion. (Mot. Leave 2:9–12 (citing *Coney Island*, 2026 WL 135998 at \*1–2)).

Ancestry did not file a Response to Plaintiffs' Motion for Leave to File Document, and the time to do so has passed. (*See* Mot. Leave (setting a January 28, 2026 deadline for responses)). Under Local Rule 7-2(d), the failure of an opposing party to file points and authorities in response to any motion constitutes consent to the granting of that motion. LR 7-2(d). Accordingly, the Court GRANTS Plaintiffs' Motion for Leave.

///

///

**B.  Motion for Relief From Final Judgment**

Plaintiffs move for relief from this Court's Order Granting Ancestry's Motion to Dismiss because *Briskin II* overruled several cases on which that Order relied. (Mot. Relief 2:2–19).  In Response, Ancestry argues that the Court should deny Plaintiffs' Motion because (1) *Briskin II* would not change the result, and (2) Plaintiffs have not met their burden under relevant Rule 60(b)(6) considerations. (Resp. 5:2–7:14, ECF No. 197).

In *Henson*, the Ninth Circuit identified seven factors that may aid a district court in determining whether to grant relief under Rule 60(b): (1) the nature of the intervening change in the law; (2) the moving party's diligence in pursuing relief; (3) whether granting the Rule 60(b) motion would upset the parties' reliance interest in the finality of the case; (4) the delay between the final judgment and the motion for Rule 60(b)(6) relief; (5) the proximity of the relationship between the original judgment and the change in the law; (6) considerations of comity between the independently sovereign state and federal judiciaries; and (7) the circumstances surrounding the specific motion before the court to ensure that justice is done in light of all the facts. 943 F.3d at 446–55.

However, the *Henson* court cautioned that district courts should not approach them as a "rigid or exhaustive checklist." 943 F.3d at 445.  Rather, courts should examine only those factors most relevant to the factual circumstances of the case. *See Hewitt*, 68 F.4th at 468–70 (analyzing only those factors "most relevant" to the circumstances of the case).  Here, the circumstances surrounding the case weigh in favor of granting Plaintiff's Motion.

First, the nature of the intervening change in law supports reopening this case and reexamining personal jurisdiction.  The Ninth Circuit's decision in *Briskin II* overruled the standard that animated this Court's Order Granting Ancestry's Motion to Dismiss.  While initially finding personal jurisdiction over Ancestry, (*see* Order Granting in Part Mot. Dismiss 17:9–23), the Court dismissed this case for lack of personal jurisdiction because of the new

requirement announced in *Briskin I* that website-based contacts must "differentially target" the forum state. (Order Granting Mot. Dismiss 5:17–10:9).[1]  After *Briskin II*, that requirement is no longer good law, and thus the "foundation of [this Court's] underlying decision was 'directly overruled,'" which the Ninth Circuit has explained favors granting a Rule 60(b)(6) motion. *Hewitt*, 68 F.4th at 468.  Ancestry argues that because the Court's underlying decision was based on settled Ninth Circuit precedent at the time, relief is disfavored. (Resp. 7:17–21). However, the situation here is not so simple.  The underlying decision was issued after *Briskin I* had been vacated for rehearing *en banc*, thus calling into question the interpretation of *AMA* that both *Briskin I* and the underlying decision relied on. (Order Granting Mot. Dismiss 3:5–7). Thus, the Court finds that this factor weighs in favor of granting Plaintiffs' Motion.

Second, the Court finds that Plaintiffs did not delay in seeking relief.  Ancestry argues that Plaintiffs were not diligent in seeking relief because they (1) failed to argue that the "differential targeting" test was wrong, and (2) failed to appeal the Court's underlying decision. (Resp. 8:19–9:2).  However, Plaintiffs provide persuasive arguments on Reply, explaining that they chose not to appeal this Court's underlying decision because, given the uncertainty about how *Briskin II* would resolve, "another appeal would have delayed this case further" and would have potentially eliminated the relief Plaintiffs could seek under Rule 60(b). (Reply 6:16–26, ECF No. 198) (citing *United States v. Hughes*, No. 18-cv-05931-JCS, 2024 WL 1056002, at *1 (N.D. Cal. Mar. 11, 2024) ("Where an appeal has been docketed and remains pending, a district court cannot grant relief from a final judgment under Rule 60(b) of the Federal Rules of Civil Procedure without a remand.")).  Especially given that Plaintiffs filed their Motion within two months of *Briskin II* being decided, the Court finds that this factor weighs in favor of granting relief.

---

[1] While the Court did not explicitly rely on *Briskin I* in that Order, it did rely on a reading of several other Ninth Circuit cases that the *Briskin I* court interpreted as imposing a "differential targeting" requirement. *See* 87 F.4th 404, 422 (9th Cir. 2024).

Ancestry next blends the remaining factors together, arguing that Plaintiffs' Motion should not be granted because: (1) Plaintiffs are in this position because of their strategic choice to file this action in Nevada as opposed to a state which "indisputably had personal jurisdiction over Ancestry," and (2) even if the case were reopened, it would soon be closed because Ancestry is likely to prevail on the merits. (Resp. 9:13–11:6). However, as Plaintiffs point out on Reply, it is not absolutely settled that this Court lacks personal jurisdiction over Ancestry; indeed, prior to *Briskin I*, this Court found that it did have personal jurisdiction over Ancestry. (Reply 7:4–10). Further, it is not a given that Ancestry would prevail on the merits of this case. Ancestry attempts to argue the merits of a motion for summary judgment filed before the Court issued its Order dismissing the case, contending that this Court would inevitably grant that motion. (Resp. 10:14–11:6). Of course, the Court cannot resolve the merits of Ancestry's now moot motion for summary judgment here. Further, even if the Court were inclined to grant that motion, that alone could not overcome the remainder of the Rule 60(b)(6) factors that weigh in favor of granting relief.

In sum, the Court finds that the circumstances of the case weigh in favor of granting relief. Accordingly, the Court GRANTS Plaintiffs' Motion for Relief From Final Judgment and proceeds to reexamine whether it has personal jurisdiction over Ancestry under *Briskin II*.

## C. Motion to Dismiss for Lack of Personal Jurisdiction

Courts employ a three-prong test to analyze whether the assertion of specific personal jurisdiction in a given forum is proper:

(1) The non-resident defendant must [a] purposefully direct his activities or consummate some transaction with the forum or resident thereof; or [b] perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protection of its laws;

(2)  the claim must be one which arises out of or relates to the defendant's forum related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenneger*, 374 F.3d at 802. Under the first prong of the specific personal jurisdiction test, purposeful availment and purposeful direction are two distinct concepts, and the "exact form of our jurisdictional inquiry [generally] depends on the nature of the claim at issue." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Courts typically use a "purposeful direction test" for claims sounding in tort "where the alleged conduct took place outside the forum state." *Strayer v. Idaho State Patrol*, No. 21-cv-35247, 2022 WL 685422, at \*2 (9th Cir. Mar. 8, 2022); *see also Schwarzenegger*, 374 F.3d at 802.

### 1. Purposeful Direction

This test analyzes whether the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374 F.3d at 803. Specific jurisdiction must arise out of "contacts that the 'defendant himself' creates with the forum State" and cannot be established from the conduct of a plaintiff or third parties within the forum. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original).

In the underlying decision, the Court noted that the parties' dispute centered on the "expressly aimed" prong of the analysis. (Order Granting Mot. Dismiss 5:13–15). Thus, the Court again begins by determining whether Ancestry's conduct was expressly aimed at Nevada.

### a. Express Aiming at the Forum

Generally, "[the] [e]xpress aiming . . . requirement is satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *See Bancroft & Masters v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (sending a demand letter to a California citizen in Virginia expressly aimed conduct at California); *see, e.g.*, *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989) (making defamatory statements in Canada about persons known to be

Arizona citizens was expressly aimed at Arizona). Mere foreseeability of consequences in the forum is not sufficient. *See Schwarzenegger*, 374 F.3d at 804–05.

As the Court previously explained, the Ninth Circuit has "struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed." *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1229, *cert. denied*, 132 S. Ct. 1101, 181 L. Ed. 2d 979 (2012). Where the website owner "continually and deliberately exploit[s]" the forum's market, which can be demonstrated by advertisements targeted at forum citizens and the market activities give rise to the action, exercise of jurisdiction is proper. *Id.* at 1230; (Order Granting in Part Mot. Dismiss 15:20–16:1). In the context of interactive websites, express aiming is often demonstrated through advertising. Where the defendant markets its website through local media in the forum, the defendant is deemed to have expressly aimed its conduct at the forum. *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002).

Direct advertising, however, is not necessary. If a third-party business places advertisements on the defendant's website, and the third-party targets the forum state with advertisements, courts may charge the defendant with constructive knowledge that it has expressly aimed its conduct at the forum. *Mavrix Photo*, 647 F.3d at 1230. This is particularly true where the subject matter of the website has a close relationship with the forum, indicating that the defendant "anticipated, desired, and achieved a substantial [forum] viewer base." *Id.* A more limited jurisdictional approach would undermine the plaintiffs' interests in proceeding in their choice of forum and "would allow corporations whose websites exploit a national market to defeat jurisdiction in states where those websites generate substantial profits from local consumers." *Id.* at 1231. The Ninth Circuit reaffirmed this principle in *Briskin II*, holding that "an interactive platform 'expressly aims' its unlawful conduct toward a forum state when its

contacts are its 'own choice and not random, isolated, or fortuitous.'" 135 F.4th at 758 (quoting *Ford Motor Co.*, 592 U.S. at 359) (internal quotations omitted).

In its Order Granting in Part Ancestry's initial Motion to Dismiss, the Court concluded that Ancestry did expressly aim its conduct into the state of Nevada. (*See* Order Granting in Part Mot. Dismiss 15:10–17:23). The Court there explained, relying on Plaintiffs' allegations, that Ancestry had scanned into its Yearbook Database over one million records of Nevada citizens which it used to advertise subscriptions to users who viewed the records. (*Id.* 16:19–17:8). Thus, the Court reasoned that "Ancestry [had] targeted the Nevada market by appropriating the names, images, and likenesses of over one million Nevadans in its drive to create a nationwide database." (*Id.* 17:21–23).

Here, the Court sees no reason to depart from that analysis. Ancestry argues that, while those allegations were credited by the Court at the pleading stage, it is now undisputed that the only users who accessed Plaintiffs' yearbook records were Plaintiffs' attorneys, and thus the records were not used to advertise within Nevada. (Resp. 5:20–24 (citing Mot. Summ. J. at 8-10, ECF No. 127)). However, even if the Court were to accept that contention as true, the fact remains that Ancestry scanned Plaintiffs' yearbook records and displayed them on their website for the purpose of soliciting new subscribers. As the *Briskin II* court explained, conduct is expressly aimed into the forum state so long as that conduct is the interactive platform's "own choice." 135 F.4th at 758. Here, "Ancestry purchased the yearbook records of Nevadans to upload to their site and use in advertising, knowing it would attract Nevada site visitors or subscribers." (Order Granting Mot. Dismiss 9:10–12). Such knowing conduct is not merely "random, isolated, or fortuitous," and thus suffices to establish the "expressly aiming" prong of the purposeful direction test. *Briskin II*, 135 F.4th at 758.

///

///

**b. Harm Likely to be Suffered in the Forum**

Plaintiffs' right of publicity claim contends that Ancestry used Plaintiffs' likeness in contravention of their exclusive rights without providing any economic value for the use. As the Court explained in its Order Granting in Part Motion to Dismiss, that allegation is sufficient to confer jurisdiction, particularly where at least the plurality of individuals interested in learning about Plaintiffs likely reside in Nevada. (Order Granting in Part Mot. Dismiss 18:3–9 (citing *Mavrix Photo*, 647 F.3d at 1231–32 ("It was foreseeable that this economic loss would be inflicted . . . in California. A substantial part of the photos' value was based on the fact that a significant number of Californians would have bought publications such as People and Us Weekly in order to see the photos."))). Further, Ancestry's contention that only Plaintiffs' attorneys accessed Plaintiffs' yearbook records does not negate this element. As Plaintiffs point out, the right of publicity does not impose a viewership requirement. *Maloney v. T3 Media, Inc.*, 853 F.3d 1004, 1016 (9th Cir. 2007) ("[A] publicity-right claim may proceed when a likeness is used non-consensually on merchandise or in advertising.").

**2. Relation**

As the Court explained above, this action arises from Ancestry's use of Plaintiffs' names and images in order to promote its services, including customers within Nevada, the forum state. Thus, this connection establishes that Plaintiffs' cause of action arises from Ancestry's contacts with the forum.

The Court thus concludes that Ancestry's contacts with Nevada here are sufficient to establish this Court's personal jurisdiction over them. Accordingly, the Court DENIES Ancestry's Motion to Dismiss for lack of personal jurisdiction.

## V.    CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Leave to File Document, (ECF No. 200), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Relief From Final Order, (ECF No. 194), is **GRANTED**.

**IT IS FURTHER ORDERED** that Ancestry's Motion to Dismiss for Lack of Personal Jurisdiction, (ECF No. 174), is **DENIED**.

The Clerk of Court is kindly directed to re-open this case.

**DATED** this __30__ day of March, 2026.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT